UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
KEVIN R. SANFORD,                       )
                                        )
            Plaintiff,                  )        Civil Action No.: 07-1792 (RCL)
                                        )
      v.                                )
                                        )
UNITED STATES,                          )
                                        )
            Defendant.                  )
_____ )

## DEFENDANT'S MOTION TO DISMISS

Defendant, the United States, respectfully moves to dismiss this case pursuant to Rule

12(b)(1) and/or (6).  Plaintiff, a former United States Marine, brings this collateral challenge to

his conviction at a special court-martial.  His claim fails as a matter of law because there is no

jurisdiction for a collateral attack on his court-martial other than via *habeas corpus*, not sought

here.  Alternatively, his claim should fail on the merits because the military courts gave his same

constitutional challenge full and fair consideration.

A memorandum of points and authorities in support of this motion is attached.

December 17, 2007                       Respectfully submitted,

                                        _____
                                        JEFFREY A. TAYLOR, D.C. Bar # 498610
                                        United States Attorney

                                          /s/
                                        _____
                                        RUDOLPH CONTRERAS, D.C. Bar # 434122
                                        Assistant United States Attorney

_/s/_
ALAN BURCH, D.C. Bar # 470655
Assistant United States Attorney
555 4th St., N.W.
Washington, D.C. 20530
(202) 514-7204, alan.burch@usdoj.gov

Of Counsel:
STEPHEN C. REYES
Lieutenant, United States Navy
Office of the Judge Advocate General
General Litigation Division
Department of the Navy
Washington Navy Yard, Washington, D.C.
Telephone: (202) 685-5398

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| KEVIN R. SANFORD, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: 07-1792 (RCL) |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Defendant, the United States, respectfully files this memorandum of points and authorities in support of its motion to dismiss. Plaintiff brings this collateral challenge to his special court-martial, without citing any statutory basis for jurisdiction other than 28 U.S.C. § 1331. No case law supports such a collateral challenge, except through *habeas corpus*, which is inapplicable here because he is neither in the military nor in custody. Accordingly, sovereign immunity applies and the District Court lacks jurisdiction to hear his claim. Alternatively, even if jurisdiction existed, his claim fails on the merits as a matter of law because the military courts have fully and fairly considered his precise claim here and those courts made no error in their review and disposition of his claims.

## Factual Background

Plaintiff was a sergeant in the United States Marine Corps. See Complaint ¶ 2 ("previously served"). He was convicted at a special court-martial, composed of officer and enlisted members, for violating a lawful order, dereliction of duty, larceny and impersonating an officer, in violation of Articles 92, 121, and 134, Uniform Code of Military Justice ("UCMJ"), 10

U.S.C. §§ 892, 921 and 934.  See United States v. Sanford, No. NMCCA 200500993, 2006 WL

4571896, 2006 CCA LEXIS 303 (N-M. Ct. Crim. App. Nov. 6, 2006), review den., No. No.

07-0089/MC, 2007 CAAF LEXIS 140 (C.A.A.F. Feb. 7, 2007); accord Complaint ¶ 4.  The court

sentenced Plaintiff to confinement for six months, forfeiture of $767.00 of pay per month for six

months, reduction to pay grade E-1 and a bad-conduct discharge ("BCD").  See 2006 CCA

LEXIS 303 at *1; accord Complaint ¶ 11.  Notably, the 12-page decision, although unpublished,

set forth the parties' arguments and the court's analysis in some detail.

   The convening authority for the court-martial approved the findings and sentence, and,

except for the BCD, ordered the sentence executed.  Id. at *2, *30.  Because the sentence

included a BCD, Plaintiff's court-martial conviction was reviewed by the Navy-Marine Corps

Court of Criminal Appeals ("NMCCA").  The NMCCA conducted a full review of Plaintiff's

entire record of trial.  With the assistance of a statutorily mandated appellate defense counsel,

Plaintiff also submitted a brief and assignment of error to the court for review.  In that brief,

Plaintiff argued that his conviction by a panel of less than six members violated his due process

rights under the Fifth Amendment.  The court rejected this argument, relying on prior case law,

but found merit in some of Plaintiff's other assignments of error and granted limited relief by

reducing the confinement to 150 days and the reduction in pay to five months.  Id. at *30; accord

Complaint ¶ 13.

   Upon completing his appeal at the NMCCA, Plaintiff sought further review by the Court

of Appeals for the Armed Forces ("CAAF").  Once again, Plaintiff raised, among other issues,

the same due process challenge that he makes here.  See Complaint at ¶ 17.  The CAAF denied

Plaintiff's petition.  See United States v. Sanford, No. 200500993, 64 M.J. 429 (C.A.A.F. 2007)

2

(unpublished mem.).

Now, Plaintiff raises the identical due process issue to this Court. <u>See</u> Complaint at ¶ 20.

## Standard of Review

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), the Court will dismiss a claim if Plaintiff fails to plead "enough facts to state a claim for relief that is plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955, 1974 (2007); <u>see also</u> <u>In re Sealed Case</u>, 494 F.3d 139, 145 (D.C. Cir. 2007) (citing <u>Twombly</u>). The court must construe the allegations and facts in the complaint in the light most favorable to Plaintiff and must grant Plaintiff the benefit of all inferences that can be derived from the facts alleged in the complaint. <u>Barr v. Clinton</u>, 370 F.3d 1196, 1199 (D.C. Cir. 2004) (citing <u>Kowal v. MCI Comm'ns Corp.</u>, 16 F.3d 1271, 1276 (D.C. Cir. 1994)). However, the Court need not accept asserted inferences, conclusory allegations that are unsupported by the facts set forth in the complaint. <u>Kowal</u>, 16 F.3d at 1276. Of course, the Court need not "accept legal conclusions cast in the form of factual allegations." <u>Id.</u>

In considering a motion to dismiss, the Court is not to consider "matters outside the pleading," per Rule 12(b), without converting defendant's motion to a motion for summary judgment. In interpreting the scope of this limitation, the D.C. Circuit has instructed that the Court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which we may take judicial notice." <u>EEOC v. St. Francis Xavier Parochial School</u>, 117 F.3d 621, 624 (D.C. Cir. 1997). For example, court papers filed and arguments made elsewhere by the plaintiff may be relied upon by the Court in deciding a motion to dismiss. <u>See</u> <u>Jankovic v. Internat'l Crisis Group</u>, 494 F.3d 1080, 1088 (D.C. Cir.

2007) (citing <u>Marshall County Health Care Auth. v. Shalala</u>, 988 F.2d 1221, 1222-23 (D.C. Cir.

1993)) (court papers); <u>Covad Commun. Co. v. Bell Atlantic Corp.</u>, 407 F.3d 1220, 1222 (D.C.

Cir. 2005) (arguments).

## Legal Standards for Collateral Review of Court-Martial

In <u>Burns v. Wilson</u>, 346 U.S. 137 (1953), the Court permitted a collateral attack on a

court-martial verdict through a *habeas corpus* petition.  In that case, the soldiers who brought the

petition were accused of murder and rape while stationed on Guam, and they alleged that their

trial by the U.S. military authorities was conducted in a virtual mob atmosphere, lacking

fundamental protections such as deprivation of effective counsel, extorted confessions,

suppression of favorable evidence, and subornation of perjury by prosecution witnesses.  <u>See</u> <u>id.</u>

at 138.  The plurality noted that *habeas corpus* applied to military proceedings, although "the

scope of matters open for review [] has always been more narrow than in civil cases."  <u>Id.</u> at 139.

The Court noted the existence of a parallel type of collateral review, provided for in the Uniform

Code of Military Justice ("UCMJ"), <u>id.</u> at 141 & n.8, and concluded that "when a military

decision has dealt fully and fairly with an allegation raised in that application, it is not open to a

federal civil court to grant the writ simply to re-evaluate the evidence[,]" <u>id.</u> at 142.  The Court

denied the petition, having found that "[t]hese records make it plain that the military courts have

heard petitioners out on every significant allegation which they now urge."  <u>Id.</u> at 144.

Then, in <u>Schlesinger v. Councilman</u>, 420 U.S. 738 (1975), the Supreme Court permitted a

non-custodial plaintiff to bring a *habeas corpus* petition against his court-martial.  The soldier

there alleged the military courts could not prosecute him because the charges were not

sufficiently "service connected."  <u>Id.</u> at 741.  Even though the soldier bringing the petition had

4

not yet been convicted, and so his "case, of course, does not concern a collateral attack on a court-martial judgment, at least in the normal sense, because there was no judgment to attack[,]" id. at 748, the Supreme Court was satisfied that jurisdiction existed for his *habeas* petition because his suit stands on precisely the same footing as suits seeking possible post judgment forms of collateral relief[,]" id. at 749.

The Court in Councilman held that the scope of review was limited to cases where the judgment therein was found so riddled with error as to be void. Id. at 746-47. Whether a judgement is void "may turn on [1] the nature of the alleged defect, and [2] the gravity of the harm for which relief is sought." Id. at 753. In determining whether a judgment is void, the reviewing court must conduct its analysis in "light of the deference that should be accorded the judgments of the carefully designed military justice system established by Congress." Id.

The D.C. Circuit applied Burns and Councilman in United States, *ex rel*. New v. Rumsfeld, 448 F.3d 403 (D.C. Cir. 2006) ("New II"). The soldier in New II originally brought a *habeas corpus* petition in a factual situation very similar to that in Councilman: New argued that the military had no authority to order him to wear a United Nations symbol on his uniform and so he challenged his court-martial for failure to obey the order. Originally, he brought his *habeas* petition prior to the court-martial reaching a decision, but the D.C. Circuit affirmed dismissal of that action for failure to exhaust his remedies in the court-martial proceedings. See id. at 406. In New II, he again sought collateral review after the Court of Appeals for the Armed Forces affirmed his conviction at the court-martial. Id.

The D.C. Circuit noted that New was no longer in the military and that he "is not in custody" and, therefore, the federal *habeas* statute cannot supply jurisdiction. See id. In dicta,

5

however, the D.C. Circuit went on to assert: "This is not fatal, however, because the Supreme

Court has held that Congress didn't intend to confine collateral attacks on court-martial

proceedings to § 2241." Id. (citing only Councilman).

In applying the Supreme Court precedents, the D.C. Circuit then applied several tests that

appear to provide for multiple bases for its holding (affirming dismissal of the *habeas* petition).

First, the court held that "a military court's judgment clearly will not suffer such a defect if it

satisfies Burns's 'fair consideration' test." Id. at 408 (quoting Councilman).  Second, the D.C.

Circuit held that "errors must be fundamental to void a court-martial judgment on collateral

review." Id. at 408.  Applying these standards, the court found first that "the military judge heard

arguments on the subject," id. at 410, and, second, that it could "find no defect in the Court of

Appeals' [for the Armed Forces] application of the political question doctrine" to New's

challenge, id. at 411.

This Court has had limited opportunity to hear collateral challenges to court-martial

decisions, but a recent decision reflects the same sort of overlapping rationales for denying the

relief.  See Oppermann v. United States, No. 06-1824 (EGS), 2007 WL 1748920, 2007 U.S. Dist.

LEXIS 43270 (D.D.C. June 15, 2007) (applying Councilman, Burns, and New II).

All courts agree that deference is properly given to the judgment of the military courts but

that these judgments must still "conform to Supreme Court standards, unless it is shown that

conditions peculiar to military life require a different rule." Kauffman v. Sec'y of the Air Force,

415 F.2d 991, 997 (D.C. Cir. 1969); United States, *ex rel.* New v. Rumsfeld, 350 F. Supp. 2d 80,

91 (D.D.C. 2004), aff'd, New II *supra*; Oppermann, 2007 WL 1748920 at *6, 2007 U.S. Dist.

LEXIS 43270 at *16.

6

**Argument**

I.    **The District Court Lacks Subject Matter Jurisdiction.**

As an initial matter, the United States, the only named Defendant in this action, is shielded from suit by sovereign immunity, absent a waiver in the form of a statutory cause of action permitting suit.  See, e.g., United States v. Nordic Village, 503 U.S. 30 (1992); United States v. Testan, 424 U.S. 392, 399 (1976) ("except as Congress has consented to a cause of action against the United States, 'there is no jurisdiction . . . to entertain suits against the United States'").  Unlike Burns, Councilman, and United States *ex rel.* New v. Perry, 129 F.3d 639 (D.C. Cir. 1997) ("New I"), the instant case is not a *habeas corpus* petition.  Moreover, unlike those cases, the instant case does not involve either a service member who is subject either to military control or a person held in the custody of any government official(s).  Plaintiff cites no case, and Defendant is aware of none, whose holding supports the existence of such a non-custodial collateral attack to a decision of the military courts.

Indeed, both Councilman and New I involved *habeas* petitions by soldiers still in the military, still subject to military custody and control.  In Councilman, the court reasoned, quite logically, that it made little sense to reject the *habeas* petition simply because the military courts had not yet reached a final decision, given that the soldier's challenge was otherwise fully adjudicable.  Similarly, in New I, the first appeal concluded that there was no cause of action because New failed to exhaust his remedies in the pending court-martial action, and on remand, this Court dismissed New's challenges in his *habeas corpus* petition as "outside the scope of collateral review."  See 448 F.3d at 406.  In affirming that dismissal, the D.C. Circuit in New II went well beyond the facts of the case in its dicta that Councilman "confirmed jurisdiction in the

7

absence of custody," id., because New was still in the military and, therefore, still had the option of bringing a traditional *habeas* action. See, e.g., Rumsfeld v. Padilla, 542 U.S. 426 (2004).

It bears emphasis that this case is not a case challenging a decision by the Board of Correction of Naval Records ("BCNR"), which typically hears challenges to the accuracy of military service records, including challenges to the severity of disciplinary outcomes, as opposed to constitutional challenges. See 10 U.S.C. § 1552(a); e.g., Chappell v. Wallace, 462 U.S. 296, 303 (1983) ("The Board for Correction of Naval Records, composed of civilians appointed by the Secretary of the Navy, provides another means with which an aggrieved member of the military 'may correct any military record . . . when [the Secretary of the Navy acting through the Board] considers it necessary to correct an error or remove an injustice.'"). Plaintiff here challenges the correctness of the military courts' adjudication of his constitutional challenge, specifically so that the Court may "declar[e] his conviction unconstitutional and therefore null and void." See Complaint at 4 ("Prayer"). This is not a BCNR challenge.

The case law does not establish a new short-cut to federal court to challenge any decision of a military court, without apparent restrictions as to timing, venue, or proper defendant. The procedural requirements of *habeas* relief, e.g., naming the proper defendant, should not be so easily erased, and to the extent that New II suggests a broader form of collateral review, the language is dicta, unnecessary to its holding. Proof of that is seen in the fact that, by reaching so far into the merits of New's argument regarding the illegality of the order to wear the U.N. logo, the D.C. Circuit reduced the Burns test to a redundancy, for Burns looks at whether the challenge made below was fully and fairly heard, not necessarily how it came out.

For these reasons, the Court should find that it lacks jurisdiction to hear this non-

custodial, non-*habeas* collateral attack on the decision of Plaintiff's court-martial, which decision was upheld by the Court of Appeals for the Armed Forces.

## II.     Full and Fair Consideration.

Alternatively, if there is a cause of action to bring this collateral attack even though it is not, in style or substance, a *habeas corpus* petition, Plaintiff's claim fails as a matter of law anyway because the military courts gave his same claim full and fair consideration.

The Military Courts have the responsibility to protect servicemembers from a violation of their constitutional and statutory rights. See Burns, 346 U.S. at 142; see, e.g., UCMJ Articles 66, 67 and 70; 10 U.S.C. §§ 866, 867 and 870.  This congressionally-mandated system of review provides the servicemember with a number of venues in which to fully address any constitutional or statutory grievances with their court-martial, and to remedy any meritorious claims.  Id.  In this case, the Plaintiff was afforded this opportunity.

### A.     Plaintiff, With the Assistance of His Appellate Defense Counsel, Raised the Same Due Process Claim to the Military Courts of Appeal.

"As a general rule[] federal courts find 'full and fair consideration' of an issue established when it is briefed and argued by the parties, even if the judgment summarily disposes of the issue." Oppermann, 2007 WL 1748920 at *6, 2007 U.S. Dist. LEXIS 43270 at *17 (citing Watson v. McCotter, 782 F.2d 143, 145 (10th Cir. 1986), and United States, *ex rel*. Thompson v. Parker, 399 F.2d 774, 776 (3rd Cir. 1968)).

In this case, Plaintiff raised his same, specific due process claim to the Navy-Marine Court of Criminal Appeals and to the Court of Appeals for the Armed Forces.  See Complaint ¶¶ 14, 17; 2006 WL 4571896, 2006 CCA LEXIS 303.  Accord Bowling v. United States, 713

9

F.2d 1558, 1560 (Fed Cir.1983) (plaintiff raised identical issue in his military appeal to federal court).  Plaintiff's statutorily-mandated appellate defense counsel argued Plaintiff's due process claim and seven other assignments of error in a brief to the NMCCA and in a petition for review to the CAAF.  Through counsel's briefs, the courts obtained a concise view of Plaintiff's position and rendered an informed decision.

Now, Plaintiff raises this same issue to this Court.

**B.      The NMCCA Conducted a Factual and Legal Review of Plaintiff's Record**.

Even absent a brief from counsel, the NMCCA was charged with conducting a factual and legal review of Plaintiff's entire record of trial, including whether the court believed that plaintiff's due process rights were violated in any manner.  Specifically, UCMJ Article 66(c) provides:

> [The court] may affirm only such findings of guilty and . . .
> sentence . . . as it finds correct in law and fact and determines, on
> the basis of the entire record, should  be approved.  In considering
> the record, it may weigh the evidence, judge the credibility of
> witnesses, and determine controverted questions of fact,
> recognizing that the trial court saw and heard the witnesses.

10 U.S.C. § 866(c).  Moreover, the NMCCA is empowered to raise any additional issues that it believes may be present in the record.  These Article 66 service courts have been described as "something like the proverbial 800-pound gorilla when it comes to their ability to protect an accused."  United States v. Parker, 36 M.J. 269 (C.M.A. 1993).  This follows from the fact that these courts have an "awesome, plenary, *de novo*, power of review[.]"  United States v. Cole, 31 M.J. 270, 272 (C.M.A. 1972) (emphasis added).  And it was before this type of court where Plaintiff, through counsel, presented his same due process claim.  Ultimately, by fulfilling its

10

statutory mandate, the NMCCA provided plaintiff with a full and fair consideration of his claim.

Additionally, taken as a whole, the NMCCA's decision in this case demonstrates that plaintiff received full and fair consideration. See 2006 WL 4571896, 2006 CCA LEXIS 303. First, the NMCCA notes that it has "reviewed the record of trial , the appellant's eight assignments of error and the government's response." Sanford, 2006 WL 4571896 at *1, 2006 CCA LEXIS 303 at *1. And in conducting its analysis, the NMCCA discovered that some of the issues raised were meritorious and took remedial action. Id.

Moreover, the NMCCA specifically addressed Plaintiff's due process claim and cited to a controlling case in its jurisdiction that dealt squarely with this issue. Id. at 28 (citing United States v. Wolff, 5 M.J. 923, 925 (N.M.C.R. 1978)). And, citing to UCMJ Article 29, the court complied with Congress' decision to require at least three members at a special court-martial. The fact that this was done in a footnote does not undermine the fact that the NMCCA conducted a plenary review and fully considered the merits of Plaintiff's claim. 2006 WL 4571896 at *10 n.2, 2006 CCA LEXIS 303 at *28 n.2.

## C.    CAAF Saw No Merit In Plaintiff's Due Process Claim.

Under UCMJ Article 67, the CAAF must review all death sentences and any cases in which the Judge Advocate General orders sent to it. 10 U.S.C. § 867. For all other cases reviewed by the inferior service courts, the CAAF may review them upon petition and for good cause shown. 10 U.S.C. § 866. Here, Plaintiff's appellate defense counsel briefed his same due process claim in his petition to CAAF. See Complaint at ¶ 17. In exercising its statutory duty to determine if review should be granted, the CAAF decided that Plaintiff's due process claim was without merit and declined to review it. See 64 M.J. 429.

**III.    Alternatively, No Violation of Due Process Clause**

As explained above, it makes no logical sense to review for "full consideration" by the military courts, if the analysis must also include a review of the merits of an ex-serviceman's constitutional claim.  If the court's analysis must always include a review of the merits of the constitutional challenges, even where the military courts gave it full and fair consideration, then the full and fair consideration test is superfluous.  Furthermore, it does not answer this concern to say that the review of the merits is "limited" and narrow, because that does not address the fact that the full and fair consideration standard evaluates the adequacy of the procedure afforded by the military courts, i.e., whether they adequately heard the instant claim; whereas the limited review conducted in New II, effectively asked whether the substantive challenge was properly decided.  Therefore, labeling the scope of the review as narrow or limited does not eliminate the apparent redundancy of applying the Burns standard.  Accordingly, Defendant maintains, in the alternative, that there was no error, constitutional or otherwise, in the number of members in Plaintiff's special court-martial.

Congress has broad authority under Article I of the Constitution to enact statutes regulating the armed forces. U.S. Const. Art. I, § 8, cl. 14.  However, when Congress acts in the area of military affairs, as it did with the creation of the right to a trial by members, it remains subject to the limitations of the Due Process Clause.  See Rokster v. Goldberg, 453 U.S. 57, 67 (1981).  But those limitations may differ because of the military context.  Id.

In determining the constitutionality of an act of Congress, the Supreme Court noted that great deference should be given by the reviewing court.  Id. at 64. ("Whenever called upon to judge the constitutionality of an Act of Congress –'the gravest and most delicate duty that this

Court is called upon to perform'–the Court accords 'great weight to the decisions of Congress.'"). More specifically, in the area of Congress's authority over military affairs, the greatest deference is given. *Id.* at 64-65. This view is best summed up by the Supreme Court in Burns:

> [T]he rights of men in the armed forces must perforce be conditioned to meet certain overriding demands of discipline and duty, and the civil courts are not the agencies which must determine the precise balance to be struck in this adjustment. The Framers especially entrusted that task to Congress.

346 U.S. at 140. In light of this deference, the Supreme Court has examined due process challenges to the military justice system under the standard set forth in Middendorf v. Henry, 425 U.S. 25 (1976). As relevant to the present case, the Middendorf analyzes "whether the factors militating in favor of [requiring a minimum of six members at a special court-martial] are so extraordinarily weighty as to overcome the balance struck by Congress." Id. at 44; see also Weiss v. United States, 510 U.S. 163 (1994) (applying the Middendorf standard to determine the constitutionality of the appointment of military judges).

### A.      Three Member Special Court-Martial is Grounded In Historical Precedent.

The special court-martial is the second highest of the three types of courts-martial enacted by Congress. UCMJ Articles 16, 19, 20 and 21; 10 U.S.C. §§ 816, 819, 820 and 821. The special court-martial normally consists of a military judge and a minimum of three members, but the Code allows the members to sit without a judge or the accused to elect to be tried by military judge alone. UCMJ Article 16: 10 U.S.C. § 816. It has jurisdiction over most offenses under the UCMJ, but it may not award confinement in excess of one year. UCMJ Article 19; 10 U.S.C. § 819.

Historically, the modern day court-martial can be traced to the passage of the first British Mutiny Act of 1689 and the successive British Articles of War.  1 W. & N., c. 5 (Eng.); William Winthrop, Military Law and Precedents 19 (2d ed. 1920) ("Winthrop").  Under these provisions a service member was tried by a panel of at least thirteen members.  Id. at 929.  This system of military justice was transferred to the American colonies, and in 1775 the Continental Congress based the American Articles of War on its British counterpart.  Id. at 45, 47.  The Continental Congress created a general court-martial, consisting of no less than thirteen members, to try the most serious offenses; and a regimental court-martial, consisting of no less than five members, to try less serious offenses. American Articles of War of 1775, 2 J. Cont. Cong. 111-23 (1775), reprinted in Winthrop, *supra*, at 953.  In 1786, the Continental Congress reduced the amount of members at a general court-martial to five because the mustering of thirteen members proved to be a strain on military resources.  American Articles of War of 1786, art. 1, 30 J. Cont. Cong. 316 (1786), reprinted in Winthrop, *supra*, at 972.  Additionally, the Continental Congress reduced the size of a regimental court-martial to three.  Id.  In 1916, Congress created the special court-martial and adopted the minimum panel sizes. Articles of War of 1916, ch. 418 § 3, art. 3, 39 Stat. 651 (1916).

This historical overview demonstrates that the current size of a special court-martial is founded on a tradition long enough to predate even the Constitution.  Congress has maintained this tradition.  As an example, the Supreme Court in 1978 announced that the Sixth Amendment right to a jury trial requires that an accused be tried by a jury of no less than six members.  See Ballew v. Georgia, 435 U.S. 223 (1978).  Since that date, Congress has twice revised UCMJ Article 16, neither time choosing to expand the minimum panel size. 10 U.S.C. § 816.  In 2002,

14

Congress changed the maximum amount of confinement that can be awarded at a special court-martial from six months to one year. This change opened the door for the special court-martial to try what the Supreme Court has labeled as non-petty offenses, or those crimes that are punishable by more than six months of confinement. See Baldwin v. New York, 399 U.S. 66, 70-71 (1971). But still Congress chose not to expand the minimum panel size.

In Weiss, the Supreme Court used the historical fact that military judges have never had a tenure as a basis for deciding that the Constitution does not impose one. 510 U.S. at 179. This same line of reasoning applies in this case, and it should be a compelling factor that the minimum panel size is an historical fact based on military necessity that has stood the test of time.

**B.    Increasing the Panel Size of a Special Court-Martial Will Detrimentally Affect the Use of Military Resources.**

The primary function of the military is to fight or be ready to fight wars. See Toth v. Quarles, 350 U.S. 11 (1950). "To the extent that those responsible for performance of this primary function are diverted from it by the necessity of trying cases, the basic fighting purpose of armies is not served[.]" Id. at 17. As such, the military legal system "must be structured with appropriate consideration given to the fact that 'obedience, discipline, and centralized leadership and control, including the ability to mobilize forces rapidly, are all essential if the military is to perform effectively.'" Mendrano v. Smith, 797 F.2d 1538 (1986) (quoting Curry v. Secretary of the Army, 595 F.2d 873, 877 (D.C. Cir. 1979). Congress's determination on the minimum size of a court-martial is a reflection of this balance between the role of the military, the use of its forces and the military justice system.

This need to balance the command's ability to obtain the requisite personnel for a court-

15

martial without detrimentally affecting the unit's function is even more dire with respect to special courts-martial.  Namely, Congress bestowed the power to convene these courts upon relatively small commands with limited personnel:  As an illustrative example, UCMJ Article 23 delineates this power to units as small as "any naval or Coast Guard vessel" or a "detached battalion, or corresponding unit."[1]

The increase in members from three to six would ultimately double the burden on these small commands.

Additionally, this minimum requirement cannot be considered in a vacuum.  For instance, the military allows for liberal challenges for cause by the defense and one peremptory challenge from both the government and the defense of prospective members.  Rule for Courts-Martial 912, Manual for Courts-Martial (2002).  Furthermore, these small commands are oftentimes called upon to provide witnesses and other personnel responsible for the administration of the court-martial, such as, brig escorts, drivers, etc.   Thus, the amount of military members needed to commence the special court-martial may be even greater than six.

**C.    Congress Has Provided Sufficient Procedural Safeguards at a Special Court-Martial to Ensure the Accused a Fair and Impartial Trial.**

As set forth by Congress, the special court-martial provides a fair and impartial trial for service members.  First, pursuant to UCMJ Article 25, the convening authority must select court-martial members who, in his judgment, are the "best qualified for the duty by reason of age, education, training, experience, length of service, and judicial temperament."  10 U.S.C. § 825.  In making his decision, the convening authority must consider all of these factors; the reliance on

---

[1] In the U.S. Navy, a typical fast attack submarine may have a complement of roughly 150 personnel, and a typical Coast Guard cutter perhaps 100-150.

only one factor may render the panel defective.  See United States v. Daigle, 1 M.J. 139 (C.M.A. 1975) (members picked based solely on rank was improper).  The convening authority cannot systematically exclude potential members based on such variables as rank, race or gender,  or pack the panel with members who hold a certain point of view.  See United States v. Smith, 27 M.J. 242 (C.M.A. 1988).  Ultimately, UCMJ Article 25 mandates that the convening authority personally select members who will be fair and impartial, see United States v. Dowty, 60 M.J. 163, 169 (2004), a responsibility the convening authority is required to give serious consideration, id.

Second, the composition of the court-martial and function of the court-martial member provide the accused with additional assurances.  For instance, every person on the panel is "drawn exclusively from the accused's own profession . . . with specialized knowledge of the profession[.]"  United States v. Guilford, 8 M.J. 598, 601 (A.C.M.R. 1979).  Also, the enlisted accused can elect to be tried by a members panel consisting of officer and enlisted members.  UCMJ Article 25; 10 U.S.C. § 825.  If elected, the enlisted members cannot be a member of the same unit as the accused; this inevitably provides another layer of protection.

In this case, Plaintiff, an enlisted member, chose to be tried by both officer and enlisted members and was, therefore, afforded the opportunity to be judged by his peers.  See Sanford, 2006 WL 4571896 at *1 (Sanford was tried before a jury of officers and enlisted men), 2006 CCA LEXIS 303 at *1; Rule for Courts-Martial 903, Manual for Courts-Martial, United States (2005 ed.) (providing for all-officer jury unless accused elects jury of officers and enlisted men).  Lastly, a member of a court-martial, unlike his civilian counterpart, has the authority to question witnesses.  See, e.g., Guilford, 8 M.J. at 601.  This personal involvement with the fact finding

17

process arguably fosters greater understanding and a more in-depth deliberation.

     **D.**     **The Supreme Court's Holding in *Ballew v. Georgia* Cannot be Fairly Applied to the Military Legal System.**

As stated above, the Supreme Court in <u>Ballew</u>, held that the Sixth Amendment required a minimum of six members in a jury trial for non-petty offenses. 435 U.S. 223. However, the Sixth Amendment right to a jury trial does not apply to the military. <u>See</u> <u>Whelchel v. McDonald</u>, 340 U.S. 122, 127 (1950). Thus, <u>Ballew</u> is facially inapplicable. But even moving beyond this facial distinction, and into Plaintiff's due process claim, the Supreme Court relied upon a series of empirical studies of civilian juries. Specifically, the study concluded that "the purpose and functioning of the jury in a criminal trial is seriously impaired, and to a constitutional degree, by a reduction in size to below six members." <u>Ballew</u>, 433 U.S. at 239. The study was obtained from data compiled in the civilian community from randomly selected juries. But courts-martial are composed of all military personal and are not selected in this manner.

As explained above, the court-martial member is dramatically different from his civilian counterpart. <u>See</u> *supra* Part II.C. Thus, in light of these compositional and functional difference, it would be inapposite to apply the empirical study relied upon in <u>Ballew</u> to the military legal system. The military courts have uniformly held that <u>Ballew</u> was inapplicable to the military for this very reason. <u>See, e.g.</u>, <u>United States v. Wolf</u>, 5 M.J. 923 (N.M.C.R. 1978); <u>Guilford</u>, 8 M.J. 598 (A.C.M.R. 1979); <u>United States v. Corl</u>, 6 M.J. 914 (N.C.M.R. 1979). In this case, the appellate court's decision was perfectly consistent with this rationale in rejecting Plaintiff's due process claim. No legal authority contradicts these historical cases or supports the present one.

## Conclusion

The military courts fully and fairly considered the merits of Plaintiff's claim.

Additionally, Congress deliberately chose to create and preserve a special court-martial

comprised of three members, a process that fully comports with the Due Process Clause and

controlling precedent interpreting it.

WHEREFORE, Defendant requests that Plaintiff's complaint be dismissed for lack of

jurisdiction pursuant to Rule 12(b)(1) or, in the alternative, dismissed with prejudice under Rule

12(b)(6) for failure to state a claim.


December 17, 2007                          Respectfully submitted,


                                           _____
                                           JEFFREY A. TAYLOR, D.C. Bar # 498610
                                           United States Attorney


                                            /s/
                                           _____
                                           RUDOLPH CONTRERAS, D.C. Bar # 434122
                                           Assistant United States Attorney


                                            /s/
                                           _____
                                           ALAN BURCH, D.C. Bar # 470655
                                           Assistant United States Attorney
                                           555 4th St., N.W.
                                           Washington, D.C. 20530
                                           (202) 514-7204, alan.burch@usdoj.gov


Of Counsel:
STEPHEN C. REYES
Lieutenant, United States Navy
Office of the Judge Advocate General
General Litigation Division
Department of the Navy
Washington Navy Yard, Washington, D.C.
Telephone: (202) 685-5398