UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| KEVIN R. SANFORD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 07-1792 (RCL) |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | Judge Lamberth |

PLAINTIFF'S STATEMENT OF POINTS AND AUTHORITIES IN
OPPOSITION TO MOTION TO DISMISS AND IN SUPPORT
OF CROSS-MOTION FOR SUMMARY JUDGMENT

*Introduction*

This is an action for collateral review under 28 U.S.C. § 1331 of the constitutionality of a

United States Marine Corps special court-martial conviction, brought as a conventional civil

action because plaintiff is no longer in custody. Sergeant Sanford's claim is both substantial and

fundamental: he was denied due process because the panel that convicted and sentenced him

consisted of only four persons.

*Questions Presented*

DOES THE COURT HAVE JURISDICTION OVER CLAIMS THAT A
COURT-MARTIAL CONVICTION WAS OBTAINED IN VIOLATION OF
THE CONSTITUTION?

DID THE MILITARY COURTS AFFORD SERGEANT SANFORD'S DUE
PROCESS CLAIM FULL AND FAIR CONSIDERATION?

UNDER SUPREME COURT STANDARDS, MAY A JURY THAT IS EM-
POWERED TO ADJUDGE SENTENCES AS LONG AS A YEAR CONSIST
OF ONLY FOUR PERSONS?

*Statement of the Facts*

On October 3, 2003, plaintiff, a sergeant in the United States Marine Corps Reserve, was convicted by a special court-martial of violating a lawful order, dereliction of duty, larceny, and impersonating an officer, all in violation of the Uniform Code of Military Justice ("UCMJ"), 10 U.S.C. §§ 801 *et seq*. Pl. Ex. A.

The maximum punishment prescribed by the *Manual for Courts-Martial* for the offenses for which he was tried is as follows:

> a. violating a lawful order: five years' confinement, reduction to the lowest pay grade, forfeiture of all pay and allowances, and a dishonorable discharge ("DD");

> b. dereliction of duty: six months' confinement, reduction to the lowest pay grade, forfeiture of all pay and allowances, and a bad-conduct discharge ("BCD");

> c. larceny: six months' confinement, reduction to the lowest pay grade, forfeiture of all pay and allowances, and a BCD; and

> d. impersonating an officer: three years' confinement, reduction to the lowest pay grade, forfeiture of all pay and allowances, and a DD.

Pl. Ex. B. Because of the limits imposed by Congress on the punishment powers of a special court-martial, the maximum punishment the court-martial was authorized to adjudge was one year's confinement, reduction to the lowest pay grade, forfeiture of two-thirds pay per month for 12 months, and a BCD. Art. 19, UCMJ, 10 U.S.C. § 819, Pl. Ex. C.

A special court-martial panel must have at least three members. Art. 29(c), UCMJ, 10 U.S.C. § 829(c), Pl. Ex. D. The members of a court-martial are the voting members detailed by the convening authority. Rule for Courts-Martial ("R.C.M.") 103(14), Manual for Courts-Martial, United States (2005 ed.), Pl. Ex. E. Unless the accused opts for a bench trial, Arts. 16(1)(b), -(2)(C), UCMJ, 10 U.S.C. §§ 816(1)(B), -(2)(C), Pl. Ex. C, they serve as triers of fact and determine the sentence in the event of a conviction. Art. 52, UCMJ, 10 U.S.C. § 852, Pl. Ex. F; R.C.M. 921, Pl. Ex.

2

G; R.C.M. 1006, Pl. Ex. I. The panel that decided Sergeant Sanford's guilt and adjudged his sentence consisted of only four members. R. 425, Pl. Ex. I. They sentenced him to six months' confinement, reduction to pay grade E-1, forfeiture of $767 pay per month for six months, and a BCD. Pl. Ex. A. The convening authority approved the sentence as adjudged. Pl. Ex. A.

On November 6, 2006, the United States Navy-Marine Corps Court of Criminal Appeals ("the Navy Court") affirmed the findings of guilt with certain modifications and approved the sentence, except for the confinement portion, which it reduced from six months to 150 days to compensate for the denial of Sergeant Sanford's right to speedy appellate review. *United States v. Sanford*, No. 200500993, 2006 WL 4571896 (N-M. Ct. Crim. App. 2006) (unpub.), Pl. Ex. A. One of his contentions before the Navy Court was that he was denied due process of law because he was tried for a non-petty offense by a court-martial composed of only four members. Pl. Ex. A, at 10 n.2. The Navy Court's sole response to this was as follows:

> We have considered the appellant's eighth assignment of error challenging his convictions for "non-petty offenses" by a panel of only four members, and find it to be without merit. *See United States v. Wolff*, 5 M.J. 923, 925 (N.C.M.R. 1978); *see* also Art. 29, UCMJ.

*United States v. Sanford*, No. 200500993, *supra*, slip op. at 14 n.2, 2006 WL 4571896, Pl. Ex. A, at 10 n.2. *Wolff* concerned a court-martial composed of *five* members, not *four*. 5 M.J. at 924, Pl. Ex. J.

The United States Court of Appeals for the Armed Forces ("CAAF"), from which Sergeant Sanford sought discretionary review on, among other things, his constitutional objection to the number of members, Pl. Ex. K, at 15-20, denied review on February 7, 2007. *United States v. Sanford*, 64 M.J. 429 (2007) (mem.), Pl. Ex. L. Its refusal to grant his petition is not subject to review by the Supreme Court by writ of certiorari. Art. 67a(a), UCMJ, 10 U.S.C. § 867a(a), Pl. Ex. M; 28 U.S.C. § 1259, Pl. Ex. N.

*Argument*

I

THE COURT HAS JURISDICTION

The government maintains (at 7-9) that the case must be dismissed for lack of jurisdiction, insisting (at 8) that "[t]he case law does not establish a new short-cut to federal court to challenge any decision of a military court, without apparent restrictions as to timing, venue, or proper defendant." This contention is without merit.

There is nothing novel about non-habeas collateral review of courts-martial under § 1331. It has been a settled feature of the legal landscape for decades. *See, e.g., Kauffman v. Sec'y of the Air Force*, 415 F.2d 991 (D.C. Cir. 1969). Nor has the government pointed to any defect in timing. Sergeant Sanford sued only eight months after CAAF denied review, and well within the general six-year statute of limitations for actions against the government. 28 U.S.C. § 2401(a). The action is properly brought against the United States (in whose name he was prosecuted). Art. 38(a), UCMJ, 10 U.S.C. § 838(a); R.C.M. 502(d)(5). Venue is also proper. Surely the United States resides, *see* 28 U.S.C. § 1391(e)(1), at the Seat of Government. Moreover, since both the Navy Court and CAAF are physically located within this district, venue would be proper in any event under § 1391(e)(2).

Contrary to the seeming implication of the first full paragraph on page 8 of the government's motion, the Board for Correction of Naval Records ("BCNR") has no authority to set aside Sergeant Sanford's conviction. *See* 10 U.S.C. § 1552(f); *see also Adair v. England*, 183 F. Supp. 2d 31 (D.D.C. 2002) (no duty to exhaust because BCNR is clemency-oriented body not suited to resolving constitutional challenges). But even if it had such authority, there is no exhaustion requirement. *Darby v. Cisneros*, 509 U.S. 137, 154 (1993); *Nation v. Dalton,* 107 F. Supp. 2d 37, 42 n.4 (D.D.C. 2000); *Crane v. Sec'y of the Army*, 92 F. Supp. 2d 155 (W.D.N.Y.

4

2000). Congress has not imposed one for cases such as this, in contrast to certain other kinds of military-related matters. *E.g., Juffer v. Caldera*, 138 F. Supp. 2d 22, 24-25 (D.D.C. 2001).

In any event, the government's jurisdictional argument is foreclosed by *United States ex rel. New v. Rumsfeld*, 448 F.3d 403, 406 (D.C. Cir. 2006). Contrary to the government's claim (at 7-8), the Court of Appeals was not engaging in mere dicta on what is, after all, the threshold, nonwaivable question of subject matter jurisdiction. Judge Sullivan correctly rejected a similar jurisdictional argument in *Oppermann v. United States*, 2007 WL 1748920 (D.D.C. 2007), *aff'd mem.*, No. 07-5213 (D.C. Cir. Nov. 6, 2007).[1] This Court should do the same.

II

THE MILITARY COURTS DID NOT AFFORD SERGEANT SANFORD'S
DUE PROCESS CLAIM FULL AND FAIR CONSIDERATION

The government contends (at 9-11), in the alternative, that Sergeant Sanford's due process claim fails as a matter of law because the military courts gave it "full and fair consideration." This contention, too, is without merit.

A

*The standard of review for full and fair consideration
is the same regardless of the form of collateral attack*

The standard of review is, as the Court of Appeals charitably put it, "more tangled" than the question of subject matter jurisdiction. *New, supra,* at 406.[2] After reviewing the cases, Judge Williams offered the following summary of the state of the law:

---

[1] A petition for rehearing is pending in *Oppermann*.

[2] One author with long military experience refers to "a relative state of anarchy." Richard Rosen, *Civilian Courts and the Military Justice System: Collateral Review of Courts-Martia*l, 108 MIL. L. REV. 5, 88 (1985), quoted in 2 FRANCIS A. GILLIGAN & FREDRIC I. LEDERER, COURT-MARTIAL PROCEDURE § 26-12.00, at 26-7 & n.32 (3d ed. 2006).

> It suffices for our purposes to repeat *Councilman*'s[3] statement that errors must be fundamental to void a court-martial conviction on collateral review. And in light of *Councilman*'s point that non-habeas review is if anything more deferential than habeas review of military judgments, 420 U.S. at 753, 95 S.Ct. at 1300, a military court's judgment clearly will not suffer such a defect if it satisfies *Burns*'s[4] "fair consideration" test.

448 F.3d at 408.

Notwithstanding the suggestion in *Councilman*, there is no logical basis for distinguishing between military convictions for purposes of applying *Burns* depending on whether the defendant is still in custody. As the Court of Appeals observed in *Kauffman, supra*, at 996, making the availability of collateral review contingent on present custody would be arbitrary since custody is unrelated to the gravity of the offense, the punishment, and the objected-to violation of the individual's rights. Allowing the quality or rigor of Article III-court review of a constitutional claim to turn on the fact that the litigant happens to have served his or her term of confinement is equally irrational.

It is scarcely Sergeant Sanford's fault that the multi-tier military appellate process moves slowly. Indeed, although we believe the military courts' casual treatment of his constitutional claim is unimpressive, at least the Navy Court recognized that he had been denied speedy appellate review. 2006 WL 4571896, at *10. Against that backdrop, it would be especially perverse to hold that this Court can give his due process claim a less penetrating review than if he were still in confinement and this case had been brought by petition for a writ of habeas corpus.

Nor is it any answer that Sergeant Sanford's six-month sentence was sufficiently short that it was unlikely in any event that he could obtain appellate review before his imprisonment

---

[3] *Schlesinger v. Councilman*, 420 U.S. 738 (1975).

was over. As Chief Justice Warren cautioned in *Sibron v. New York*, 392 U.S. 40, 52 (1968), "[m]any deep and abiding constitutional problems are encountered primarily at a level of *'low visibility'* in the criminal process—in the context of prosecutions for 'minor' offenses which carry only short sentences" (citation omitted). The year's confinement to which Sergeant Sanford was exposed is hardly a short time and the offenses with which he was charged cannot be described as "minor."

In sum, erecting a different measure of deference to which the military courts are entitled as between habeas and non-habeas review would lead to the irrational result that whether a constitutional defect is subject to an effective remedy in the Article III courts would turn on the fortuity of continued confinement.

B

*The military courts did not afford Sergeant Sanford's constitutional claim the requisite full and fair consideration*

The military courts never afforded Sergeant Sanford's claim[5] full and fair consideration. The Navy Court never heard oral argument. Although it delivered itself of a multi-page opinion, it disposed of this constitutional issue in an utterly conclusory (and mistaken) footnote that relied exclusively on a single case that is readily distinguishable. Wolff was tried by a panel of five members; Sergeant Sanford's had only four. Moreover, the Navy Court paid no heed to the important fact that in the interim Congress had literally doubled the confinement (and pay

---

[4] *Burns v. Wilson*, 346 U.S. 137 (1953).

[5] The government observes (at 10) that "[t]hrough counsel's briefs, the [military] courts obtained a concise view of Plaintiff's position," as if to imply that the briefs should have been more elaborate. In fact, the pertinent part of his brief in support of his petition for a grant of review at CAAF runs from page 15 to page 20, with 24 footnotes. For comparison's sake, Point III of the government's motion, which finally gets around to addressing the merits of Sergeant Sanford's claim, runs from page 12 to page 18.

forfeiture) powers of special courts-martial from six months to twelve. National Defense Authorization Act for Fiscal Year 2000, § 577(a), 113 Stat. 512, 625 (1999) (amending Art. 19, UCMJ, 10 U.S.C. § 819).

The government stresses (at 10-11) the duty of the Navy Court to review cases even when the accused has not filed a brief (irrelevant here), as well as its power to raise issues *sua sponte* (equally irrelevant). It also notes (at 11) that the Navy Court granted relief on other issues. That is neither here nor there; that that court may have done the right thing on some aspects of a case does not entitle other parts of its decision to pass the full-and-fair test—especially where, as here, the matter at issue is of constitutional dimension.

For its part, the Court of Appeals for the Armed Forces denied Sergeant Sanford's petition for review. There was neither plenary briefing nor oral argument. Citing three cases (two of which—*Watson v. McCotter*, 782 F.2d 143 (10th Cir. 1986), and *United States ex rel. Thompson v. Parker*, 399 F.2d 774 (3d Cir. 1968)—are from other Circuits, the government nonetheless insists that even when a matter is thus disposed of summarily, the "full and fair consideration" test has been satisfied. We respectfully disagree.

All one need do is contrast this case with *New*. There the Court of Appeals was faced not with a conclusory and ill-supported brush-off by the service court, but a published opinion that runs to some 18 pages in West's *Military Justice Reporter. United States v. New*, 50 M.J. 729 (Army Ct. Crim. App. 1999). At the next stage, the Court of Appeals in *New* was faced not with an unexplained denial of review by CAAF, but a 35-page published opinion. *United States v. New*, 55 M.J. 95 (C.A.A.F. 2001). It is difficult to view the treatment Sergeant Sanford received as so "full and fair" as to render it unnecessary for this Court even to reach the merits of his constitutional claim, as the government would apparently have it do.

In *New*, the Court of Appeals cited with apparent approval its own prior decision in *Priest v. Secretary of the Navy*, 570 F.2d 1013 (D.C. Cir. 1970). It is instructive that Seaman Apprentice Priest received much fuller shrift—two plenary rulings—from the then Court of Military Appeals than Sergeant Sanford ever did. *See United States v. Priest*, 21 U.S.C.M.A. 64, 44 C.M.R. 118 (1971) (reversing Navy Court court ruling on certification from the Judge Advocate General), 21 U.S.C.M.A. 564, 45 C.M.R. 338 (1972) (affirming on petition for grant of review). Yet the Court of Appeals held it had jurisdiction. 570 F.2d at 1016.

The government's reliance on *Oppermann* is certainly understandable, but this Court is not bound by Judge Sullivan's decision, and the Court of Appeals' summary affirmance makes no reference to whether Lieutenant Commander Oppermann had received full and fair consideration in the military courts.

Since the government relies on a Tenth Circuit case, it is fair to note that that court itself, after *Watson*, expressly recognized that while summary action by the military courts "is not sufficient to justify our review of" a constitutional issue, "when the military courts' summary affirmance is considered with the other three factors in *Calley*,"[6] a claim can fulfill the requirements for review. *Dodson v. Zelez*, 917 F.2d 1250, 1253 (10th Cir. 1990). Even more recently, the Tenth Circuit has held that CAAF's issuance of a "formulary order . . . denying relief [that] does not indicate the consideration given to petitioner's claims or admit of review" is a factor favoring collateral review. *Khan v. Hart*, 943 F.2d 1261, 1263 (10th Cir. 1991); *see also*

---

[6] *Calley v. Calloway*, 519 F.2d 184 (5th Cir. 1975). Those other three factors were the presence of an issue of substantial constitutional dimension; an issue of law, rather than fact; and possible military considerations that may warrant different treatment of constitutional claims. 917 F.2d at 1252-53; *see also Mendrano v. Smith*, 797 F.2d 1538, 1542 n.6 (10th Cir. 1986) (upholding six-member general court-martial).

*id*. at 1262 ("formulary order").[7]

The government also relies on a 1968 decision of the Third Circuit. Subsequent decisions in that Circuit suggest that that reliance is misplaced. For example, in *Brosius v. Warden, U.S. Penitentiary, Lewisburg, Pa.*, 278 F.3d 239 (3d Cir. 2002) (Alito, J.), the court in fact reviewed a military accused's claims, notwithstanding the fact that his conviction had been affirmed by the Army Court of Military Review in a published opinion, *United States v. Brosius*, 37 M.J. 652 (A.C.M.R. 1993), and summarily affirmed by the Court of Military Appeals. 39 M.J. 378 (C.M.A. 1994) (mem.). *See* 278 F.3d at 240. The Army Court's opinion addresses Mr. Brosius's suppression claim in some detail. 37 M.J. at 659-60.  (C.M.A.'s subsequent summary affirmance, of course, at least afforded Mr. Brosius an opportunity to seek a writ of certiorari (although he appears not to have done so), which is more than Sergeant Sanford ever got from CAAF.)

Describing the Third Circuit's *Burns* cases as "far from seamless," 278 F.3d at 244, Judge (as he then was) Alito contrasts *Thompson* with *Levy v. Parker*, 478 F.2d 772 (3d Cir. 1973), a case that in turn was reversed by the Supreme Court in the landmark case of *Parker v. Levy*, 417 U.S. 733 (1974), which of course addressed Dr. Levy's arguments in considerable depth, even though he was the recipient of a full opinion from the Army Board of Review. *See United States v. Levy*, 39 C.M.R. 672 (A.B.R. 1968), *pet. denied*, 18 U.S.C.M.A. 627 (1969). Significantly, he quoted the Third Circuit's observation in *Levy* that "a habeas court may examine de novo those constitutional claims 'not dependent upon any evidentiary or factual construction.'" 278 F.3d at 244 (quoting *Levy* at 778). A subsequent lower court decision in the

---

[7] Given *Khan*'s citation to *King* in counting summary disposition as a factor *favoring* review, it would certainly seem that *King* does not have the preclusive meaning imputed to it by the government. *See also Jefferson v. Berrong*, 783 F. Supp. 1304, 1308 (D. Kan. 1992) (citing *Khan* at 1262 and reviewing ineffective assistance of counsel claim despite summary disposition by Court of Military Appeals), *appeal dismissed*, 992 F.2d 1222, 1993 WL 128710 (10th Cir. 1993).

Third Circuit has relied on *Brosius* in rejecting a government claim—based on *Watson*, the very same Tenth Circuit case as the government invokes here—that "summary denials of claims by a military tribunal can constitute full and fair consideration." *Armann v. Warden, FCI-McKean*, 2007 WL 1576407, at *7 n.2 (W.D. Pa. 2007). *Thompson*'s authority in the Third Circuit itself is open to substantial doubt; there is certainly no reason to give it greater sway here.

Finally, the Court should take into account the fact that even as it conferred certiorari jurisdiction on the Supreme Court over CAAF decisions, Congress expressly excluded denials of review. Art. 67a(a), UCMJ, 10 U.S.C. § 867a(a). The indefensible result of that action—which we assume will be rectified sooner rather than later—is that unless review is available in the district courts, constitutional questions such as the one Sergeant Sanford has raised will never be reviewed in *any* Article III court, since both the Navy Court and CAAF are Article I courts. *Weiss v. United States*, 510 U.S. 163, 166-67 (1994); *Ryder v. United States*, 515 U.S. 177, 186-87; Art. 141, UCMJ, 10 U.S.C. § 941. Adopting a stricter test for collateral review jurisdiction than existed at the time Congress acted would give the limitation it imposed on certiorari review of courts-martial a preclusive effect which there is no evidence that Congress intended.[8] At the very least, the Court should be reluctant to do so "without a clear signal from Congress" that it intended to foreclose meaningful review by the only available Article III court. *See Territory of*

---

[8] Indeed, during floor debate on the Military Justice Act of 1983 (which included the expansion of the Supreme Court's certiorari jurisdiction to cover direct appellate review of courts-martial), Senator Kennedy noted

> that, although certiorari review of COMA [the Court of Military Appeals] should alleviate the need for collateral review of military cases, this legislation itself does not modify the general law relating to collateral remedies, and the military defendant should have the *same* access to collateral remedies as is *currently* enjoyed by any Federal or State criminal defendant.

129 CONG. REC. S34,312-13 (daily ed. Nov. 18, 1983) (emphases added).

*Guam v. Olsen*, 431 U.S. 195, 201-02 (1977).

III

PLAINTIFF'S CONVICTION MUST BE SET ASIDE BECAUSE
THE COURT-MARTIAL HAD TOO FEW MEMBERS

Whether or not the military courts gave full and fair consideration to Sergeant Sanford's due process claim, this Court must proceed to the next step in the *New* analysis and determine whether their judgment conforms with Supreme Court standards. *See Oppermann, supra*, at *6-*8.

Sergeant Sanford's claim is that the Supreme Court has determined that a criminal jury in a non-petty-offense case must consist of at least six persons. *Ballew v. Georgia*, 435 U.S. 223 (1978).[9] That determination was made as a matter of Fourteenth Amendment due process, since the Sixth Amendment does not apply *ex proprio vigore* to the States. Since, however, due process also governs the military justice system through the Fifth Amendment, *Weiss v. United States*, 510 U.S. 163, 179 (1994), Supreme Court jurisprudence supports Sergeant Sanford's claim.

In *Ballew*, the Supreme Court held that using a five-person jury for non-petty offenses involved "grave questions of fairness" and violated due process. The Court had previously defined non-petty crimes as those for which more than six months of confinement is authorized. *Baldwin v. New York*, 399 U.S. 66 (1970). Since the maximum period of confinement to which Sergeant Sanford was exposed was a year, his trial falls within *Ballew*.

---

[9] Even a jury of six does not satisfy due process if the jury need not be unanimous. *Burch v. Louisiana*, 441 U.S. 130 (1979). While we believe the jury of four that tried Sergeant Sanford unarguably falls below the due process minimum, the matter is only made worse by the fact that those four need not have been unanimous either to convict or to sentence. Under the UCMJ, only a two-thirds vote—here, three—was needed. Art. 52(a)(2), -(b)(3), 10 U.S.C. § 852(a)(2), -(b)(3), Pl. Ex. F.

In *Williams v. Florida*, 399 U.S. 78 (1970), the Supreme Court noted that the "purpose of the jury trial . . . is to prevent oppression by the Government." In *Ballew*, it held that a jury of less than six could not fulfill this purpose. Citing empirical data, Justice Blackmun noted that "progressively smaller juries are less likely to foster effective group deliberation." 435 U.S. at 233. The smaller the group, "the less likely it is to overcome the biases of its members to obtain an accurate result." *Id*. Further, the Court expressed doubts about the "accuracy of the results achieved by smaller and smaller panels." *Id*. at 234. "As the size diminished to five and below, the weighted sum of errors increased because of the enlarging risk of the conviction of innocent defendants." *Id*. Additionally, "the data suggest that the verdicts of jury deliberation in criminal cases will vary as juries become smaller, and that the variance amounts to an imbalance to the detriment of one side, the defense." *Id*.

The government advances a variety of arguments in an effort to avoid the simple proposition on which Sergeant Sanford's case rests. These arguments are unpersuasive.

1. The government cites to history, arguing (at 14-15) that there have been courts-martial of fewer than six members from the time of the Founders. This version of history is incomplete and, given the issue presented, seriously misleading. While it is true that there has been provision for courts-martial of as few as five and later three members, that minimum size provision applied only to regimental courts-martial, and those courts had authority only to impose very minor punishments. Section XIV of the 1776 Articles of War provided:

> Art. 10. The commissioned officers of every regiment may, by the appointment of their colonel or commanding officer, hold regimental courts-martial for the enquiring into such disputes, or criminal matters, as may come before them, and for the inflicting corporeal punishments for small offenses, and shall give them judgment by the majority of voices; but no sentence shall be executed till the commanding officer (not being a member of the court-martial) or the commandant of the garrison, shall have confirmed the same.

> Art. 11. No regimental court-martial shall consist of less than five officers, excepting in cases where than number cannot conveniently be assembled, when three may be sufficient; who are likewise to determine upon the sentence by the majority of voices; which sentence is to be confirmed by the commanding officer of the regiment, not being a member of the court-martial.

> By 1786, the Articles of War provided:

> Art. 4. No garrison or regimental court-martial shall have the power to try capital cases, or commissioned officers; neither shall they inflict a fine exceeding one month's pay, nor imprison, nor put to hard labor, any non-commissioned officer or soldier, for a longer time than one month.

WILLIAM WINTHROP, MILITARY LAW AND PRECEDENTS 968, 972 (2d ed. 1920, reprinted 1979).

The 1806 Articles continued the one-month's limit on confinement by courts-martial that could consist of as few as three members. *Id*. at 982 (Art. 67); *see also id*. at 486 (discussing power of punishment of "inferior" courts-martial under 1874 Article of War 83).

The government's appeal to history for the purpose of demonstrating what due process requires therefore fails: at the time the Bill of Rights was ratified, a court-martial of three or (as here) four could not confine a person for more than one month. The constitutional deficiency is only aggravated by Congress's 1999 doubling of the special court-martial punishment ceiling from six months to a year. When President Bush implemented that change in 2002 by promulgating R.C.M. 201(f)(2)(B), it marked the first time in the Nation's history that special courts-martial were permitted to try offenses that—judged by the maximum permissible punishment—were non-petty.

The Supreme Court observed in *Weiss v. United States*, 510 U.S. 163 (1994), that history is "a factor that must be weighed" in the due process "calculation," *id*. at 178, but cautioned that "[w]e do not mean to say that any practice in military courts which might have been accepted at some time in history automatically satisfies due process of law today." *Id*. at 177. As we have explained, the history does not support the government's argument, but even if it did, that would

14

not be the end of the matter.

2. The second point in the government's effort to elude *Ballew* is that increasing panel size will adversely affect the use of military resources. This argument is similarly without merit. The gravamen is that having to detail more than three (or, as here, four) members to a special court-martial would potentially affect the unit's function, especially in the case of small commands with limited personnel. This is what Justice Frankfurter once called an "appeal to unreality." *Sibbach v. Wilson & Co.*, 312 U.S. 1, 18 (1941) (Frankfurter, J., dissenting). For one thing, convening authorities of both general and special courts-martial typically detail more than the jurisdictional minimum for the simple reason that each party is entitled under the UCMJ to both challenges for cause and peremptory challenges, Art. 41, UCMJ, 10 U.S.C. § 841; R.C.M. 912, the exercise of which would invariably reduce the panel below the statutory minimum and bring the proceedings to a screeching halt. Detailing more than the minimum number has not been a source of problems. David A. Schleuter, *The Twentieth Annual Kenneth J. Hodson Lecture: Military Justice for the 1990s—A Legal System Looking for Respect*, 133 MIL. L. REV. 1, 17-18 (1991).

The weakness of this aspect of the government's defense is underscored by its reliance on the small-vessel paradigm. The UCMJ and *Manual for Courts-Martial* erect no impediment to a convening authority detailing personnel from another command. *See* Art. 25, UCMJ, 10 U.S.C. § 825; R.C.M. 502. In fact, this is often the case. They need not even be members of the same armed force as the convening authority. Worse yet, as the government elsewhere notes (at 17), if the accused is an enlisted member, as Sergeant Sanford was, and requests enlisted members on the panel, *see* Art. 25(c), UCMJ, 10 U.S.C. § 825(c), as he in fact did, *see* Pl. Ex. A, at 1, those members *must* come from some other unit.

The small-vessel "horrible" on which the government relies presumes that a special court-martial will be convened at sea by a unit with so few officers it would be a hardship on the command. This is utterly unrealistic. When commanders of small vessels convene courts-martial, the proceedings are not conducted at sea.[10] Rather, because of the statutory requirements for a military judge and lawyer counsel both to prosecute and defend, such cases are tried ashore in a courtroom. The only conceivable exception in this day and age might be the rare instance in which the commanding officer of an aircraft carrier not only convenes a court-martial but provides for the trial to take place on board. Of course, the officer complement of an aircraft carrier is enormous, running into the hundreds. It is no hardship to find six officers on such a warship to serve on a court-martial.

3. The third string to the government's bow (at 16-18) is that the Court need not worry about *Ballew* because Congress has provided other safeguards. It is of course true that the UCMJ includes a variety of safeguards, but none of the protections to which the government points address the small-group dynamics concerns that expressly drove *Ballew*. Safeguards against some other mischief are not pertinent to a *Ballew* claim.

4. Finally, the government insists (at 18) that *Ballew* "cannot be fairly applied to the military legal system," citing three inapposite lower court cases,[11] and arguing in essence that "the court-martial member is dramatically different from his civilian counterpart." But the

---

[10] The government's motion inadvertently confirms the shore side nature of courts-martial by seeking to inflate the administrative burdens. Thus, it points (at 16) to the fact that "small commands are oftentimes called upon to provide witnesses and other personnel responsible for the administration of the court-martial, such as[] brig escorts, drivers, etc." A vessel that is tasked with providing brig chasers and drivers is a vessel in port.

[11] Both *Wolff, supra*, and *United States v. Corl*, 6 M.J. 914 (N.C.M.R. 1979), involved five-member courts-martial. *United States v. Guilford*, 8 M.J. 598 (A.C.M.R. 1979), involved a seven-member court-martial.

government has made no showing that the empirical basis on which *Ballew* rests would be any different in light of the compositional differences between court-martial members and civilian jurors. Nor can it plausibly maintain that court-martial members are functionally different from civilian jurors. They find guilt or innocence; they are subject to for-cause and peremptory challenge; they are instructed by a judge; they deliberate behind closed doors; they may not deliberate before being instructed; they vote by secret ballot; they do not rule on legal issues. The government's "function" argument is therefore unfounded.

*Conclusion*

For the foregoing reasons, the Court should deny defendant's motion to dismiss and grant summary judgment for plaintiff. The judgment should declare that his conviction is unconstitutional and therefore null and void.

Respectfully submitted,

/s/
EUGENE R. FIDELL (112003)
MATTHEW S. FREEDUS (475887)
BRENT C. HARVEY (501155)
FELDESMAN TUCKER LEIFER FIDELL LLP
2001 L Street, N.W., Second Floor
Washington, D.C. 20036
(202) 466-8960

*Attorneys for Plaintiff*

January 14, 2008

Westlaw.

Not Reported in M.J.                                                          Page 1

Not Reported in M.J., 2006 WL 4571896 (N.M.Ct.Crim.App.)
(Cite as: Not Reported in M.J.)

U.S. v. Sanford
N.M.Ct.Crim.App.,2006.
Only the Westlaw citation is currently available.
U.S. Navy-Marine Corps Court of Criminal Appeals.
UNITED STATES
v.
Kevin R. SANFORD, Sergeant (E-5), U.S. Marine
Corps Reserve.
200500993.

Sentence Adjudged 3 Oct. 2003.
Decided 6 Nov. 2006.

Sentence adjudged 3 October 2003. Military Judge:
D.M. Jones. Review pursuant to Article 66(c),
UCMJ, of Special Court-Martial convened by
Commanding Officer, Headquarters and Support
Battalion, School of Infantry, Training Command,
Camp Pendleton, CA.

LT Brian L. Mizer, JAGC, USNR, Appellate
Defense Counsel.
LT M.H. Herrington, JAGC, USNR, JAGC,
Appellate Government Counsel.

Before HARTY, KELLY and FREDERICK,
Appellate Military Judges.

**AS AN UNPUBLISHED DECISION, THIS
OPINION DOES NOT SERVE AS
PRECEDENT.**HARTY, Judge:
*1 Contrary to his pleas, a special court-martial,
composed of officer and enlisted members, found
the appellant guilty of violating a lawful order,
dereliction in the performance of his duties, larceny,
and impersonating a commissioned officer, in
violation of Articles 92, 121, and 134, Uniform
Code of Military Justice, 10 U.S.C. §§ 892, 921,
and 934. The appellant was sentenced to
confinement for six months, forfeiture of $767.00
pay per month for six months, reduction to pay
grade E-1, and a bad-conduct discharge. The

convening authority (CA) approved the sentence as
adjudged.

We have reviewed the record of trial, the appellant's
eight assignments of error, and the Government's
response. We find merit in several assignments of
error and will take corrective action in our decretal
paragraph, reassess sentence, and grant sentence
relief for excessive post-trial delay. Otherwise, we
conclude that the findings and the sentence are
correct in law and fact and that no error materially
prejudicial to the substantial rights of the appellant
was committed. Arts. 59(a) and 66(c), UCMJ.

## Background

The appellant was the Marine Corps Reserve liaison
for the School of Infantry (SOI) at Camp Pendleton,
California. In that capacity, he became associated
with Private First Class (PFC) B, a Marine reservist
who was sent home from SOI due to family
problems in Texas. PFC B later returned to SOI to
complete his training, however, he reported with a
hand injury, suffered on his civilian job, and was
returned home again within a few days.

The appellant was aware that PFC B was having
financial problems at home and looked for ways to
bring him back on active duty. The appellant could
not get PFC B back into SOI right away, so he had
him transferred from his reserve unit in Texas to a
reserve unit at Camp Pendleton. The appellant tried
to get PFC B transferred to the California reserve
unit on Additional Duty for Special Work (ADSW)
orders so he would receive travel reimbursement,
and active duty pay and benefits for his family. The
reserve unit, however, did not have any ADSW
funds, so the appellant arranged for PFC B to
perform all of his drills back-to-back for the new
reserve unit at SOI. PFC B, however, did not have
the funds to arrange travel for himself from Texas
to Camp Pendleton.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Exhibit A**

Not Reported in M.J.                                                                 Page 2

Not Reported in M.J., 2006 WL 4571896 (N.M.Ct.Crim.App.)
**(Cite as: Not Reported in M.J.)**

PFC B told his employer that he had been recalled to active duty and asked the employer if he could help him with the cost of travel. The employer did not believe him and wanted to talk to someone in the military to confirm PFC B's story. The appellant called PFC B's employer the same day to provide that confirmation. The appellant told PFC B's employer that: (1) PFC B was being recalled to active duty to complete his training; (2) that PFC B would be in trouble if he did not report as ordered; (3) that the Marine Corps would not pay PFC B's travel because he was a reservist and travel money was being used to send active duty personnel overseas; and, (4) that if airfare was provided by the employer, the military would provide PFC B with medical care to fix his hand injury that was the employer's responsibility to fix. It turned out that PFC B's recall orders were falsely prepared by the appellant to appear like original orders in message format. Based on the appellant's false representations, PFC B's employer used his credit card to purchase airfare over the internet for PFC B's travel to Camp Pendleton.

## Impartial Judge

*2 For his first assignment of error, the appellant claims that the military judge abandoned his impartial role by reopening the hearing on the appellant's motion to suppress statements, and directing the Government to call witnesses to testify at that hearing. The appellant does not challenge the military judge's findings of fact or legal conclusions as part of this assignment of error. We find that the military judge did not abandon his neutral role in resolving the appellant's motion to suppress.

During pretrial motions, the appellant moved to suppress his multiple custodial statements to Captain (Capt) M, because (1) Capt M failed to fully and accurately advise the appellant of his Article 31(b), UCMJ, rights; (2) any waiver of his Article 31(b) rights was not knowingly and voluntarily made; (3) his request to consult with an attorney was ignored; and, (4) any statements made after these violations were derivative of the prior inadmissible statements. Appellate Exhibit IV. Capt M and the appellant testified on the motion. The

next day, the military judge sent an email to the parties stating that he did not have enough evidence upon which to decide the appellant's motion to suppress and directed the Government to produce additional witnesses to testify on the motion the next day. Appellate Exhibit XL. At the next day's motion hearing, the trial defense counsel objected to the military judge receiving additional evidence on the motion, because the burden was on the Government by a preponderance of the evidence and that burden had not been met if the military judge required additional evidence in order to rule on the motion. Record at 228. The military judge then called three witnesses who had given statements to Capt M as part of the investigation that led to the appellant's charges. The military judge conducted the inquiry of each witness, and the parties were given the opportunity to ask questions of the witnesses. The military judge's questions concerned the procedure followed by Capt M to inform each witness of their rights under Article 31(b), UCMJ.

A military judge is permitted to call or recall witnesses, *sua sponte,* and has wide latitude to question witnesses. Art. 46, UCMJ; MILITARY RULE OF EVIDENCE 614, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2002 ed.); RULE FOR COURTS-MARTIAL 801(c), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2002 ed.); *see also*United States v. Acosta, 49 M.J. 14, 17-18 (C.A.A.F.1998); *United States v. Sowders,* 53 M.J. 542, 545-46 (N.M.Ct.Crim.App.2000). He must remain impartial, but he does not "lay aside impartiality when he asks questions in the appropriate case to clarify factual uncertainties."*United States v. Reynolds,* 24 M.J. 261, 264 (C.M.A.1987). The legal test is whether, from the viewpoint of a reasonable person and "taken as a whole in the context of this trial, a court-martial's legality, fairness, and impartiality were put into doubt by the military judge's questions."*Acosta,* 49 M.J. at 18 (quoting *United States v. Ramos,* 42 M.J. 392, 396 (C.A.A.F.1995))(internal quotation marks omitted); *see also United States v. Schember,* 50 M.J. 670, 673 (N.M.Ct.Crim.App.1999).

The military judge did not abandon his neutral role

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in M.J., 2006 WL 4571896 (N.M.Ct.Crim.App.)
**(Cite as: Not Reported in M.J.)**

in this case. Capt M and the appellant testified differently concerning when the appellant's Article 31(b), UCMJ, warnings were given, how they were given, and the substance of those warnings as given. This issue was raised by the appellant both in his pretrial motion and in his testimony on the motion. The military judge's actions in directing that additional witnesses be called on this issue was no more than an attempt to clarify the factual matters initially raised by the appellant, and fully within the procedures available to him. The answers to his questions could just as easily have gone in the appellant's favor. We are satisfied that a reasonable person observing the appellant's court-martial would not doubt its fairness or the impartiality of the military judge. Accordingly, we decline to grant relief.

### Motion to Suppress

*3 For his second assignment of error, the appellant claims that the evidence presented on his motion to suppress statements does not support the military judge's findings that Article 31(b), UCMJ, was complied with. We disagree.

The appellant argues that the Article 31(b), UCMJ, procedures followed by Capt M, as described by the additional witnesses called by the military judge, did not amount to "habit evidence," and, therefore, the military judge erred in relying on that testimony in making his findings of fact. The Government, however, correctly notes that the military judge is not bound by the Military Rules of Evidence, except for privileges, when resolving preliminary questions concerning the admissibility of evidence. *See*MIL. R. EVID. 104(a).

The additional witnesses testified concerning how they were advised of their Article 31(b), UCMJ, rights by Capt M during the investigation that produced statements leading to the appellant's charges. This testimonial evidence did not have to qualify as "habit evidence" in order for the military judge to give it weight in resolving disputed factual issues on the motion. We will review the military judge's findings of fact and conclusions of law under the prevailing appellate standard of review.

"A military judge's decision to admit or exclude evidence is reviewed under an abuse of discretion standard."*United States v. McDonald*, 59 M.J. 426, 430 (C.A.A.F.2004)(citing *United States v. Tanksley*, 54 M.J. 169, 175 (C.A.A.F.2000), *overruled*on other grounds by*United States v. Inong*, 58 M.J. 460, 464 (C.A.A.F.2003))."[A] military judge abuses his discretion if his findings of fact are clearly erroneous or his conclusions of law are incorrect."United States v. Ayala, 43 M.J. 296, 298 (C.A.A.F.1995). We conclude that the military judge's findings of fact are supported by the record and are not clearly erroneous, and his conclusions of law are not incorrect. This assignment of error is without merit.

### Legal and Factual Sufficiency

*4 For his next three assignments of error, the appellant claims that the evidence was not factually or legally sufficient to prove his guilt beyond a reasonable doubt of dereliction of duty (Charge I), larceny (Charge II), or impersonating a commissioned officer (Charge III). We disagree as to the charge of dereliction of duty, but agree with the appellant as to the charges of larceny and impersonating a commissioned officer. Corrective action will be ordered in our decretal paragraph and we will reassess the appellant's sentence accordingly.

When testing for legal sufficiency, we look at " whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt."*United States v. Roderick*, 62 M.J. 425, 429 (C.A.A.F.2006)(quoting *United States v. Turner*, 25 M.J. 324, 324 (C.M.A.1987) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). Legal sufficiency is a question of law that we review *de novo*. United States v. Hays, 62 M.J. 158, 162 (C.A.A.F.2005). For factual sufficiency, we weigh all the evidence in the record of trial, recognizing that we did not see or hear the witnesses, and determine whether we are convinced of the appellant's guilt beyond a reasonable doubt. *Turner*, 25 M.J. at 325;*see* Art. 66(c), UCMJ. We will apply

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in M.J.                                                          Page 4

Not Reported in M.J., 2006 WL 4571896 (N.M.Ct.Crim.App.)
**(Cite as: Not Reported in M.J.)**

these standards to each challenged finding of guilt.

### 1. Dereliction of duty

The appellant was found guilty of being derelict in the performance of his duties by "failing to ensure proper information was [inputted] into Marine Corps Total Force System (MCTFS) Diary Retrieval System."Charge Sheet. The appellant correctly notes that a service member cannot be derelict in the performance of a duty that he or she does not have, or a duty that is voluntarily assumed.

An essential element of any dereliction in the performance of duties is that the appellant "had certain duties." MANUAL FOR COURTS-MARTIAL, UNITED STATES (2002 ed.), Part IV, ¶ 16b(3)(a). These duties "may be imposed by treaty, statute, regulation, lawful order, standard operating procedure, or custom of the service."Id., ¶ 16c(3)(a). A violation of a self-imposed duty, however, is not a violation of Article 92, UCMJ. United States v. Dallman, 34 M.J. 274, 275 (C.M.A.1992). We must decide whether the appellant had any duty to ensure proper information was inputted into the MCTFS Diary Retrieval System, and whether that duty was anything other than self-imposed.

The record establishes that the appellant was the unit's Reserve liaison. In that position, it was his duty to provide proficiency and conduct marks to the diary clerks for Marine Reservists. The diary clerks would physically enter that information into the MCTFS Diary Retrieval System. The appellant provided proficiency and conduct marks to the diary clerks for PFC B, a Marine Reservist, on four or five occasions. These marks had never been issued by anyone authorized to evaluate PFC B, and were fraudulent. These facts convince us that the appellant had a duty to provide accurate proficiency and conduct mark information to the diary clerks, and that he was aware that the proficiency and conduct marks he provided to the diary clerks concerning PFC B were fraudulent. Considering the evidence in the light most favorable to the prosecution, a reasonable fact finder could have found all the essential elements of willful

dereliction of duty beyond a reasonable doubt. We, ourselves, are convinced of the appellant's guilt beyond a reasonable doubt. This assignment of error is without merit.

### 2. Larceny

*5 The appellant was found guilty of larceny of U.S. currency by inducing PFC B's civilian employer to purchase an airline ticket so PFC B could report to Camp Pendleton in accordance with military orders. The entire basis for reporting to Camp Pendleton, however, was false, because the appellant created fraudulent orders recalling PFC B to active duty. PFC B's employer provided him with an airline ticket to report to Camp Pendleton based on the appellant's misrepresentations.

The appellant now asserts that this cannot be larceny because there is no property involved, only a service-the flight to California. Therefore, according to the appellant, he should have been charged with obtaining services under false pretense, in violation of Article 134, UCMJ. The Government argues that the $240.50 the victim spent to purchase the airline ticket, based on the appellant's misrepresentations, is the property stolen from the victim by false pretense. We find that the larceny conviction cannot stand, but for reasons other than raised by the appellant.

The appellant's fact pattern can be simplified as follows: A (appellant) induced B (PFC B's employer) through false pretenses to purchase something (airline ticket) for C (PFC B). Such a scenario can fall within the strict confines of Article 121, UCMJ. See United States v. Ragins, 11 M.J. 42, 46 (C.M.A.1981)("False pretenses used by A to induce B to transfer property to C ... can probably fit within the literal language of Article 121"). Even though there may have been a larceny, we must decide whether the evidence supported a guilty finding of the larceny as charged.

The appellant was charged with, and convicted of, larceny of U.S. currency from PFC B's employer. The amount of currency pled was the same as what was charged to the employer's credit card for PFC

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in M.J., 2006 WL 4571896 (N.M.Ct.Crim.App.)
(Cite as: Not Reported in M.J.)

B's airline ticket. The appellant was not charged with the larceny of the airline ticket itself. However, there cannot be a larceny of U.S. currency unless the evidence shows that currency actually transferred from the victim to another party as a result of the appellant's inducements. *Compare United States v. Albright,* 58 M.J. 570, 573 (Army Ct.Crim.App.2003)(finding no larceny of public funds where there is no evidence that public funds were actually disbursed because of the appellant's fraudulent use of her government credit card), *with United States v. Christy,* 18 M.J. 688, 690 (N.M.C.M.R.1984)(finding larceny of government funds where personal purchases were made with a government credit card and the government actually disbursed funds to pay the vendor).

PFC B's employer testified that he paid $240.50 for an airline ticket to send PFC B to Camp Pendleton, and that it was purchased from Travelocity. Record at 573. Documentary evidence establishes that the purchase was made on-line with a credit card. Prosecution Exhibit 7. There is no evidence that the victim paid his credit card company for that purchase.[FN1]Based on this evidence, the Government has established only that the victim incurred a legal obligation to pay a debt to his credit card company for the purchase of an airline ticket induced by the appellant's misrepresentations, but not the larceny of U.S. currency. *Albright,* 58 M.J. at 573.

> FN1. The parties stipulated that as part of PFC B's plea agreement with the Government, PFC B paid his employer $300.00 on 1 October 2003 for the airline ticket. Appellate Exhibit LXIII; Record at 763. This, however, does not establish that the employer transferred any funds to his credit card company.

We conclude that the evidence is neither legally nor factually sufficient to establish larceny of U.S. currency. We are also unwilling to affirm a conviction for larceny of the airline ticket by exceptions and substitutions, because the specification makes no reference to an airline ticket. *See Dunn v. United States,* 442 U.S. 100, 106, 99

S.Ct. 2190, 60 L.Ed.2d 743 (1979)("To uphold a conviction on a charge that was neither alleged in an indictment nor presented to a jury at trial offends the most basic notions of due process. Few constitutional principles are more firmly established than a defendant's right to be heard on the specific charges of which he is accused."); *see also United States v. Wray,* 17 M.J. 375, 376 (C.M.A.1984) (holding that an accused cannot be convicted by exceptions and substitutions of a larceny different from that charged). We conclude, therefore, that the finding of guilty to larceny of U.S. currency under Charge II cannot be affirmed. That conclusion, however, does not end our inquiry.

**\*6** This court has the authority to set aside a finding of guilty and affirm only a finding of guilty to a lesser included offense. Art. 59(b), UCMJ. We may not, however, affirm a finding of guilty to an included offense on a theory not presented to the trier of fact. *United States v. Riley,* 50 M.J. 410, 415 (C.A.A.F.1999)(quoting *Chiarella v. United States,* 445 U.S. 222, 236, 100 S.Ct. 1108, 63 L.Ed.2d 348 (1980) and citing *United States v. Standifer,* 40 M.J. 440, 445 (CMA 1994)). Attempted larceny of U.S. currency is a lesser included offense of the larceny as charged. *See* MCM, Part IV, ¶ 46d(1)(b). The evidence presented is both factually and legally sufficient to support the elements of the included offense, and affirming a finding of guilty for the included offense is not based on a different theory of guilt. We, therefore, will take corrective action in our decretal paragraph and reassess the appellant's sentence accordingly.

### 3. Impersonating a commissioned officer

The appellant asserts that the evidence is legally and factually insufficient to support a conviction of impersonating a commissioned officer, because he never wore the uniform or insignia. The appellant agrees, however, that:
The gravamen of the military offense of impersonation does not depend upon the accused deriving a benefit from the deception or upon some third party being misled, but rather upon whether the acts and conduct would influence adversely the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in M.J.                                                                          Page 6

Not Reported in M.J., 2006 WL 4571896 (N.M.Ct.Crim.App.)
**(Cite as: Not Reported in M.J.)**

good order and discipline of the armed forces.

Appellant's Brief of 22 Jun 2006 at 18 (quoting United States v. Messenger, 6 C.M.R. 21, 24-25, 1952 WL 2268 (C.M.A.1952)). Although we agree with the appellant that most impersonation cases involve the wearing of a commissioned officer's or noncommissioned officer's uniform or insignia, or the affirmative oral representation that one holds that position, we do not find those are the only ways to wrongfully impersonate, in violation of Article 134, UCMJ. That, however, does not answer the question whether there is legally and factually sufficient evidence to support the appellant's conviction.

The appellant was charged with, and found guilty of, impersonating "a commissioned officer of the Marine Corps, by drafting up orders with the intent to defraud [PFC B's employer] by pretending to be Captain Johnson."Charge Sheet. PFC B testified that the appellant told him that he, the appellant, had written orders that PFC B could provide to his, PFC B's, employer to prove his recall to active duty. The orders were sent by facsimile machine to PFC B's father who showed the orders to PFC B. The appellant subsequently told PFC B that he, the appellant, "made these orders," Record at 463, and that they "were made off of a base copy of orders ... and that he had changed it up and replaced the actual officer of the original orders and some other information there to mine and his information...."Id. at 470.The recall orders bear the following language indicating the source of those orders: "16. DRAFTER OF THESE ORDERS WAS: JPS. JPS, EXTENSION: 0000 JOHNSON, CAPT, USMC, EXTENSION: 1369."PE 3 at 2. PFC B testified that he did not believe that "Capt Johnson" was a real person, because "the appellant stated that he made him up."Record at 471.

*7 Having reviewed the record of trial and having weighed all the evidence in this case, we do not believe that a rational fact finder could be convinced of the appellant's guilt of impersonating a commissioned officer merely by typing a fictitious officer's name at the bottom of fictitious orders. We ourselves are not convinced of the appellant's guilt. While the creation of fraudulent orders to bring

someone on active duty is prejudicial to good order and discipline, there is no evidence that what the appellant did rises to the level of assuming the role of a commissioned officer, masquerading as a person of high rank, falsely holding himself out as an officer, or pretending to have the authority of an officer. See United States v. Yum, 10 M.J. 1, 4 (C.M.A.1980); United States v. Demetris, 26 C.M.R. 192, 194, 1958 WL 3336 (C.M.A.1958); Messenger, 6 C.M.R. at 24-25. This, however, does not end our inquiry.

We have no doubt that the appellant's conduct, including falsifying military orders with the intent to defraud someone, was prejudicial to good order and discipline or service discrediting. The Specification's language-"by drafting up orders with the intent to defraud [PFC B's employer]" - places the appellant on notice that the Government was alleging that these acts were within the prohibitions of Article 134, UCMJ. Under these circumstances, we believe the above language, contained within the greater language alleging impersonation of a commissioned officer under Article 134, UCMJ, is an included offense, as conduct prejudicial to good order and discipline or of a nature to bring discredit upon the armed forces, under that same Article. We, therefore, affirm the finding of guilty to Charge III and its Specification by excepting the words " impersonate a commissioned officer of the Marine Corps, by," excepting "ing" from the word " drafting," and excepting "by pretending to be Captain Johnson."We disapprove the finding of guilty as to the excepted words, and affirm a finding of guilty to the Specification, as excepted. See United States v. Fuller, 54 M.J. 107, 112 (C.A.A.F.2000)(evidence sufficient to affirm finding of guilty to simple disorder under Article 134, UCMJ, although not legally sufficient to support finding of guilty to maltreatment); United States v. Sapp, 53 M.J. 90 (2000)(the included offense of a simple disorder affirmed when the record did not support a finding of guilty for the greater offense). We will take corrective action in our decretal paragraph and reassess the appellant's sentence accordingly.

**Uncharged Misconduct**

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in M.J.                                                                          Page 7

Not Reported in M.J., 2006 WL 4571896 (N.M.Ct.Crim.App.)
**(Cite as: Not Reported in M.J.)**

**\*8** For his sixth assignment of error, the appellant claims that the military judge abused his discretion by allowing evidence of the appellant's prior inappropriately familiar relations with another junior Marine. We agree; however, we find the error harmless.

The military judge admitted, pursuant to MIL. R. EVID. 404(b), and over defense objection, evidence that the appellant fraternized with Lance Corporal (LCpl) H as relevant "to show intent, lack of mistake or accident, notice or knowledge to the accused that his conduct was inappropriate" as it pertained to Charge I, Specification 1, alleging a violation U.S. Navy Regulations prohibiting unduly familiar relationships with junior service members. Record at 338; Appendix to Findings of Military Judge. The admitted evidence consisted of Staff Sergeant (SSgt) A's testimony that then PFC H: (1) was seen going out to eat with the appellant; (2) talked on the phone with the appellant; (3) would take Reservists to the appellant's office and remain there for up to 90 minutes; (4) was seen with the appellant wearing civilian attire; (5) was seen in the SOI television room with the appellant at 0430; (6) called the appellant by his first name; and, (6) exchanged non-professional emails with the appellant. SSgt A considered the relationship improper and counseled the appellant concerning the relationship. LCpl H testified that his relationship with the appellant consisted of: (1) escorting Reservists to the appellant's office at SOI; (2) getting a ride from the appellant from SOI to Oceanside, California after work four or five times and occasionally stopping to get something to eat on the way; (3) discussing personal issues; (4) telephone conversations after SOI; (5) that he addressed the appellant as "sergeant" except in discussions with others, and then he referred to the appellant by his first name; (6) that the appellant corrected him the one time that he called him by his first name; (7) visiting the appellant once in November, 2002; and, (8) sharing a hotel room with the appellant one night in Las Vegas to save money on lodging.

"A military judge's decision to admit or exclude evidence is reviewed under an abuse of discretion standard."*McDonald,* 59 M.J. at 430 (citing

*Tanksley,* 54 M.J. at 175))."[A] military judge abuses his discretion if his findings of fact are clearly erroneous or his conclusions of law are incorrect."*Ayala,* 43 M.J. at 298. We apply the following three-part test set forth in *United States v. Reynolds,* 29 M.J. 105, 109 (C.M.A.1989), to determine whether the above evidence should have been admitted under M.R.E. 404(b):

1. Does the evidence reasonably support a finding by the court members that appellant committed prior crimes, wrongs or acts?
2. What "fact ... of consequence" is made "more" or "less probable" by the existence of this evidence?
3. Is the "probative value ... substantially outweighed by the danger of unfair prejudice"?

**\*9** (citations omitted). The evidence admitted must fulfill all three prongs to be admissible. Id."The first and second prongs address the logical relevance of the evidence."*McDonald,* 59 M.J. at 429;MIL. R. EVID. 401 and 402; *see also Huddleston v. United States,* 485 U.S. 681, 686-87, 689, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988)."The third prong ensures that the evidence is legally, as well as logically, relevant."*McDonald,* 59 M.J. at 429;MIL. R. EVID. 403; *see also Huddleston,* 485 U.S. at 687-88.

We find that the evidence failed the second and third *Reynolds* prongs-it did not make any fact of consequence more or less probable, and any probative value was substantially outweighed by the danger of unfair prejudice. Intent, lack of mistake or accident, and notice or knowledge that the appellant's conduct was inappropriate, was never at issue. Because there was little or no probative value to any fact of consequence, the admitted evidence's probative value was substantially outweighed by the danger that members would simply conclude that the appellant was someone who has a history of engaging in unduly familiar relationships with junior Marines, and, therefore, probably did so again. Therefore, the military judge abused his discretion in admitting the evidence.

Having determined that the military judge abused his discretion, we must now determine whether this error resulted in material prejudice to the appellant's substantial rights. Art. 59(a), UCMJ. "We evaluate prejudice from an erroneous evidentiary ruling by

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in M.J., 2006 WL 4571896 (N.M.Ct.Crim.App.)
**(Cite as: Not Reported in M.J.)**

weighing (1) the strength of the Government's case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question."*United States v. Kerr,* 51 M.J. 401, 405 (C.A.A.F.1999) (citing *United States v. Weeks,* 20 M.J. 22, 25 (C.M.A.1985)). First, the Government's case was strong. The appellant told PFC B to call him by his first name, they consumed alcohol together, they lived in the appellant's recreation vehicle together, and on one occasion PFC B woke up in his own bed to find the appellant in bed with him. Second, the defense case was not compelling, consisting mostly of impeachment of PFC B, evidence of how the Reserve side of SOI operated, and the appellant's mother's testimony about hiring PFC B to help repair her roof and providing money to PFC B's family. Third, the evidence concerning the appellant and LCpl H, even if relevant, was of marginal importance. It consisted of SSgt A's personal observation of contacts between the appellant and LCpl H at SOI and LCpl H's testimony concerning those contacts. Most of these contacts were professional only. Finally, the quality of the evidence in question was simply lacking. For these reasons, we hold that the erroneous admission of SSgt A's and LCpl H's testimony concerning the appellant's prior unduly familiar relationship with LCpl H was harmless error. *See* United States v. Barnett, 63 M.J. 388, 394-97 (C.A.A.F.2006).

### Post-Trial Delay

*10 For his seventh assignment of error, the appellant claims that he has been denied his due process right to a speedy appellate review of his case. The Government argues that there has not been a due process violation, but if there was, it was harmless.

We consider four factors in determining if post-trial delay violates the appellant's due process rights: (1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to a timely appeal; and (4) prejudice to the appellant. *United States v. Jones,* 61 M.J. 80, 83 (C.A.A.F.2005) (citing *Toohey v. United States,* 60 M.J. 100, 102 (C.A.A.F.2004)). If the length of the delay is not

facially unreasonable, further inquiry is not necessary. If we conclude that the length of the delay is "facially unreasonable," however, we must balance the length of the delay against the other three factors. Id. Moreover, in extreme cases, the delay itself may " 'give rise to a strong presumption of evidentiary prejudice.'" Id. (quoting *Toohey,* 60 M.J. at 102).

Here, there was a delay of about 555 days from the date of trial to the date the CA took his action and another 80 days elapsed before the 1,041-page record of trial was docketed with this court. This case was both tried and docketed prior to the date our superior court decided *United States v. Moreno,* 63 M.J. 129 (C.A.A.F.2006), so the presumptions of unreasonable delay set forth in that case do not apply here. Nevertheless, we find that the delay in this case was facially unreasonable, triggering a due process review.

Regarding the second factor, reasons for the delay, the record contains no explanation. Looking to the third and fourth factors, we find no assertion of the right to a timely appeal prior to filing the appellant's brief before this court, and no claim or evidence of specific prejudice. We also find no "extreme circumstances" that give rise to a strong presumption of evidentiary prejudice. Thus, we conclude that there has been no due process violation resulting from the post-trial delay. *Jones,* 61 M.J. at 83.

We are also aware of our authority to grant relief under Article 66, UCMJ, and find that the delay in this case affects the sentence that should be approved.*Toohey,* 60 M.J. at 102;*United States v. Tardif,* 57 M.J. 219, 224 (C.A.A.F.2002); *United States v. Brown,* 62 M.J. 602 (N.M.Ct.Crim.App.2005)(en banc). We will provide relief in our decretal paragraph.[FN2]

> FN2. We have considered the appellant's eighth assignment of error challenging his convictions for "non-petty offenses" by a panel of only four members, and find it to be without merit. *See* United States v. Wolff, 5 M.J. 923, 925 (N.C.M.R.1978);

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in M.J., 2006 WL 4571896 (N.M.Ct.Crim.App.)
**(Cite as: Not Reported in M.J.)**

*see also* Art. 29, UCMJ.

### Conclusion

Accordingly, the findings of guilty as to the sole Specification under Charge II (larceny) is set aside, however, a finding of guilty to the included offense of attempted larceny, a violation of Article 80, UCMJ, and to Charge II are affirmed. That Specification shall now read as follows:
"In that Sergeant Kevin R. Sanford, U.S. Marine Corps Reserve, on active duty, did, at an unknown location, between 5 September 2002 to on or about 1 October 2002, wrongfully attempt to steal U.S. currency, of a value less than $500.00, the property of Mr. Daryl Odum."

**\*11** The findings of guilty as to the language excepted from the sole Specification under Charge III is set aside and that language is dismissed. Findings of guilty as to the sole Specification under Charge III, as excepted, and as to Charge III, are affirmed. That Specification shall now read as follows:
"In that Sergeant Kevin R. Sanford, U.S. Marine Corps Reserve, on active duty, did, at Camp Pendleton, CA, on or about 1 October 2002, wrongfully and willfully draft orders with the intent to defraud Mr. Daryl Odum."

As a result of our action on the findings, we have reassessed the sentence in accordance with the principles of *United States v. Cook,* 48 M.J. 434, 438 (C.A.A.F.1998), *United States v. Peoples,* 29 M.J. 426, 428 (C.M.A.1990), and *United States v. Sales,* 22 M.J. 305, 307-08 (C.M.A.1986). Based on the nature and circumstances of the appellant's remaining offenses, and taking into consideration the appellant's years of credible service, we find that a court-martial would impose a sentence no higher than a bad-conduct discharge, confinement for 150 days, forfeiture of pay of $767.00 per month for five months, and reduction to pay grade E-1. *See Peoples,* 29 M.J. at 428 ("No higher sentence may be affirmed by the appellate court than would have been adjudged at trial absent the error.").

After reassessment of sentence, and taking into consideration the excessive amount of post-trial delay in this case, we affirm the findings of guilty, as modified above, and only that portion of the sentence as extends to a bad-conduct discharge, confinement for 150 days, and reduction to pay grade E-1. We direct that the supplemental court-martial order reflect this court's findings.

Judge KELLY and Judge FREDERICK concur.

N.M.Ct.Crim.App.,2006.
U.S. v. Sanford
Not Reported in M.J., 2006 WL 4571896 (N.M.Ct.Crim.App.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

64 M.J. 429

64 M.J. 428, 64 M.J. 429
**(Cite as: 64 M.J. 428, 64 M.J. 429)**

UNITED STATES COURT OF APPEALS FOR THE ARMED FORCESDaily JournalWednesday, February 7, 2007**07-084**

APPEALS-SUMMARY DISPOSITIONS
No. 04-0042/AR. U.S. v. Shapour Meghdadi. CCA 20000029. On consideration of the petition for grant of review of the decision of the United States Army Court of Criminal Appeals, and in light of *United States v. Moreno*, 63 M.J. 129 (C.A.A.F. 2006), and *United States v. Allison*, 63 M.J. 365 (C.A.A.F. 2006), assuming that Appellant was denied his due process right to speedy post-trial review and appeal, we conclude that any error in that regard was harmless beyond a reasonable doubt. Accordingly, said petition is hereby granted on the following issue specified by the Court:
WHETHER APPELLANT'S DUE PROCESS RIGHTS TO A TIMELY REVIEW WERE VIOLATED.

The decision of the United States Army Court of Criminal Appeals is affirmed. [See also ORDERS GRANTING PETITION FOR REVIEW this date.]
ORDERS GRANTING PETITION FOR REVIEW
No. 04-0042/AR. U.S. v. Shapour Meghdadi. CCA 20000029. [See also APPEALS-SUMMARY DISPOSITIONS this date.]

No. 04-0216/AF. U.S. v. Carl L. Key. CCA 34965. Review granted on the following issue:
WHETHER THE MILITARY JUDGE ERRED BY NOT PERMITTING THE DEFENSE, AT A FACTFINDING HEARING, TO CALL APPELLANT'S PRIOR TRIAL DEFENSE COUNSEL TO TESTIFY AS TO HIS PRETRIAL INTERVIEW OF THE GOVERNMENT'S CONFIDENTIAL INFORMANT.

Briefs will be filed under Rule 25.

No. 07-0084/MC. U.S. v. Deric B. Hollings. CCA 200500497. Review granted on the following issue:
WHETHER THE MILITARY JUDGE FAILED TO ADHERE TO THE LIBERAL GRANT MANDATE WHEN HE DENIED A DEFENSE CHALLENGE FOR CAUSE AGAINST CHIEF WARRANT OFFICER W WHO SERVED AS ACTING LEGAL OFFICER TO THE CONVENING AUTHORITY IN APPELLANT'S CASE.

Briefs will be filed under Rule 25.
PETITIONS FOR GRANT OF REVIEW DENIED
No. 06-0886/AR. U.S. v. Joseph M. Meeks. CCA 20040512.

No. 07-0044/AF. U.S. v. Phillip L. Stordahl. CCA 36187.

No. 07-0089/MC. U.S. v. Kevin R. Sanford. CCA 200500993.

No. 07-0155/NA. U.S. v. Derek D. Bell. CCA 200401099.
PETITIONS FOR GRANT OF REVIEW FILED
No. 07-0269/AR. U.S. v. Sean P. Bright. CCA 20020938.

No. 07-0270/AR. U.S. v. Maurice E. Ward. CCA 20060100.

No. 07-0271/NA. U.S. v. Phillip Torres. CCA 200600944.
INTERLOCUTORY ORDERS
No. 06-0875/AR. U.S. v. Lillie Morgan. CCA 20020360. On consideration of the petition for grant of review of the decision of the United States Army Court of Criminal Appeals, it is ordered that Appellee will submit an Answer to Issue II in the Supplement, and the above pleading will be filed no later than March 7, 2007.

No. 07-8007/AF. Derek J. Greska, v. U.S. CCA

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

64 M.J. 428, 64 M.J. 429
**(Cite as: 64 M.J. 428, 64 M.J. 429)**

S30987. On consideration of the petition for extraordinary relief in the nature of writs of prohibition, it is ordered that the United States is substituted as Respondent, and that Respondent is ordered to show cause on or before March 7, 2007, why relief should not be granted, and that all government and defense appellate divisions are invited to file amicus curiae briefs under Rule 26.

Daily Journal
64 M.J. 428, 64 M.J. 429

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# APPENDIX 12
## MAXIMUM PUNISHMENT CHART

This chart was compiled for convenience purposes only and is not the authority for specific punishments. *See* Part IV and R.C.M. 1003 for specific limits and additional information concerning maximum punishments.

| Article | Offense | Discharge | Confinement | Forfeitures |
|---|---|---|---|---|
| 77 | Principals (*see* Part IV, Para. 1 and pertinent offenses) | | | |
| 78 | Accessory after the fact (*see* Part IV, Para. 3.e.) | | | |
| 79 | Lesser included offenses (*see* Part IV, Para. 2 and pertinent offenses) | | | |
| 80 | Attempts (*see* Part IV, Para. 4.e.) | | | |
| 81 | Conspiracy (*see* Part IV, Para. 5.e.) | | | |
| 82 | Solicitation | | | |
| | If solicited offense committed, or attempted, *see* Part IV, Para. 6.e. | | | |
| | If solicited offense not committed: | | | |
| | Solicitation to desert[1] | DD, BCD | 3 yrs.[1] | Total |
| | Solicitation to mutiny[1] | DD, BCD | 10 yrs.[1] | Total |
| | Solicitation to commit act of misbehavior before enemy[1] | DD, BCD | 10 yrs.[1] | Total |
| | Solicitation to commit act of sedition [1] | DD, BCD | 10 yrs.[1] | Total |
| 83 | Fraudulent enlistment, appointment | DD, BCD | 2 yrs. | Total |
| | Fraudulent separation | DD, BCD | 5 yrs. | Total |
| 84 | Effecting unlawful enlistment, appointment, separation | DD, BCD | 5 yrs. | Total |
| 85 | Desertion | | | |
| | In time of war | Death, DD, BCD | Life[4] | Total |
| | Intent to avoid hazardous duty, shirk important service [1] | DD, BCD | 5 yrs.[1] | Total |
| | Other cases | | | |
| | Terminated by apprehension | DD, BCD | 3 yrs.[1] | Total |
| | Otherwise terminated | DD, BCD | 2 yrs.[1] | Total |
| 86 | Absence without leave, etc. | | | |
| | Failure to go, going from place of duty | None | 1 mo. | 2/3 1 mo. |
| | Absence from unit, organization, etc. | | | |
| | Not more than 3 days | None | 1 mo. | 2/3 1 mo. |
| | More than 3, not more than 30 days | None | 6 mos. | 2/3 6 mos. |
| | More than 30 days | DD, BCD | 1 yr. | Total |
| | More than 30 days and terminated by apprehension | DD, BCD | 1 yr., 6 mos. | Total |
| | Absence from guard or watch | None | 3 mos. | 2/3 3 mos. |
| | Absence from guard or watch with intent to abandon | BCD | 6 mos. | Total |
| | Absence with intent to avoid maneuvers, field exercises | BCD | 6 mos. | Total |
| 87 | Missing movement | | | |
| | Through design | DD, BCD | 2 yrs. | Total |
| | Through neglect | BCD | 1 yr. | Total |
| 88 | Contempt toward officials | Dismissal | 1 yr. | Total |
| 89 | Disrespect toward superior commissioned officer | BCD | 1 yr. | Total |
| 90 | Assaulting, willfully disobeying superior commissioned officer | | | |
| | In time of war | Death, DD, BCD | Life[4] | Total |
| | Striking, drawing or lifting up any weapon or offering any violence toward superior commissioned officer execution of duty[1] | DD, BCD | 10 yrs.[1] | Total |
| | Willfully disobeying lawful order of superior commissioned officer[1] | DD, BCD | 5 yrs.[1] | Total |
| 91 | Insubordinate conduct toward warrant, noncommissioned, petty officer | | | |
| | Striking or assaulting: | | | |
| | Warrant officer | DD, BCD | 5 yrs. | Total |
| | Superior noncommissioned officer | DD, BCD | 3 yrs. | Total |
| | Other noncommissioned or petty officer | DD, BCD | 1 yr. | Total |
| | Willfully disobeying: | | | |
| | Warrant officer | DD, BCD | 2 yrs. | Total |
| | Noncommissioned or petty officer | BCD | 1 yr. | Total |
| | Contempt, disrespect toward: | | | |
| | Warrant Officer | BCD | 9 mos. | Total |
| | Superior noncommissioned or petty officer | BCD | 6 mos. | Total |
| | Other noncommissioned or petty officer | None | 3 mos. | 2/3 3 mos. |

A12-1

**Exhibit B**

This chart was compiled for convenience purposes only and is not the authority for specific punishments. *See* Part IV and R.C.M. 1003 for specific limits and additional information concerning maximum punishments.

| Article | Offense | Discharge | Confinement | Forfeitures |
|---|---|---|---|---|
| 92 | Failure to obey order, regulation | | | |
| | Violation, failure to obey general order or regulation [2] .......... | DD, BCD | 2 yrs. | Total |
| | Violation, failure to obey other order [2] ..................... | BCD | 6 mos. | Total |
| | Dereliction in performance of duties | | | |
| | Through neglect, culpable inefficiency ..................... | None | 3 mos. | 2/3 3 mos. |
| | Willful ................................................. | BCD | 6 mos. | Total |
| 93 | Cruelty, maltreatment of subordinates ........................... | DD, BCD | 1 yr. | Total |
| 94 | Mutiny & sedition ........................................... | Death, DD, BCD | Life[4] | Total |
| 95 | Resisting apprehension, flight, breach of arrest, escape | | | |
| | Resisting apprehension .................................. | BCD | 1 yr. | Total |
| | Flight from apprehension ................................. | BCD | 1 yr. | Total |
| | Breaking arrest ........................................ | BCD | 6 mos. | Total |
| | Escape from custody, pretrial confinement, or confinement on bread and water or diminished rations ........................... | DD, BCD | 1 yr. | Total |
| | Escape from post-trial confinement ........................ | DD, BCD | 5 yrs. | Total |
| 96 | Releasing prisoner without proper authority ..................... | DD, BCD | 2 yrs. | Total |
| | Suffering prisoner to escape through neglect ................... | BCD | 1 yr. | Total |
| | Suffering prisoner to escape through design .................... | DD, BCD | 2 yrs. | Total |
| 97 | Unlawful detention ......................................... | DD, BCD | 3 yrs. | Total |
| 98 | Noncompliance with procedural rules, etc. | | | |
| | Unnecessary delay in disposition of case ..................... | BCD | 6 mos. | Total |
| | Knowingly, intentionally failing to comply, enforce code ......... | DD, BCD | 5 yrs. | Total |
| 99 | Misbehavior before enemy ................................... | Death, DD, BCD | Life[4] | Total |
| 100 | Subordinate compelling surrender ............................ | Death, DD, BCD | Life[4] | Total |
| 101 | Improper use of countersign ................................. | Death, DD, BCD | Life[4] | Total |
| 102 | Forcing safeguard .......................................... | Death, DD, BCD | Life[4] | Total |
| 103 | Captured, abandoned property; failure to secure, etc. | | | |
| | Of value of $500.00 or less .............................. | BCD | 6 mos. | Total |
| | Of value of more than $500.00 ........................... | DD, BCD | 5 yrs. | Total |
| | Any firearm or explosive ................................. | DD, BCD | 5 yrs. | Total |
| | Looting, pillaging ...................................... | DD, BCD | Life[4] | Total |
| 104 | Aiding the enemy ........................................... | Death, DD, BCD | Life[4] | Total |
| 105 | Misconduct as prisoner ..................................... | DD, BCD | Life[4] | Total |
| 106 | Spying .................................................... | Mandatory Death, DD, BCD | Not applicable | Total |
| 106a | Espionage | | | |
| | Cases listed in Art. 106a(a)(l)(A)–(D) ........................ | Death, DD, BCD | Life[4] | Total |
| | Other cases ............................................ | DD, BCD | Life[4] | Total |
| 107 | False official statements .................................... | DD, BCD | 5 yrs. | Total |
| 108 | Military property; loss, damage, destruction, disposition | | | |
| | Selling, otherwise disposing | | | |
| | Of value of $500.00 or less ............................. | BCD | 1 yr. | Total |
| | Of value of more than $500.00 .......................... | DD, BCD | 10 yrs. | Total |
| | Any firearm, explosive or incendiary device ................ | DD, BCD | 10 yrs. | Total |
| | Damaging, destroying, losing or suffering to be lost, damaged, destroyed, sold, or wrongfully disposed: | | | |
| | Through neglect, of a value of: | | | |
| | $500.00 or less ..................................... | None | 6 mos. | 2/3 6 mos. |
| | More than $500.00 .................................. | BCD | 1 yr. | Total |
| | Willfully, of a value of | | | |
| | $500.00 or less ..................................... | BCD | 1 yr. | Total |
| | More than $500.00 .................................. | DD, BCD | 10 yrs. | Total |
| | Any firearm, explosive, or incendiary device ............... | DD, BCD | 10 yrs. | Total |

This chart was compiled for convenience purposes only and is not the authority for specific punishments. *See* Part IV and R.C.M. 1003 for specific limits and additional information concerning maximum punishments.

| Article | Offense | Discharge | Confinement | Forfeitures |
|---|---|---|---|---|
| 109 | Property other than military property of U.S.: loss, damage, destruction, disposition: | | | |
| | Wasting, spoiling, destroying, or damaging property of a value of: | | | |
| | $500.00 or less | BCD | 1 yr. | Total |
| | More than $500.00 | DD, BCD | 5 yrs. | Total |
| 110 | Hazarding a vessel | | | |
| | Willfully and wrongfully | Death, DD, BCD | Life[4] | Total |
| | Negligently | DD, BCD | 2 yrs. | Total |
| 111 | Drunken driving | | | |
| | Resulting in personal injury | DD, BCD | 1 yr., 6 mos. | Total |
| | Other cases | BCD | 6 mos. | Total |
| 112 | Drunk on duty | BCD | 9 mos. | Total |
| 112a | Wrongful use, possession, etc. of controlled substances [3] | | | |
| | Wrongful use, possession, manufacture, or introduction of: | | | |
| | Amphetamine, cocaine, heroin, lysergic acid diethylamide, marijuana (except possession of less than 30 grams or use), methamphetamine, opium, phencyclidine, secobarbital, and Schedule I, II, and III controlled substances | DD, BCD | 5 yrs. | Total |
| | Marijuana (possession of less than 30 grams or use), phenobarbital, and Schedule IV and V controlled substances | DD, BCD | 2 yrs. | Total |
| | Wrongful distribution of, or, with intent to distribute, wrongful possession, manufacture, introduction, or wrongful importation of or exportation of: | | | |
| | Amphetamine, cocaine, heroin, lysergic acid diethylamide, marijuana, methamphetamine, opium, phencyclidine, secobarbital, and Schedule I, II, and III controlled substances | DD, BCD | 15 yrs. | Total |
| | Phenobarbital and Schedule IV and V controlled substances | DD, BCD | 10 yrs. | Total |
| 113 | Misbehavior of sentinel or lookout | | | |
| | In time of war | Death, DD, BCD | Life[4] | Total |
| | In other time: | | | |
| | While receiving special pay under 37 U.S.C. 310 | DD, BCD | 10 yrs. | Total |
| | Other places | DD, BCD | 1 yr. | Total |
| 114 | Dueling | DD, BCD | 1 yr. | Total |
| 115 | Malingering | | | |
| | Feigning illness, etc. | | | |
| | In time of war, or while receiving special pay under 37 U.S.C. 310 | DD, BCD | 3 yrs. | Total |
| | Other | DD, BCD | 1 yr. | Total |
| | Intentional self-inflicted injury | | | |
| | In time of war, or while receiving special pay under 37 U.S.C. 310 | DD, BCD | 10 yrs. | Total |
| | Other | DD, BCD | 5 yrs. | Total |
| 116 | Riot | DD, BCD | 10 yrs. | Total |
| | Breach of peace | None | 6 mos. | 2/3 6 mos. |
| 117 | Provoking speech, gestures | None | 6 mos. | 2/3 6 mos. |
| 118 | Murder | | | |
| | Article 118(1) or (4) | Death, mandatory minimum life with parole, DD, BCD | Life[4] | Total |
| | Article 118(2) or (3) | DD, BCD | Life[4] | Total |
| 119 | Manslaughter | | | |
| | Voluntary | DD, BCD | 15 yrs. | Total |
| | Involuntary | DD, BCD | 10 yrs. | Total |
| 119a | Death or injury to an Unborn Child (*see* Part IV, Para. 44a.(a)(1)) | | | |
| 120 | Rape | Death, DD, BCD | Life[4] | Total |
| | Carnal knowledge | | | |
| | With child at least 12 | DD, BCD | 20 yrs. | Total |
| | With child under the age of 12 | DD, BCD | Life[4] | Total |
| 121 | Larceny | | | |
| | Of military property of a value of $500.00 or less | BCD | 1 yr. | Total |

**App. 12, Art. 121**

This chart was compiled for convenience purposes only and is not the authority for specific punishments. *See* Part IV and R.C.M. 1003 for specific limits and additional information concerning maximum punishments.

| Article | Offense | Discharge | Confinement | Forfeitures |
|---|---|---|---|---|
| | Of property other than military property of a value of $500.00 or less | BCD | 6 mos. | Total |
| | Of military property of a value of more than $500.00 or of any military motor vehicle, aircraft, vessel, firearm, or explosive . . . . . . | DD, BCD | 10 yrs. | Total |
| | Of property other than military property of a value of more than $500.00 or any motor vehicle, aircraft, vessel, firearm, or explosive | DD, BCD | 5 yrs. | Total |
| | Wrongful appropriation | | | |
| | Of value of $500.00 or less . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | None | 3 mos. | 2/3 3 mos. |
| | Of value of more than $500.00 . . . . . . . . . . . . . . . . . . . . . . . . . . | BCD | 6 mos. | Total |
| | Of any motor vehicle, aircraft, vessel, firearm, or explosive . . . . . . . | DD, BCD | 2 yrs. | Total |
| 122 | Robbery | | | |
| | Committed with a firearm . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | DD, BCD | 15 yrs. | Total |
| | Other cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | DD, BCD | 10 yrs. | Total |
| 123 | Forgery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | DD, BCD | 5 yrs. | Total |
| 123a | Checks, etc., insufficient funds, intent to deceive | | | |
| | To procure anything of value of: | | | |
| | $500.00 or less . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | BCD | 6 mos. | Total |
| | More than $500.00 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | DD, BCD | 5 yrs. | Total |
| | For payment of past due obligation, and other cases . . . . . . . . . . . . | BCD | 6 mos. | Total |
| 124 | Maiming . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | DD, BCD | 7 yrs. | Total |
| 125 | Sodomy | | | |
| | By force and without consent . . . . . . . . . . . . . . . . . . . . . . . . . . . . | DD, BCD | Life[4] | Total |
| | With child under age of 16 years and at least 12 . . . . . . . . . . . . . . | DD, BCD | 20 yrs. | Total |
| | With child under the age of 12 . . . . . . . . . . . . . . . . . . . . . . . . . . | DD, BCD | Life[4] | Total |
| | Other cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | DD, BCD | 5 yrs. | Total |
| 126 | Arson | | | |
| | Aggravated . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | DD, BCD | 20 yrs. | Total |
| | Other cases, where property value is: | | | |
| | $500.00 or less . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | DD, BCD | 1 yr. | Total |
| | More than $500.00 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | DD, BCD | 5 yrs. | Total |
| 127 | Extortion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | DD, BCD | 3 yrs. | Total |
| 128 | Assaults | | | |
| | Simple Assault: | | | |
| | Generally . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | None | 3 mos. | 2/3 3 mos. |
| | With an unloaded firearm . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | DD, BCD | 3 yrs. | Total |
| | Assault consummated by battery . . . . . . . . . . . . . . . . . . . . . . . . . . | BCD | 6 mos. | Total |
| | Assault upon commissioned officer of U.S. or friendly power not in execution of office . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | DD, BCD | 3 yrs. | Total |
| | Assault upon warrant officer, not in execution of office . . . . . . . . . . | DD, BCD | 1 yr., 6 mos. | Total |
| | Assault upon noncommissioned or petty officer not in execution of office . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | BCD | 6 mos. | Total |
| | Assault upon, in execution of office, person serving as sentinel, lookout, security policeman, military policeman, shore patrol, master at arms, or civil law enforcement . . . . . . . . . . . . . . . . . . . . . . . . . . | DD, BCD | 3 yrs. | Total |
| | Assault consummated by battery upon child under age of 16 years . | DD, BCD | 2 yrs. | Total |
| | Assault with dangerous weapon or means likely to produce grievous bodily harm or death: | | | |
| | Committed with loaded firearm . . . . . . . . . . . . . . . . . . . . . . . . . . | DD, BCD | 8 yrs. | Total |
| | Other cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | DD, BCD | 3 yrs. | Total |
| | Assault in which grievous bodily harm is intentionally inflicted: | | | |
| | With a loaded firearm . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | DD, BCD | 10 yrs. | Total |
| | Other cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | DD, BCD | 5 yrs. | Total |
| 129 | Burglary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | DD, BCD | 10 yrs. | Total |
| 130 | Housebreaking . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | DD, BCD | 5 yrs. | Total |
| 131 | Perjury . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | DD, BCD | 5 yrs. | Total |
| 132 | Frauds against the United States | | | |
| | Offenses under article 132(1) or (2) . . . . . . . . . . . . . . . . . . . . . . . | DD, BCD | 5 yrs. | Total |
| | Offenses under article 132(3) or (4) | | | |

**A12-4**

App. 12, Art. 134

This chart was compiled for convenience purposes only and is not the authority for specific punishments. *See* Part IV and R.C.M. 1003 for specific limits and additional information concerning maximum punishments.

| Article | Offense | Discharge | Confinement | Forfeitures |
|---|---|---|---|---|
| | $500.00 or less | BCD | 6 mos. | Total |
| | More than $500.00 | DD, BCD | 5 yrs. | Total |
| 133 | Conduct unbecoming officer (*see* Part IV, para. 59e) | Dismissal | 1 yr. or as prescribed | Total |
| 134 | Abusing public animal | None | 3 mos. | 2/3 3 mos. |
| | Adultery | DD, BCD | 1 yr. | Total |
| | Assault, indecent | DD, BCD | 5 yrs. | Total |
| | Assault | | | |
| | With intent to commit murder or rape | DD, BCD | 20 yrs. | Total |
| | With intent to commit voluntary manslaughter, robbery, sodomy, arson, or burglary | DD, BCD | 10 yrs. | Total |
| | With intent to commit housebreaking | DD, BCD | 5 yrs. | Total |
| | Bigamy | DD, BCD | 2 yrs. | Total |
| | Bribery | DD, BCD | 5 yrs. | Total |
| | Graft | DD, BCD | 3 yrs. | Total |
| | Burning with intent to defraud | DD, BCD | 10 yrs. | Total |
| | Check, worthless, making and uttering—by dishonorably failing to maintain funds | BCD | 6 mos. | Total |
| | Cohabitation, wrongful | None | 4 mos. | 2/3 4 mos. |
| | Correctional custody, escape from | DD, BCD | 1 yr. | Total |
| | Correctional custody, breach of | BCD | 6 mos. | Total |
| | Debt, dishonorably failing to pay | BCD | 6 mos. | Total |
| | Disloyal statements | DD, BCD | 3 yrs. | Total |
| | Disorderly conduct | | | |
| | Under such circumstances as to bring discredit | None | 4 mos. | 2/3 4 mos. |
| | Other cases | None | 1 mo. | 2/3 1 mo. |
| | Drunkenness | | | |
| | Aboard ship or under such circumstances as to bring discredit | None | 3 mos. | 2/3 3 mos. |
| | Other cases | None | 1 mo. | 2/3 1 mo. |
| | Drunk and disorderly | | | |
| | Aboard ship | BCD | 6 mos. | Total |
| | Under such circumstances as to bring discredit | None | 6 mos. | 2/3 6 mos. |
| | Other cases | None | 3 mos. | 2/3 3 mos. |
| | Drinking liquor with prisoner | None | 3 mos. | 2/3 3 mos. |
| | Drunk prisoner | None | 3 mos. | 2/3 3 mos. |
| | Drunkenness—incapacitating oneself for performance of duties through prior indulgence in intoxicating liquor or drugs | None | 3 mos. | 2/3 3 mos. |
| | Endangerment, reckless | BCD | 1 yr. | Total |
| | False or unauthorized pass offenses | | | |
| | Possessing or using with intent to defraud or deceive, or making, altering, counterfeiting, tampering with, or selling | DD, BCD | 3 yrs. | Total |
| | All other cases | BCD | 6 mos. | Total |
| | False pretenses, obtaining services under | | | |
| | Of a value of $500.00 or less | BCD | 6 mos. | Total |
| | Of a value of more than $500.00 | DD, BCD | 5 yrs. | Total |
| | False swearing | DD, BCD | 3 yrs. | Total |
| | Firearm, discharging—through negligence | None | 3 mos. | 2/3 3 mos. |
| | Firearm, discharging—willfully, under such circumstances as to endanger human life | DD, BCD | 1 yr. | Total |
| | Fleeing scene of accident | BCD | 6 mos. | Total |
| | Fraternization | Dismissal | 2 yrs. | Total |
| | Gambling with subordinates | None | 3 mos. | 2/3 3 mos. |
| | Homicide, negligent | DD, BCD | 3 yrs. | Total |
| | Impersonation | | | |
| | With intent to defraud | DD, BCD | 3 yrs. | Total |
| | All other cases | BCD | 6 mos. | Total |
| | Indecent act, liberties with child | DD, BCD | 7 yrs. | Total |
| | Indecent exposure | BCD | 6 mos. | Total |
| | Indecent language | | | |
| | Communicated to child under 16 yrs | DD, BCD | 2 yrs. | Total |
| | Other cases | BCD | 6 mos. | Total |

**App. 12, Art. 134**

This chart was compiled for convenience purposes only and is not the authority for specific punishments. *See* Part IV and R.C.M. 1003 for specific limits and additional information concerning maximum punishments.

| Article | Offense | Discharge | Confinement | Forfeitures |
|---|---|---|---|---|
| | Indecent acts with another | DD, BCD | 5 yrs. | Total |
| | Jumping from vessel into the water | BCD | 6 mos. | Total |
| | Kidnapping | DD, BCD | Life[4] | Total |
| | Mail, taking, opening, secreting, destroying, or stealing | DD, BCD | 5 yrs. | Total |
| | Mails, depositing or causing to be deposited obscene matters in | DD, BCD | 5 yrs. | Total |
| | Misprision of serious offense | DD, BCD | 3 yrs. | Total |
| | Obstructing justice | DD, BCD | 5 yrs. | Total |
| | Wrongful interference with an adverse administrative proceeding | DD, BCD | 5 yrs. | Total |
| | Pandering | DD, BCD | 5 yrs. | Total |
| | Prostitution | DD, BCD | 1 yr. | Total |
| | Parole, violation of | BCD | 6 mos. | 2/3 6 mos. |
| | Perjury, subornation of | DD, BCD | 5 yrs. | Total |
| | Public record, altering, concealing, removing, mutilating, obliterating, or destroying | DD, BCD | 3 yrs. | Total |
| | Quarantine, breaking | None | 6 mos. | 2/3 6 mos. |
| | Reckless endangerment | BCD | 1 yr. | Total |
| | Restriction, breaking | None | 1 mo. | 2/3 1 mo. |
| | Seizure, destruction, removal, or disposal of property to prevent | DD, BCD | 1 yr. | Total |
| | Self-injury without intent to avoid service | | | |
| | In time of war, or in a hostile fire pay zone | DD | 5 yrs. | Total |
| | Other | DD | 2 yrs. | Total |
| | Sentinel, lookout | | | |
| | Disrespect to | None | 3 mos. | 2/3 3 mos. |
| | Loitering or wrongfully sitting on post by | | | |
| | In time of war or while receiving special pay | DD, BCD | 2 yrs. | Total |
| | Other cases | BCD | 6 mos. | Total |
| | Soliciting another to commit an offense (*see* Part IV, para. 105e) | | | |
| 134 | Of a value of $500.00 or less | BCD | 6 mos. | Total |
| | Of a value of more than $500.00 | DD, BCD | 3 yrs. | Total |
| | Straggling | None | 3 mos. | 2/3 3 mos. |
| | Testify, wrongfully refusing to | DD, BCD | 5 yrs. | Total |
| | Threat, bomb, or hoax | DD, BCD | 5 yrs. | Total |
| | Threat, communicating | DD, BCD | 3 yrs. | Total |
| | Unlawful entry | BCD | 6 mos. | Total |
| | Weapon, concealed, carrying | BCD | 1 yr. | Total |
| | Wearing unauthorized insignia, decoration, badge, ribbon, device, or lapel button | BCD | 6 mos. | Total |

Notes:

[1] Suspended in time of war.

[2] *See* paragraph 16e(1) & (2) Note, Part IV

[3] When any offense under paragraph 37, Part IV, is committed: while the accused is on duty as a sentinel or lookout; on board a vessel or aircraft used by or under the control of the armed forces; in or at a missile launch facility used by or under the control of the armed forces; while receiving special pay under 37 U.S.C. sec. 310; in time of war; or in a confinement facility used by or under the control of the armed forces, the maximum period of confinement authorized for such offense shall be increased by 5 years.

[4] With or without eligibility for parole.

SUBCHAPTER IV.    APPENDIX 2

| Sec. | Art. | |
|------|------|---|
| 819. | 19. | Jurisdiction of special courts-martial. |
| 820. | 20. | Jurisdiction of summary courts-martial. |
| 821. | 21. | Jurisdiction of courts-martial not exclusive. |

## § 816. Art. 16. Courts-martial classified

The three kinds of courts-martial in each of the armed forces are—

(1) general courts-martial, consisting of—

(A) a military judge and not less than five members; or

(B) only a military judge, if before the court is assembled the accused, knowing the identity of the military judge and after consultation with defense counsel, requests orally on the record or in writing a court composed only of a military judge and the military judge approves;

(2) special courts-martial, consisting of—

(A) not less than three members; or

(B) a military judge and not less than three members; or

(C) only a military judge, if one has been detailed to the court, and the accused under the same conditions as those prescribed in clause (1)(B) so requests; and

(3) summary courts-martial, consisting of one commissioned officer.

## § 817. Art. 17. Jurisdiction of courts-martial in general

(a) Each armed force has court-martial jurisdiction over all persons subject to this chapter. The exercise of jurisdiction by one armed force over personnel of another armed force shall be in accordance with regulations prescribed by the President.

(b) In all cases, departmental review after that by the officer with authority to convene a general court-martial for the command which held the trial, where that review is required under this chapter, shall be carried out by the department that includes the armed force of which the accused is a member.

## § 818. Art. 18. Jurisdiction of general courts-martial

Subject to section 817 of this title (article 17), general courts-martial have jurisdiction to try persons subject to this chapter for any offense made punishable by this chapter and may, under such limitations as the President may prescribe, adjudge any punishment not forbidden by this chapter, including the penalty of death when specifically authorized by this chapter. General courts-martial also have jurisdiction to try any person who by the law of war is subject to trial by a military tribunal and may adjudge any punishment permitted by the law of war. However, a general court-martial of the kind specified in section 816(1)(B) of this title (article 16(1)(B)) shall not have jurisdiction to try any person for any offense for which the death penalty may be adjudged unless the case has been previously referred to trial as a noncapital case.

## § 819. Art. 19. Jurisdiction of special courts-martial

Subject to section 817 of this title (article 17), special courts-martial have jurisdiction to try persons subject to this chapter for any noncapital offense made punishable by this chapter and, under such limitations as the President may prescribe, for capital offenses. Special courts-martial may, under such limitations as the President may prescribe, adjudge any punishment not forbidden by this chapter except death, dishonorable discharge, dismissal, confinement for more than one year, hard labor without confinement for more than three months, forfeiture of pay exceeding two-thirds pay per month, or forfeiture of pay for more than one year. A bad-conduct discharge, confinement for more than six months, or forfeiture of pay for more than six months may not be adjudged unless a complete record of the proceedings and testimony has been made, counsel having the qualifications prescribed under section 827(b) of this title (article 27(b)) was detailed to represent the accused, and a military judge was detailed to the trial, except in any case in which a military judge could not be detailed to the trial because of physical conditions or military exigencies. In any such case in which a military judge was not detailed to the trial, the convening authority shall make a detailed written statement, to be appended to the record, stating the reason or reasons a military judge could not be detailed.

## § 820. Art. 20. Jurisdiction of summary courts-martial

Subject to section 817 of this title (article 17), summary courts-martial have jurisdiction to try persons subject to this chapter, except officers, cadets, aviation cadets, and midshipmen, for any noncapital offense made punishable by this chapter. No person with respect to whom summary courts-martial have jurisdiction may be brought to trial before a summary court-martial if he objects thereto. If objection to trial by summary court-martial is made by an accused, trial may be ordered by special or general court-martial as may be appropriate. Summary courts-martial may, under such limitations as the President may prescribe, adjudge any punishment not forbidden by this chapter except death, dismissal, dishonorable or bad-conduct discharge, confinement for more than one month, hard labor without confinement for more than 45 days, restriction to specified limits for more than two months, or forfeiture of more than two-thirds of one month's pay.

## § 821. Art. 21. Jurisdiction of courts-martial not exclusive

The provisions of this chapter conferring jurisdiction upon courts-martial do not deprive military commissions, provost courts, or other military tribunals of concurrent jurisdiction with respect to offenders or offenses that by statute or by the law of war may be tried by military commissions, provost courts, or other military tribunals.

## SUBCHAPTER V. COMPOSITION OF COURTS-MARTIAL

| Sec. | Art. | |
|------|------|---|
| 822. | 22. | Who may convene general courts-martial. |
| 823. | 23. | Who may convene special courts-martial. |
| 824. | 24. | Who may convene summary courts-martial. |

**Exhibit C**

court of inquiry may detail or employ interpreters who shall interpret for the court or commission.

## § 829. Art. 29. Absent and additional members

(a) No member of a general or special court-martial may be absent or excused after the court has been assembled for the trial of the accused unless excused as a result of a challenge, excused by the military judge for physical disability or other good cause, or excused by order of the convening authority for good cause.

(b) Whenever a general court-martial, other than a general court-martial composed of a military judge only, is reduced below five members, the trial may not proceed unless the convening authority details new members sufficient in number to provide not less than five members. The trial may proceed with the new members present after the recorded evidence previously introduced before the members of the court has been read to the court in the presence of the military judge, the accused, and counsel for both sides.

(c) Whenever a special court-martial, other than a special court-martial composed of a military judge only, is reduced below three members, the trial may not proceed unless the convening authority details new members sufficient in number to provide not less than three members. The trial shall proceed with the new members present as if no evidence had previously been introduced at the trial, unless a verbatim record of the evidence previously introduced before the members of the court or a stipulation thereof is read to the court in the presence of the military judge, if any, the accused and counsel for both sides.

(d) If the military judge of a court-martial composed of a military judge only is unable to proceed with the trial because of physical disability, as a result of a challenge, or for other good cause, the trial shall proceed, subject to any applicable conditions of section 8 16(1)(B) or (2)(C) of this title (article 16(1)(B) or (2)(C)), after the detail of a new military judge as if no evidence had previously been introduced, unless a verbatim record of the evidence previously introduced or a stipulation thereof is read in court in the presence of the new military judge, the accused, and counsel for both sides.

## SUBCHAPTER VI. PRE-TRIAL PROCEDURE

Sec.    Art.

830.    30. Charges and specifications.
831.    31. Compulsory self-incrimination prohibited.
832.    32. Investigation.
833.    33. Forwarding of charges.
834.    34. Advice of staff judge advocate and reference for trial.
835.    35. Service of charges.

## § 830. Art. 30. Charges and specifications

(a) Charges and specifications shall be signed by a person subject to this chapter under oath before a commissioned officer of the armed forces authorized to administer oaths and shall state—

(1) that the signer has personal knowledge of, or has investigated, the matters set forth therein; and

(2) that they are true in fact to the best of his knowledge and belief.

(b) Upon the preferring of charges, the proper authority shall take immediate steps to determine what disposition should be made thereof in the interest of justice and discipline, and the person accused shall be informed of the charges against him as soon as practicable.

## § 831. Art. 31. Compulsory self-incrimination prohibited

(a) No person subject to this chapter may compel any person to incriminate himself or to answer any question the answer to which may tend to incriminate him.

(b) No person subject to this chapter may interrogate, or request any statement from an accused or a person suspected of an offense without first informing him of the nature of the accusation and advising him that he does not have to make any statement regarding the offense of which he is accused or suspected and that any statement made by him may be used as evidence against him in a trial by court-martial.

(c) No person subject to this chapter may compel any person to make a statement or produce evidence before any military tribunal if the statement or evidence is not material to the issue and may tend to degrade him.

(d) No statement obtained from any person in violation of this article, or through the use of coercion, unlawful influence, or unlawful inducement may be received in evidence against him in a trial by court-martial.

## § 832. Art. 32. Investigation

(a) No charge or specification may be referred to a general court-martial for trial until a thorough and impartial investigation of all the matters set forth therein has been made. This investigation shall include inquiry as to the truth of the matter set forth in the charges, consideration of the form of charges, and a recommendation as to the disposition which should be made of the case in the interest of justice and discipline.

(b) The accused shall be advised of the charges against him and of his right to be represented at that investigation by counsel. The accused has the right to be represented at that investigation as provided in section 838 of this title (article 38) and in regulations prescribed under that section. At that investigation full opportunity shall be given to the accused to cross-examine witnesses against him if they are available and to present anything he may desire in his own behalf, either in defense or mitigation, and the investigation officer shall examine available witnesses requested by the accused. If the charges are forwarded after the investigation, they shall be accompanied by a statement of the substance of the testimony taken on both sides and a copy thereof shall be given to the accused.

(c) If an investigation of the subject matter of an offense has been conducted before the accused is charged with the offense, and if the accused was present at the investigation and afforded the opportunities for representation, cross-examination, and presentation prescribed in subsection (b), no further investigation of that charge is necessary under this article unless it is demanded by the accused after he is informed of the charge. A demand for further investigation entitles the accused to recall witnesses for

**Exhibit D**

# PART II
# RULES FOR COURTS–MARTIAL

## CHAPTER I. GENERAL PROVISIONS

### Rule 101. Scope, title

(a) *In general.* These rules govern the procedures and punishments in all courts-martial and, whenever expressly provided, preliminary, supplementary, and appellate procedures and activities.

(b) *Title.* These rules may be known and cited as the Rules for Courts-Martial (R.C.M.).

### Rule 102. Purpose and construction

(a) *Purpose.* These rules are intended to provide for the just determination of every proceeding relating to trial by court-martial.

(b) *Construction.* These rules shall be construed to secure simplicity in procedure, fairness in administration, and the elimination of unjustifiable expense and delay.

### Rule 103. Definitions and rules of construction

The following definitions and rules of construction apply throughout this Manual, unless otherwise expressly provided.

(1) "Article" refers to articles of the Uniform Code of Military Justice unless the context indicates otherwise.

(2) "Capital case" means a general court-martial to which a capital offense has been referred without an instruction that the case be treated as noncapital, and, in the case of a rehearing or new or other trial, for which offense death remains an authorized punishment under R.C.M. 810(d).

(3) "Capital offense" means an offense for which death is an authorized punishment under the code and Part IV of this Manual or under the law of war.

(4) "Code" refers to the Uniform Code of Military Justice, unless the context indicates otherwise.

#### Discussion

The Uniform Code of Military Justice is set forth at Appendix 2.

---

(5) "Commander" means a commissioned officer in command or an officer in charge except in Part V or unless the context indicates otherwise.

(6) "Convening authority" includes a commissioned officer in command for the time being and successors in command.

#### Discussion

*See* R.C.M. 504 concerning who may convene courts-martial.

---

(7) "Copy" means an accurate reproduction, however made. Whenever necessary and feasible, a copy may be made by handwriting.

(8) "Court-martial" includes, depending on the context:

(A) The military judge and members of a general or special court-martial;

(B) The military judge when a session of a general or special court-martial is conducted without members under Article 39(a);

(C) The military judge when a request for trial by military judge alone has been approved under R.C.M. 903;

(D) The members of a special court-martial when a military judge has not been detailed; or

(E) The summary court-martial officer.

(9) "Days." When a period of time is expressed in a number of days, the period shall be in calendar days, unless otherwise specified. Unless otherwise specified, the date on which the period begins shall not count, but the date on which the period ends shall count as one day.

(10) "Detail" means to order a person to perform a specific temporary duty, unless the context indicates otherwise.

(11) "Explosive" means gunpowders, powders used for blasting, all forms of high explosives, blasting materials, fuzes (other than electrical circuit breakers), detonators, and other detonating agents, smokeless powders, any explosive bomb, grenade, missile, or similar device, and any incendiary bomb or grenade, fire bomb, or similar device, and any other compound, mixture, or device which is an explosive within the meaning of 18 U.S.C. § 232(5) or 844(j).

(12) "Firearm" means any weapon which is de-

**Exhibit E**

**R.C.M. 103(12)**

signed to or may be readily converted to expel any projectile by the action of an explosive.

(13) "Joint" in connection with military organization connotes activities, operations, organizations, and the like in which elements of more than one military service of the same nation participate.

(14) "Members." The members of a court-martial are the voting members detailed by the convening authority.

(15) "Military judge" means the presiding officer of a general or special court-martial detailed in accordance with Article 26. Except as otherwise expressly provided, in the context of a summary court-martial "military judge" includes the summary court-martial officer or in the context of a special court-martial without a military judge, the president. Unless otherwise indicated in the context, "the military judge" means the military judge detailed to the court-martial to which charges in a case have been referred for trial.

(16) "Party." Party, in the context of parties to a court-martial, means:

(A) The accused and any defense or associate or assistant defense counsel and agents of the defense counsel when acting on behalf of the accused with respect to the court-martial in question; and

(B) Any trial or assistant trial counsel representing the United States, and agents of the trial counsel when acting on behalf of the trial counsel with respect to the court-martial in question.

(17) "Staff judge advocate" means a judge advocate so designated in Army, Air Force, or Marine Corps, and means the principal legal advisor of a command in the Navy and Coast Guard who is a judge advocate.

(18) "*sua sponte*" means that the person involved acts on that person's initiative, without the need for a request, motion, or application.

(19) "War, time of." For purpose of R.C.M. 1004(c)(6) and of implementing the applicable paragraphs of Parts IV and V of this Manual only, "time of war" means a period of war declared by Congress or the factual determination by the President that the existence of hostilities warrants a finding that a "time of war" exists for purposes of R.C.M. 1004(c)(6) and Parts IV and V of this Manual.

(20) The definitions and rules of construction in 1

U.S.C. §§ 1 through 5 and in 10 U.S.C. §§ 101 and 801.

## Discussion

1 U.S.C. §§ 1 through 5, 10 U.S.C. § 101, and 10 U.S.C. § 801 (Article 1) are set forth below.

1 U.S.C. § 1. Words denoting number, gender, and so forth.

In determining the meaning of any Act of Congress, unless the context indicates otherwise—

words importing the singular include and apply to several persons, parties, or things; words importing the plural include the singular;

words importing the masculine gender include the feminine as well;

words used in the present tense include the future as well as the present;

the words "insane" and "insane person" and "lunatic" shall include every idiot, lunatic, insane person, and person non compos mentis; the words "person" and "whoever" include corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals;

"officer" includes any person authorized by law to perform the duties of the office;

"signature" or "subscription" includes a mark when the person making the same intended it as such;

"oath" includes affirmation, and "sworn" includes affirmed;

"writing" includes printing and typewriting and reproductions of visual symbols by photographing, multigraphing, mimeographing, manifolding, or otherwise.

§ 2. "County" as including "parish," and so forth.

The word "county" includes a parish, or any other equivalent subdivision of a State or Territory of the United States.

§ 3. "Vessel" as including all means of water transportation.

The word "vessel" includes every description of watercraft or other artificial contrivance used or capable of being used, as a means of transportation on water.

§ 4. "Vehicle" as including all means of land transportation.

The word "vehicle" includes every description of carriage or other artificial contrivance used or capable of being used, as a means of transportation on land.

§ 5. "Company" or "association" as including successors and assigns.

The word "company" or ldquo;association", when used in reference to a corporation, shall be deemed to embrace the words "successors and assigns of such company or association", in like manner as if these last-named words, or words of similar import, were expressed.

10 U.S.C. § 101. *Definitions*

In addition to the definitions in sections 1-5 of title 1, the following definitions apply in this title:

(1) "United States", in a geographic sense, means the States and the District of Columbia.

(2) Except as provided in section 101(1) of title 32 for laws relating to the militia, the National Guard, the Army National Guard of the United States, and the Air National Guard of the United States, "Territory" means any Territory organized after this title is enacted, so long as it remains a Territory.

(3) "Possessions" includes the Virgin Islands, the Canal Zone, Guam, American Samoa, and the Guano islands, so long as

(b) The military judge and, except for questions of challenge, the president of a court-martial without a military judge shall rule upon all questions of law and all interlocutory questions arising during the proceedings. Any such ruling made by the military judge upon any question of law or any interlocutory question other than the factual issue of mental responsibility of the accused, or by the president of a court-martial without a military Judge upon any question of law other than a motion for a finding of not guilty, is final and constitutes the ruling of the court. However, the military judge or the president of a court-martial without a military judge may change his ruling at any time during the trial. Unless the ruling is final, if any member objects thereto, the court shall be cleared and closed and the question decided by a voice vote as provided in section 852 of this title (article 52), beginning with the junior in rank.

(c) Before a vote is taken on the findings, the military judge or the president of a court-martial without a military judge shall, in the presence of the accused and counsel, instruct the members of the court as to the elements of the offense and charge them—

(1) that the accused must be presumed to be innocent until his guilt is established by legal and competent evidence beyond reasonable doubt;

(2) that in the case being considered, if there is a reasonable doubt as to the guilt of the accused, the doubt must be resolved in favor of the accused and he must be acquitted;

(3) that, if there is reasonable doubt as to the degree of guilt, the finding must be in a lower degree as to which there is no reasonable doubt; and

(4) that the burden of proof to establish the guilt of the accused beyond reasonable doubt is upon the United States.

(d) Subsections (a), (b), and (c) do not apply to a court-martial composed of a military judge only. The military judge of such a court-martial shall determine all questions of law and fact arising during the proceedings and, if the accused is convicted, adjudge an appropriate sentence. The military judge of such a court-martial shall make a general finding and shall in addition on request find the facts specially. If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact appear therein.

## § 852. Art. 52. Number of votes required

(a)(1) No person may be convicted of an offense for which the death penalty is made mandatory by law, except by the concurrence of all the members of the court-martial present at the time the vote is taken.

(2) No person may be convicted of any other offense, except as provided in section 845(b) of this title (article 45(b)) or by the concurrence of two-thirds of the members present at the time the vote is taken.

(b)(1) No person may be sentenced to suffer death, except by the concurrence of all the members of the court-martial present at the time the vote is taken and for an offense in this chapter expressly made punishable by death.

(2) No person may be sentenced to life imprisonment or to confinement for more than ten years, except by the concurrence of three-fourths of the members present at the time the vote is taken.

(3) All other sentences shall be determined by the concurrence of two-thirds of the members present at the time the vote is taken.

(c) All other questions to be decided by the members of a general or special court-martial shall be determined by a majority vote, but a determination to reconsider a finding of guilty or to reconsider a sentence, with a view toward decreasing it, may be made by any lesser vote which indicates that the reconsideration is not opposed by the number of votes required for that finding or sentence. A tie vote on a challenge disqualifies the member challenged. A tie vote on a motion for a finding of not guilty or on a motion relating to the question of the accused's sanity is a determination against the accused. A tie vote on any other question is a determination in favor of the accused.

## § 853. Art. 53. Court to announce action

A court-martial shall announce its findings and sentence to the parties as soon as determined.

## § 854. Art. 54. Record of trial

(a) Each general court-martial shall keep a separate record of the proceedings in each case brought before it, and the record shall be authenticated by the signature of the military judge. If the record cannot be authenticated by the military judge by reason of his death, disability, or absence, it shall be authenticated by the signature of the trial counsel or by that of a member if the trial counsel is unable to authenticate it by reason of his death, disability, or absence. In a court-martial consisting of only a military judge the record shall be authenticated by the court reporter under the same conditions which would impose such a duty on a member under the subsection.

(b) Each special and summary court-martial shall keep a separate record of the proceedings in each case, and the record shall be authenticated in the manner required by such regulations as the President may prescribe.

(c)(1) A complete record of the proceedings and testimony shall be prepared—

(A) in each general court-martial case in which the sentence adjudged includes death, a dismissal, a discharge, or (if the sentence adjudged does not include a discharge) any other punishment which exceeds that which may otherwise be adjudged by a special court-martial; and

(B) in each special court-martial case in which the sentence adjudged includes a bad-conduct discharge, confinement for more than six months, or forfeiture of pay for more than six months.

(2) In all other court-martial cases, the record shall contain such matters as may be prescribed by regulations of the President.

(d) A copy of the record of the proceedings of each general and special court-martial shall be given to the accused as soon as it is authenticated.

## SUBCHAPTER VIII. SENTENCES

| Sec. | Art. | |
|---|---|---|
| 855. | 55. | Cruel and unusual punishments prohibited. |
| 856. | 56. | Maximum limits. |
| 856a. | 56a. | Sentence of confinement for life without eligibility for parole. |
| 857. | 57. | Effective date of sentences. |
| 857a. | 57a. | Deferment of sentences. |

(3) A description of any special defense under R.C.M. 916 in issue;

(4) A direction that only matters properly before the court-martial may be considered;

(5) A charge that—

(A) The accused must be presumed to be innocent until the accused's guilt is established by legal and competent evidence beyond reasonable doubt;

(B) In the case being considered, if there is a reasonable doubt as to the guilt of the accused, the doubt must be resolved in favor of the accused and the accused must be acquitted;

(C) If, when a lesser included offense is in issue, there is a reasonable doubt as to the degree of guilt of the accused, the finding must be in a lower degree as to which there is not reasonable doubt; and

(D) The burden of proof to establish the guilt of the accused is upon the Government. [When the issue of lack of mental responsibility is raised, add: The burden of proving the defense of lack of mental responsibility by clear and convincing evidence is upon the accused. When the issue of mistake of fact as to age in a carnal knowledge prosecution is raised, add: The burden of proving the defense of mistake of fact as to age in carnal knowledge by a preponderance of the evidence is upon the accused.]

(6) Directions on the procedures under R.C.M. 921 for deliberations and voting; and

(7) Such other explanations, descriptions, or directions as may be necessary and which are properly requested by a party or which the military judge determines, *sua sponte*, should be given.

### Discussion

A matter is "in issue" when some evidence, without regard to its source or credibility, has been admitted upon which members might rely if they choose. An instruction on a lesser included offense is proper when an element from the charged offense which distinguishes that offense from the lesser offense is in dispute.

*See* R.C.M. 918(c) and discussion as to reasonable doubt and other matters relating to the basis for findings which may be the subject of an instruction.

Other matters which may be the subject of instruction in appropriate cases included: inferences (*see* the explanations in Part IV concerning inferences relating to specific offenses); the limited purpose for which evidence was admitted (regardless of whether such evidence was offered by the prosecution of defense) (*see* Mil. R. Evid. 105); the effect of character evidence (*see* Mil. R. Evid. 404; 405); the effect of judicial notice (*see* Mil. R. Evid.

201, 201A); the weight to be given a pretrial statement (*see* Mil. R. Evid. 340(e)); the effect of stipulations (*see* R.C.M. 811); that, when a guilty plea to a lesser included offense has been accepted, the members should accept as proved the matters admitted by the plea, but must determine whether the remaining elements are established; that a plea of guilty to one offense may not be the basis for inferring the existence of a fact or element of another offense; the absence of the accused from trial should not be held against the accused; and that no adverse inferences may be drawn from an accused's failure to testify (*see* Mil. R. Evid. 301(g)).

The military judge may summarize and comment upon evidence in the case in instructions. In doing so, the military judge should present an accurate, fair, and dispassionate statement of what the evidence shows; not depart from an impartial role; not assume as true the existence or nonexistence of a fact in issue when the evidence is conflicting or disputed, or when there is no evidence to support the matter; and make clear that the members must exercise their independent judgment as to the facts.

---

(f) *Waiver.* Failure to object to an instruction or to omission of an instruction before the members close to deliberate constitutes waiver of the objection in the absence of plain error. The military judge may require the party objecting to specify of what respect the instructions given were improper. The parties shall be given the opportunity to be heard on any objection outside the presence of the members.

### Rule 921. Deliberations and voting on findings

(a) *In general.* After the military judge instructs the members on findings, the members shall deliberate and vote in a closed session. Only the members shall be present during deliberations and voting. Superiority in rank shall not be used in any manner in an attempt to control the independence of members in the exercise of their judgment.

(b) *Deliberations.* Deliberations properly include full and free discussion of the merits of the case. Unless otherwise directed by the military judge, members may take with them in deliberations their notes, if any, any exhibits admitted in evidence, and any written instructions. Members may request that the court-martial be reopened and that portions of the record be read to them or additional evidence introduced. The military judge may, in the exercise of discretion, grant such request.

(c) *Voting.*

(1) *Secret ballot.* Voting on the findings for each charge and specification shall be by secret written ballot. All members present shall vote.

(2) *Numbers of votes required to convict.*

(A) *Death penalty mandatory.* A finding of guilty of an offense for which the death penalty is mandatory results only if all members present vote for a finding of guilty.

### Discussion

Article 106 is the only offense under the code for which the death penalty is mandatory.

(B) *Other offenses.* As to any offense for which the death penalty is not mandatory, a finding of guilty results only if at least two-thirds of the members present vote for a finding of guilty.

### Discussion

In computing the number of votes required to convict, any fraction of a vote is rounded up to the next whole number. For example, if there are five members, the concurrence of at least four would be required to convict. The military judge should instruct the members on the specific number of votes required to convict.

(3) *Acquittal.* If fewer than two-thirds of the members present vote for a finding of guilty—or, when the death penalty is mandatory, if fewer than all the members present vote for a finding of guilty—a finding of not guilty has resulted as to the charge or specification on which the vote was taken.

(4) *Not guilty only by reason of lack of mental responsibility.* When the defense of lack of mental responsibility is in issue under R.C.M. 916(k)(1), the members shall first vote on whether the prosecution has proven the elements of the offense beyond a reasonable doubt. If at least two-thirds of the members present (all members for offenses where the death penalty is mandatory) vote for a finding of guilty, then the members shall vote on whether the accused has proven lack of mental responsibility. If a majority of the members present concur that the accused has proven lack of mental responsibility by clear and convincing evidence, a finding of not guilty only by reason of lack of mental responsibility results. If the vote on lack of mental responsibility does not result in a finding of not guilty only by reason of lack of mental responsibility, then the defense of lack of mental responsibility has been rejected and the finding of guilty stands.

### Discussion

If lack of mental responsibility is in issue with regard to more than one specification, the members should determine the issue of lack of mental responsibility on each specification separately.

(5) *Included offenses.* Members shall not vote on a lesser included offense unless a finding of not guilty of the offense charged has been reached. If a finding of not guilty of an offense charged has been reached the members shall vote on each included offense on which they have been instructed, in order of severity beginning with the most severe. The members shall continue the vote on each included offense on which they have been instructed until a finding of guilty results or findings of not guilty have been reached as to each such offense.

(6) *Procedure for voting.*

(A) *Order.* Each specification shall be voted on separately before the corresponding charge. The order of voting on several specifications under a charge or on several charges shall be determined by the president unless a majority of the members object.

(B) *Counting votes.* The junior member shall collect the ballots and count the votes. The president shall check the count and inform the other members of the result.

### Discussion

Once findings have been reached, they may be reconsidered only in accordance with R.C.M. 924.

(d) *Action after findings are reached.* After the members have reached findings on each charge and specification before them, the court-martial shall be opened and the president shall inform the military judge that findings have been reached. The military judge may, in the presence of the parties, examine any writing which the president intends to read to announce the findings and may assist the members in putting the findings in proper form. Neither that writing nor any oral or written clarification or discussion concerning it shall constitute announcement of the findings.

### Discussion

Ordinarily a findings worksheet should be provided to the members as an aid to putting the findings in proper form. *See* Appendix 10 for a format for findings. If the military judge examines

any writing by the members or otherwise assists them to put findings in proper form, this must be done in an open session and counsel should be given the opportunity to examine such a writing and to be heard on any instructions the military judge may give. *See* Article 39(b).

The president should not disclose any specific number of votes for or against any finding.

---

## Rule 922. Announcement of findings

(a) *In general.* Findings shall be announced in the presence of all parties promptly after they have been determined.

### Discussion

*See* Appendix 10. A finding of an offense about which no instructions were given is not proper.

---

(b) *Findings by members.* The president shall announce the findings by the members.

(1) If a finding is based on a plea of guilty, the president shall so state.

(2) In a capital case, if a finding of guilty is unanimous with respect to a capital offense, the president shall so state. This provision shall not apply during reconsideration under R.C.M. 924(a) of a finding of guilty previously announced in open court unless the prior finding was announced as unanimous.

### Discussion

If the findings announced are ambiguous, the military judge should seek clarification. *See also* R.C.M. 924. A nonunanimous finding of guilty as to a capital offense may be reconsidered, but not for the purpose of rendering a unanimous verdict in order to authorize a capital sentencing proceeding. The president shall not make a statement regarding unanimity with respect to reconsideration of findings as to an offense in which the prior findings were not unanimous.

---

(c) *Findings by military judge.* The military judge shall announce the findings when trial is by military judge alone or when findings may be entered upon R.C.M. 910(g).

(d) *Erroneous announcement.* If an error was made in the announcement of the findings of the court-martial, the error may be corrected by a new announcement in accordance with this rule. The error must be discovered and the new announcement

made before the final adjournment of the court-martial in the case.

### Discussion

*See* R.C.M. 1102 concerning the action to be taken if the error in the announcement is discovered after final adjournment.

---

(e) *Polling prohibited.* Except as provided in Mil. R. Evid. 606, members may not be questioned about their deliberations and voting.

## Rule 923. Impeachment of findings

Findings which are proper on their face may be impeached only when extraneous prejudicial information was improperly brought to the attention of a member, outside influence was improperly brought to bear upon any member, or unlawful command influence was brought to bear upon any member.

### Discussion

Deliberations of the members ordinarily are not subject to disclosure. *See* Mil. R. Evid. 606. Unsound reasoning by a member, misconception of the evidence, or misapplication of the law is not a proper basis for challenging the findings. However, when a showing of a ground for impeaching the verdict has been made, members may be questioned about such a ground. The military judge determines, as an interlocutory matter, whether such an inquiry will be conducted and whether a finding has been impeached.

---

## Rule 924. Reconsideration of findings

(a) *Time for reconsideration.* Members may reconsider any finding reached by them before such finding is announced in open session.

(b) *Procedure.* Any member may propose that a finding be reconsidered. If such a proposal is made in a timely manner the question whether to reconsider shall be determined in closed session by secret written ballot. Any finding of not guilty shall be reconsidered if a majority vote for reconsideration. Any finding of guilty shall be reconsidered if more than one-third of the members vote for reconsideration. When the death penalty is mandatory, a request by any member for reconsideration of a guilty finding requires reconsideration. Any finding of not guilty only by reason of lack of mental responsibility shall be reconsidered on the issue of the finding of guilty of the elements if more than one-third of the members vote for reconsideration, and on the

**R.C.M. 1005(e)(2)**

have on the accused's entitlement to pay and allowances;

(3) A statement of the procedures for deliberation and voting on the sentence set out in R.C.M. 1006;

### Discussion

*See also* R.C.M. 1004 concerning additional instructions required in capital cases.

---

(4) A statement informing the members that they are solely responsible for selecting an appropriate sentence and may not rely on the possibility of any mitigating action by the convening or higher authority; and

### Discussion

*See also* R.C.M. 1002.

---

(5) A statement that the members should consider all matters in extenuation, mitigation, and aggravation, whether introduced before or after findings, and matters introduced under R.C.M. 1001(b)(1), (2), (3) and (5).

### Discussion

For example, tailored instructions on sentencing should bring attention to the reputation or record of the accused in the service for good conduct, efficiency, fidelity, courage, bravery, or other traits of good character, and any pretrial restraint imposed on the accused.

---

(f) *Waiver.* Failure to object to an instruction or to omission of an instruction before the members close to deliberate on the sentence constitutes waiver of the objection in the absence of plain error. The military judge may require the party objecting to specify in what respect the instructions were improper. The parties shall be given the opportunity to be heard on any objection outside the presence of the members.

### Rule 1006. Deliberations and voting on sentence

(a) *In general.* The members shall deliberate and vote after the military judge instructs the members on sentence. Only the members shall be present during deliberations and voting. Superiority in rank shall not be used in any manner to control the inde-

pendence of members in the exercise of their judgment.

(b) *Deliberations.* Deliberations may properly include full and free discussion of the sentence to be imposed in the case. Unless otherwise directed by the military judge, members may take with them in deliberations their notes, if any, any exhibits admitted in evidence, and any written instructions. Members may request that the court-martial be reopened and that portions of the record be read to them or additional evidence introduced. The military judge may, in the exercise of discretion, grant such requests.

(c) *Proposal of sentences.* Any member may propose a sentence. Each proposal shall be in writing and shall contain the complete sentence proposed. The junior member shall collect the proposed sentences and submit them to the president.

### Discussion

A proposal should state completely each kind and, where appropriate, amount of authorized punishment proposed by that member. For example, a proposal of confinement for life would state whether it is with or without eligibility for parole. *See* R.C.M.1003(b).

---

(d) *Voting.*

(1) *Duty of members.* Each member has the duty to vote for a proper sentence for the offenses of which the court-martial found the accused guilty, regardless of the member's vote or opinion as to the guilt of the accused.

(2) *Secret ballot.* Proposed sentences shall be voted on by secret written ballot.

(3) *Procedure.*

(A) *Order.* All members shall vote on each proposed sentence in its entirety beginning with the least severe and continuing, as necessary, with the next least severe, until a sentence is adopted by the concurrence of the number of members required under subsection (d)(4) of this rule. The process of proposing sentences and voting on them may be repeated as necessary until a sentence is adopted.

(B) *Counting votes.* The junior member shall collect the ballots and count the votes. The president shall check the count and inform the other members of the result.

**Exhibit H**

### Discussion

A sentence adopted by the required number of members may be reconsidered only in accordance with R.C.M. 1009.

---

(4) *Number of votes required.*

(A) *Death.* A sentence which includes death may be adjudged only if all members present vote for that sentence.

### Discussion

*See* R.C.M. 1004.

---

(B) *Confinement for life, with or without eligibility for parole, or more than 10 years.* A sentence that includes confinement for life, with or without eligibility for parole, or more than 10 years may be adjudged only if at least three-fourths of the members present vote for that sentence.

(C) *Other.* A sentence other than those described in subsection (d)(4)(A) or (B) of this rule may be adjudged only if at least two-thirds of the members present vote for that sentence.

### Discussion

In computing the number of votes required to adopt a sentence, any fraction of a vote is rounded up to the next whole number. For example, if there are seven members, at least six would have to concur to impose a sentence requiring a three-fourths vote, while at least five would have to concur to impose a sentence requiring a two-thirds vote.

---

(5) *Mandatory sentence.* When a mandatory minimum is prescribed under Article 118 the members shall vote on a sentence in accordance with this rule.

(6) *Effect of failure to agree.* If the required number of members do not agree on a sentence after a reasonable effort to do so, a mistrial may be declared as to the sentence and the case shall be returned to the convening authority, who may order a rehearing on sentence only or order that a sentence of no punishment be imposed.

(e) *Action after a sentence is reached.* After the members have agreed upon a sentence, the court-martial shall be opened and the president shall inform the military judge that a sentence has been reached. The military judge may, in the presence of the parties, examine any writing which the president intends to read to announce the sentence and may assist the members in putting the sentence in proper form. Neither that writing nor any oral or written clarification or discussion concerning it shall constitute announcement of the sentence.

### Discussion

Ordinarily a sentence worksheet should be provided to the members as an aid to putting the sentence in proper form. *See* Appendix 11 for a format for forms of sentences. If a sentence worksheet has been provided, the military judge should examine it before the president announces the sentence. If the military judge intends to instruct the members after such examination, counsel should be permitted to examine the worksheet and to be heard on any instructions the military judge may give.

The president should not disclose any specific number of votes for or against any sentence.

If the sentence is ambiguous or apparently illegal, *see* R.C.M. 1009.

---

## Rule 1007. Announcement of sentence

(a) *In general.* The sentence shall be announced by the president or, in a court-martial composed of a military judge alone, by the military judge, in the presence of all parties promptly after it has been determined.

### Discussion

*See* Appendix 11.

An element of a sentence adjudged by members about which no instructions were given and which is not listed on a sentence worksheet is not proper.

---

(b) *Erroneous announcement.* If the announced sentence is not the one actually determined by the court-martial, the error may be corrected by a new announcement made before the record of trial is authenticated and forwarded to the convening authority. This action shall not constitute reconsideration of the sentence. If the court-martial has been adjourned before the error is discovered, the military judge may call the court-martial into session to correct the announcement.

### Discussion

For procedures governing reconsideration of the sentence, *see* R.C.M. 1009. *See also* R.C.M. 1102 concerning the action to be taken if the error in the announcement is discovered after the record is authenticated and forwarded to the convening authority.

---

(c) *Polling prohibited.* Except as provided in Mil.

DC:      No, sir.

MJ:      Very well.

         Does the prosecution have a peremptory challenge?

TC:      One moment, please, sir.

MJ:      Take your time.

*The trial counsel and assistant trial counsel conferred.*

MJ:      Would both parties like a five-minute recess to discuss
         this issue?

TC:      Yes, sir.

MJ:      This court is in recess for five minutes.

*The court-martial recessed at 0958, 1 October 2003.*

*The court-martial was called to order at 1006, 1 October 2003.*

MJ:      The court will come to order.  All parties present when
         the court recessed are once again present.

         Captain Manning, does the government have a peremptory
         challenge to make?

TC:      Yes, sir.  The government wishes to exercise its
         peremptory challenge on Staff Sergeant Camarena.

MJ:      Staff Sergeant Camarena?  That is granted.

         Does the defense have a peremptory challenge?

DC:      No, sir.

MJ:      Very well.  As I see it, gentlemen, we have four members
         of our panel.  We have Lieutenant Hey, Chief Warrant
         Officer Arent, Staff Sergeant Gutierrez, and Staff
         Sergeant Miller.

**Exhibit I**

Westlaw.

5 M.J. 923                                                                    Page 1

5 M.J. 923
**(Cite as: 5 M.J. 923)**

U. S. v. Wolff
NCMR,1978.

U. S. Navy Court of Military Review.
UNITED STATES
v.
Richard M. WOLFF, 044 26 8060, Aviation
Electronics Technician, First Class(E-6), U. S.
Navy.
**NCM 77 1301.**

Sentence Adjudged 2 April 1977.
Decided 15 Sept. 1978.

Accused, an aviation electronics technician, U. S.
Navy, was convicted by a general court-martial of
premeditated murder, felony-murder and robbery.
Accused appealed. The Navy Court of Military
Review, Granger, J., held that: (1) trial by a
five-member court-martial did not deny accused due
process or equal protection; (2) the erroneous
failure to read the charges to the accused at the
arraignment or obtain a waiver thereof was not
prejudicial; (3) a firearms examiner was qualified to
testify as an expert concerning ballistics tests of the
bullets that killed the victim; (4) accused's
statements to a superior officer concerning his poor
financial status before the murder were admissible,
and (5) the military judge's remark at a social
gathering during the trial that a pathologist who had
testified for the prosecution was "very professional
in his appearance," did not refer to the credibility of
the witness and did not require that the judge recuse
himself.

Affirmed.
West Headnotes
**[1] Military Justice 258A ☞632**

258A Military Justice
    258AII Punishable Offenses and Defenses to
Charges
        258Ak631 Homicide Generally

258Ak632 k. In General; Nature and
Elements. Most Cited Cases
    (Formerly 258Ak631, 258Ak52)
Although there was but single victim in case, it was
not error to convict accused of premeditated murder
and felony-murder.

**[2] Constitutional Law 92 ☞3667**

92 Constitutional Law
    92XXVI Equal Protection
        92XXVI(E)    Particular    Issues    and
Applications
            92XXVI(E)10 War and National Security
            92k3667    k.    Offenses    and
Courts-Martial. Most Cited Cases
    (Formerly 92k242.1(3))

**Constitutional Law 92 ☞4245(1)**

92 Constitutional Law
    92XXVII Due Process
        92XXVII(G)    Particular    Issues    and
Applications
            92XXVII(G)10 War and National Security
            92k4241 Armed Services
                92k4245    Offenses    and
Courts-Martial
                92k4245(1) k. In General. Most
Cited Cases
    (Formerly 92k278.6(2))

**Military Justice 258A ☞528.1**

258A Military Justice
    258AI In General
        258Ak528 Particular Provisions, Applicability
            258Ak528.1 k. In General. Most Cited
Cases
    (Formerly 258Ak528, 258Ak21)

**Military Justice 258A ☞870**

258A Military Justice

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Exhibit J**

5 M.J. 923
**(Cite as: 5 M.J. 923)**

258AIII Courts-Martial
    258Ak870 k. Classification and Composition in General. Most Cited Cases
    (Formerly 258Ak80)
Trial by five-member court-martial did not deny accused due process; nor did variance in size of court-martial from one case to another deny him equal protection. U.S.C.A.Const. Amends. 5, 14.

**[3] Military Justice 258A** ☜**1424**

258A Military Justice
    258AX Review of Courts-Martial
        258AX(B) Further Review
            258AX(B)1 In General
                258Ak1423 Harmless or Prejudicial Error; Test for Reversible Error
                258Ak1424 k. Pretrial Proceedings. Most Cited Cases
    (Formerly 258Ak322)
Failure to read charges at arraignment or obtain waiver thereof from accused was not prejudicial where accused unquestionably knew what the charges were.

**[4] Military Justice 258A** ☜**1120**

258A Military Justice
    258AV Evidence and Witnesses
        258Ak1120 k. Opinions and Expert Testimony. Most Cited Cases
    (Formerly 258Ak174)
Firearms examiner was qualified to testify as expert as to ballistics tests on bullets taken from murder victim.

**[5] Military Justice 258A** ☜**1106.1**

258A Military Justice
    258AV Evidence and Witnesses
        258Ak1106 Confessions and Admissions
            258Ak1106.1 k. In General. Most Cited Cases
    (Formerly 258Ak1106, 258Ak169)
In prosecution for murder and robbery, accused's statements to superior officer showing his indebtedness prior to crime were admissible, in that officer who counseled accused had no reason to suspect accused of any criminal offense at that time.

**[6] Military Justice 258A** ☜**1300.1**

258A Military Justice
    258AVIII Sentence
        258Ak1300 Presentencing Procedure
            258Ak1300.1 k. In General. Most Cited Cases
    (Formerly 258Ak1300, 258Ak272)
In prosecution for murder and robbery, accused's failure to challenge voluntariness of statements given to superior officer resulted in waiver of that issue where failure to challenge voluntariness of statements was not inadvertent, but was result of well-reasoned conclusion that defense was better off with that evidence than without it.

**[7] Military Justice 258A** ☜**1267**

258A Military Justice
    258AVII Trial
        258Ak1263 Instructions
            258Ak1267 k. On Evidence. Most Cited Cases
    (Formerly 258Ak241)
Military judge was not required to instruct on voluntariness of accused's statements to superior officer where issue of voluntariness was never raised by defense counsel.

**[8] Military Justice 258A** ☜**881.1**

258A Military Justice
    258AIII Courts-Martial
        258Ak881 Military Judges; Magistrates
            258Ak881.1 k. In General. Most Cited Cases
    (Formerly 258Ak881, 258Ak86)
Military judge was not required to recuse himself from trial on charges of murder and robbery because of his remark at social gathering during trial that pathologist who had testified for prosecution in case was "very professional in his appearance," in that statement made no reference to credibility of witness or to accuracy of his testimony and there was no fair risk that his remark could have been interpreted as such.

**[9] Military Justice 258A** ☜**501**

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

5 M.J. 923
**(Cite as: 5 M.J. 923)**

258A Military Justice
    258AI In General
        258Ak501 k. Statutes, Rules, and Regulations
in General. Most Cited Cases
      (Formerly 258Ak2)
On appeal from conviction of robbery and murder,
Court of Military Review would not order
Department of Navy to set parole regulations
specifying standards and procedures.

**\*924** CAPT Joseph F. Smith, USMCR, Appellate
Defense Counsel.
CAPT Geoffrey D. Fallon, USMCR, Appellate
Government Counsel.
1stLTCraig L. Kemmerer, USMCR, Appellate
Government Counsel.

Before BAUM, GLADIS and GRANGER, JJ.
GRANGER, Judge:
[1] Appellant was convicted by general
court-martial of premeditated murder, felony
murder and robbery.[FN1] He was sentenced to
confinement at hard labor for life, forfeiture of all
pay and allowances, a fine of $4,716.07, reduction
from pay grade E-6 to pay grade E-1, and
separation with a dishonorable discharge.

> FN1. Although there was but a single
> victim in this case, it is not error to charge
> an accused with premeditated murder and
> felony murder, nor is it error to affirm
> convictions of both offenses. See United
> States v. Smith, 13 U.S.C.M.A. 553,33
> C.M.R. 85 (1963).

The murder victim, Ship Serviceman First Class
Clark, was assigned as cashier at an officers' club at
Okinawa, Japan. On 30 November 1976, Clark
went to a local bank to transact club business. He
left the bank with almost $5,000 in American and
Japanese currency. He did not return to work and
was never again seen alive. His body, with hands
and feet bound, was found in a cane field on 8
December 1976. He had been shot twice in the
head.

A sailor named Drake testified that, several days

prior to the murder, appellant told him that
appellant and his wife were going to rob Clark.
Drake further testified that appellant admitted the
murder shortly after it occurred on 30 November.

Drake's testimony was corroborated by
circumstantial evidence. Appellant had been deeply
in debt before the murder, but paid debts and spent
money lavishly shortly after Clark was killed. A
search of appellant's hotel room resulted in the
seizure of appellant's blood-stained shirt. Blood on
the shirt matched Clark's blood type. Appellant had
been seen with Clark on the day of the killing and
was seen alone in the victim's car later that day.
Finally, tests showed that Clark had been killed with
appellant's .22 caliber pistol.

Appellant was represented by able counsel at trial
and before this Court. We commend them for their
diligence and skillful advocacy. Counsel at both
levels urge that appellant's conviction must be set
aside. We have examined their many assignments
of error, some of which are discussed below, and
we conclude that no prejudicial error was
committed.

Right to six-member court-martial.

[2] Appellant contends his trial by a five-member
court-martial deprived him of due process of law as
guaranteed by the Fifth Amendment to the
Constitution. He argues that a court-martial of less
than six members is too small to consistently attain
that quality of justice demanded by due process, and
he relies upon Ballew v. Georgia, 435 U.S. 223, 98
S.Ct. 1029, 55 L.Ed.2d 234 (1978), which held that
the Sixth Amendment right to a jury trial, applicable
to the states through the Fourteenth Amendment,
requires that juries in the more serious cases be
comprised of not less than six members.

Appellant does not argue that the Sixth Amendment
entitles service members to a jury trial. It is well
settled that it does not. See United States v. Kemp,
22 U.S.C.M.A. 152,46 C.M.R. 152 (1973); H.
Moyer, Justice and the Military, s 2-585 (1972). He
contends, however, that the court-martial, mandated
by statute (Article 16, Uniform Code of Military

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

5 M.J. 923
**(Cite as: 5 M.J. 923)**

Justice (UCMJ), 10 USC s 816), and the jury, mandated by the Sixth Amendment, share the common function of rendering decisions through a process of group deliberation. The Supreme Court in Ballew v. Georgia, supra, found that the quality of justice provided by group deliberation decreases as the size of the group is reduced, to the point that the product delivered by groups of less than six is unacceptably poor. For this reason, the High Court held that Ballew was denied Fourteenth *925 Amendment due process when he was tried by a jury of less than six members. By the same rationale, appellant contends, trial by a court-martial comprised of fewer than six members deprives the accused of Fifth Amendment due process.

Appellant also attacks the legality of his five-member court-martial from another direction. The Fifth Amendment due process clause embodies concepts of equal protection.United States v. Courtney, 1 M.J. 438 (C.M.A. 1976). Appellant contends that, inasmuch as the quality of justice rendered through group deliberation diminishes with the reduction in the number of members composing the court, and the size of courts-martial varies from one case to another, some accused persons get more justice than others, so to speak. Since he was tried by the smallest general court-martial permissible, and some other accused service members are tried by larger courts-martial, appellant contends he has not received equal protection under the law.

Both of these contentions rely upon the Ballew rationale that the quality of justice varies proportionately with the number of members in the deliberating body. We find no evidence in the record to support this premise when the rationale is applied to courts-martial, and we are unwilling to adopt and apply the empirical data referred to in Ballew. That data was compiled in the civilian community from juries randomly selected to represent a cross-section of the civilian community. Courts-martial are not selected in that manner. Rather, they are deliberately chosen on the basis of who is best qualified to sit as a court member. Article 25, UCMJ, 10 U.S.C. s 825; See United States v. Kemp, supra ; United States v. Greene, 20

U.S.C.M.A. 232,43 C.M.R. 72 (1970); United States v. Crawford, 15 U.S.C.M.A. 31,35 C.M.R. 3 (1964). The Ballew data simply is inapposite.

There is no showing that a five-member court-martial does not render the same quality of justice as does a larger court. There is no indication that appellant did not receive precisely what the Congress contemplated when it enacted the Uniform Code of Military Justice in the exercise of its constitutional power to make rules for the government and regulation of the land and naval forces. That is the due process to which appellant is entitled.DeWar v. Hunter, 170 F.2d 993 (10th Cir. 1948), Cert. denied 337 U.S. 908, 69 S.Ct. 1048, 93 L.Ed. 1720 (1949). We conclude that appellant has suffered no due process deprivation.

Failure to arraign.

[3] Paragraph 65A, Manual for Courts-Martial, United States, 1969 (Revised edition) (MCM) describes arraignment as a two-step process that includes the reading of the charges, or waiver of that reading, and the calling for pleas from the accused. Here, although appellant was called upon to plead, he says he was not arraigned because his pleas were not preceded by a reading of the charges or waiver thereof. We agree that the arraignment process did not meet the Manual requirements. We are convinced, however, that appellant was not prejudiced by this error.

The purpose of arraignment is to ensure in a formal and ritualistic manner that the accused is aware of the charges against him and that he is protected against a second prosecution for the same misconduct. Both ends were met in this case.

The charges were timely served on appellant. At an Article 39(a), 10 U.S.C. s 839(a), session prior to trial, the military judge stated that he had shown a copy of Appellate Exhibit XVIII, which was the charges, to the defense. Shortly before accepting appellant's pleas, the military judge showed the defense a copy of the charges to be placed before the members (Appellate Exhibit XXC), which accurately reflected the charges upon which

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

5 M.J. 923                                                          Page 5

5 M.J. 923
**(Cite as: 5 M.J. 923)**

appellant was tried. Shortly after pleas were taken, the judge explicitly described to the members, in the presence of appellant, what the charges were, and he again showed the defense a copy of them prior to delivering them to the members. Further, appellant had successfully urged that the charges were duplicitous, and that motion had been extensively litigated prior to pleas.

**\*926** Appellant unquestionably knew what the charges were, and he is adequately protected against a second prosecution. No remedial action is required.United States v. Napier, 20 U.S.C.M.A. 422,43 C.M.R. 262 (1971).

Qualification as expert witness.

[4] A Government witness, Tomikawa, testified that he had examined appellant's pistol and two bullets taken from the victim's head, and he was of the opinion that the bullets were fired from appellant's gun. Appellant challenged Tomikawa's qualifications as a ballistics expert and now contends that the military judge erred in permitting the witness to testify as an expert.

The witness had a college degree in physics and had been employed as a firearms examiner in the Scientific Examination Laboratory of Okinawa Prefectural Police Headquarters for 20 years. He was the chief of firearms examination and had special schooling in firearms examination. He had taught in that field, received awards, and appeared as a witness in approximately 60 criminal proceedings. The witness was obviously an expert in the field of firearms examination.

Appellant would distinguish between firearms examiners and ballistics experts. The record will not support such a distinction, however. Tomikawa testified that a firearms examiner conducts tests on " everything concerning firearms," including examinations to determine the kind of bullet, what weapon a given bullet was fired from, and how many firearms were employed in an offense.

Another witness, Hamby, whose expert qualifications were readily conceded by the defense,

described "standard firearms identification" examination of bullets to include visual examination, stereoscopic-microscopic examination, weighing, and examination with a comparison identification microscope. He further testified that a firearms examiner could determine the caliber of bullets.

Further, Tomikawa's testimony about comparison analysis, striations, and lands and grooves demonstrated considerably more knowledge in this field than is possessed by the average person. The witness was shown to be an expert by military law standards. See United States v. Jones, 20 C.M.R. 438 (A.B.R. 1955), Aff'd, 7 U.S.C.M.A. 283,22 C.M.R. 73 (1956); J. Munster and M. Larkin, Military Evidence s 8.13 (2d ed. 1977). Appellant's assignment of error is without merit.

Admissibility of appellant's statements.

[5] It was the theory of the Government's case that appellant planned, well in advance, to rob Clark and that appellant also necessarily planned to kill Clark as the only way to avoid detection. To show that these crimes were premeditated, the Government showed that appellant was living well beyond his means, anticipating some extraordinary financial gain. The Government argued that appellant's need of money provided the motivation for these crimes.

For the first time on appeal, appellant contends that some of the evidence showing his indebtedness was inadmissible because it was elicited from him without warning of his right against self-incrimination.

Commander Briggs, appellant's executive officer, testified that he became aware that appellant was in debt when he received letters and telephone calls from people who told him that "checks were bouncing and that money was being owed."He began counseling appellant regarding this indebtedness and, during the course of their counseling sessions, he suggested that appellant make a chart showing debts owed and anticipated installment payments to be made, in order that the creditors could be appeased and the debts

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

5 M.J. 923
**(Cite as: 5 M.J. 923)**

systematically discharged. Appellant did this. An orderly payment plan was formulated and apparently accepted by the creditors, and appellant faithfully adhered to the payment schedule during the ensuing months prior to the murder.

About one week before the murder, appellant sent Commander Briggs a letter *927 thanking him for his efforts and his faith and trust, and professing that such assistance had helped appellant extricate himself from his financial difficulties and renew his pursuit of a successful Navy career.

Appellant contends that the debt and payment schedule, Prosecution Exhibit 32, was erroneously admitted in evidence because it was elicited from him without proper warning, Article 32, UCMJ, 10 U.S.C. s 832 and that the "thank you" letter, Prosecution Exhibit 33, was inadmissible because it was "fruit of the poisonous tree."

Appellant's counseling sessions began in April or May, 1976, and there is no indication that Commander Briggs had reason to suspect appellant of any criminal offense at that time. In June or July, the Naval Investigative Service (NIS) initiated an investigation into matters not shown to be related to anything discussed by Commander Briggs and appellant. The record reflects that appellant's commanding officer was in favor of "taking legal action" against appellant for the investigated offenses and that NIS ultimately believed there was sufficient evidence to support charges. Appellant submitted Prosecution Exhibit 32 prior to completion of this NIS investigation, however, and the commanding officer never charged appellant with any offense. It is clear that Commander Briggs was convinced that appellant fully intended to pay his debts.

We conclude that appellant was not a suspect at the time he constructed Prosecution Exhibit 32. Accordingly, a warning was not required, and Prosecution Exhibit 32 was admissible. It follows that Prosecution Exhibit 33 was not "fruit of the poisonous tree," and was also admissible. We would reach this conclusion as to Prosecution Exhibit 33 even were we to conclude that appellant was a suspect, because Prosecution Exhibit 33 was

an unsolicited, spontaneous expression of gratitude not associated with or tainted by the earlier admission of indebtedness.

[6] Further, assuming Arguendo that these two exhibits were inadmissible, we find that appellant affirmatively waived any objection to that evidence.

The evidence of appellant's serious financial problems did not come solely from Commander Briggs. Elsewhere in the record, it is shown that appellant was scheduled to leave Okinawa in early December for reassignment to duty in the United States. He moved out of his rented apartment almost one month before his anticipated departure date and moved into an expensive hotel. He owed money to his former landlord as well as to the hotel. Months before the murder, appellant's wife had given a "bad check" to a local merchant, and this $480 debt had not been paid. Two days before the murder, appellant and his wife had agreed to purchase some expensive art work for about $2,000. Appellant had made plans as early as 22 October to refuse military air transportation to the United States and had purchased commercial airline tickets, simply because it was more convenient to fly commercially. He had also made reservations for a "second honeymoon" at the Mark Hopkins Hotel in San Francisco. He was committed to give or loan $600 to an acquaintance prior to leaving Okinawa. Most of these obligations were discharged shortly after the murder, and appellant had at least $500 cash on 3 December.

That appellant could not afford such expenditures was shown by evidence of his income, and by the fact that on 22 November 8 days before the murder appellant tried to borrow $150 from a fellow service man.

It is also significant that Commander Briggs' testimony, that he had counseled appellant on many occasions during the months preceding the murder, would have been admissible even if all of appellant's admissions had been ruled inadmissible. Evidence of command pressure directed toward appellant to resolve financial difficulties was admissible to show motive, independent of any statements or admissions by the appellant.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

5 M.J. 923
**(Cite as: 5 M.J. 923)**

Appellant's only means to negate the Government's motive evidence was to show that he did not need the money taken from **\*928** Clark. He testified that he had accumulated about $1,350 in savings during the months preceding the murder and had secretly maintained this money in a locker at his work spaces. He stated that not even his wife knew of some of these savings. Appellant further testified that on 30 November the last day Clark was seen alive a Japanese man came to Okinawa from Tokyo, met appellant at an A & W Root Beer stand, and presented him with the equivalent of $2,500 in yen. This money represented the proceeds of an unsecured loan appellant had arranged some months before. Although appellant testified he had gone to Tokyo and personally applied for the loan, he was unable to recall the name of the loan company or its address. He testified that he asked to borrow $150 at work because it was inconvenient and time-consuming to walk down to his locker where he maintained his savings.

It is clear that appellant was under great financial strain, and the Government was able to show that without Prosecution Exhibits 32 and 33. There was little to be gained by the defense if these exhibits were excluded. On the other hand, these exhibits were valuable to the defense. They tended to show that, contrary to the Government's assertions, appellant was not a debtor beleaguered by creditors, and was not in financial waters over his head, but was instead a man who, one week before the murder and robbery, felt he had his house in order and had solved his financial problems. This was the thrust of trial defense counsel's argument to the court members. Commander Briggs' testimony and the documentary evidence introduced through him, lent an air of legitimacy to appellant's otherwise unsubstantiated and improbable story.

Appellant was represented by experienced lawyers, whose expertise in military law regarding confessions and admissions was demonstrated throughout the trial. We are convinced that the failure to challenge the voluntariness of these statements was not inadvertent, but was the result of a well-reasoned conclusion that the defense was better off with this evidence than without it. Appellant affirmatively waived any objection in this

regard. United States v. Gustafson, 17 U.S.C.M.A. 150, 37 C.M.R. 414 (1967).

Failure to instruct on voluntariness.

[7] Appellant next contends that, even if he waived any objection to the admissibility of this evidence, he could not waive an instruction regarding it. Defense counsel explicitly declined to have such an instruction given, after being three times reminded he could have it. Appellant now argues, however, that it was incumbent upon the judge to instruct the members that they must disregard the testimony of Commander Briggs as to appellant's admissions and Prosecution Exhibits 32 and 33 unless they determined that this evidence was lawfully obtained. Appellant cites United States v. Hanna, 2 M.J. 69 (C.M.A. 1976) and United States v. Graves, 1 M.J. 50 (C.M.A. 1975), which require an instruction on voluntariness when that issue is raised by the evidence, irrespective of the desires of counsel.

This case is distinguishable from the cited authorities, because here the issue of voluntariness was never raised. The evidence before the members showed only that appellant owed money and that his checks were returned unpaid. Owing money is not a criminal offense, See United States v. Schneiderman, 12 U.S.C.M.A. 494,31 C.M.R. 80 (1961), and there is no direct evidence, or evidence giving rise to an inference, that appellant intended to defraud anyone with worthless checks. See paragraph 202A, MCM. The judge did not err by acceding to appellant's desires and not instructing on this issue.   .

Military judge's out-of-court remarks.

[8] During the course of the trial, the military judge attended a farewell party for a general officer stationed on Okinawa, as did the president of this court-martial and appellant's individual military counsel. While the judge was seated for dinner at a table shared by the Psychiatrist, Marine Corps Base, Camp Butler, Okinawa, and a **\*929** lady, the dinner conversation turned to medical testimony at trials.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

5 M.J. 923                                                                                      Page 8

5 M.J. 923
**(Cite as: 5 M.J. 923)**

The judge remarked that Doctor Shimer, a pathologist, had recently testified in the present case and was very professional in his appearance, but that the judge could not discuss the matter further because the case was yet in progress. The president of the court-martial was not privy to this conversation.

At an Article 39(a) hearing the following week, defense counsel examined the military judge on Voir dire regarding this conversation. The judge recounted his remark and stated that he made no comment about the credibility of the witness or the substance of his testimony. Counsel made no objection or challenge in light of this revelation, and indicated that he was already aware of the identity of the psychiatrist with whom the judge had the conversation.

After the trial had progressed another week, and after the judge made an evidentiary ruling adverse to appellant, defense counsel challenged the military judge for cause on the grounds that he had abandoned his impartial role. The challenge was denied. Appellant urges that the judge erred in failing to recuse himself after making the remark discussed above, and he cites ABA Standards, The Function of the Trial Judge ss 1.5, 1.6, 1.7 (1972).

We find that the military judge made no reference to the credibility of the witness or to the accuracy of his testimony, and there is no fair risk that his remark could have been interpreted as such. It is clear from his stated reservation to the effect that he could not discuss the case further, that he measured his words before he spoke. The reasonable interpretation to be given his remark is that the judge was talking about what he saw, and not about the substance of what he heard. He was impressed with the witness's appearance and comportment. The witness could have made that impression whether or not he was telling the truth or knew what he was talking about.

Further, assuming the military judge's remark was improper and we are quick to observe that it was imprudent in any light appellant was not prejudiced by it. The judge was not the trier of fact. Owing to the judge's rulings on various Government and

defense challenges of members, appellant was tried before a court-martial practically hand-picked by his counsel. There is no indication that any member was aware of the judge's remark. A reading of the record discloses that the judge was extremely careful to ensure that appellant received a fair trial. No one could read the record and conclude that the judge was biased against appellant.

We are convinced that the trial was conducted in such a manner as to leave no "substantial doubt as to the legality, fairness and impartiality" of the proceedings. Paragraph 62F (13), MCM; See United States v. Head, 2 M.J. 131 (C.M.A.1977). Appellant's assignment of error is without merit.

We would also observe that when counsel perceives that the judge is disqualified, counsel should challenge him. Counsel cannot "lie behind the log," allowing the trial to progress and the record to build, and make his challenge a week later when things do not seem to be going his way.

Legality of post-trial confinement.

[9] Prior to filing his brief on the merits, appellant filed a petition for extraordinary relief, alleging that he was being denied due process of law because of infirmities in the military parole system. He asserted that Department of the Navy parole regulations set forth no adequate standards and criteria governing parole determination. He also complained of parole hearing procedures which, he asserted, fail to protect his substantial rights and thereby deny him due process. He moved for a writ of mandamus ordering the Secretary of the Navy to promulgate regulations remedying these purported deficiencies. That motion was denied.Wolff v. Secretary of the Navy, No. 77 1301 (N.C.M.R. 8 December 1977).

Appellant now incorporates this motion as an assignment of error for consideration on the merits. In oral argument, appellate **\*930** defense counsel confirmed that the relief he seeks is extraordinary relief in effect, a reconsideration of his prior motion. Upon reconsideration, we again deny appellant's motion for extraordinary relief.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

5 M.J. 923

5 M.J. 923
**(Cite as: 5 M.J. 923)**

Page 9

We must nevertheless determine whether appellant's sentence, including his adjudged confinement, is correct in law. Article 66, UCMJ, 10 U.S.C.A. s 866. We find no indication in the record that appellant is not lawfully confined. Further, a review of pertinent Department of the Navy regulations reveals that appellant's complaints regarding a denial of due process are without merit. Franklin v. Shields, 569 F.2d 784, 800, 801 (4th Cir. 1977).

We have examined appellant's remaining assignments of error and find no merit to them. The findings and sentence as approved below are affirmed.

Senior Judge BAUM and Judge GLADIS concur.
NCMR,1978.
U. S. v. Wolff
5 M.J. 923

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# ORIGINAL

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

| | |
|---|---|
| UNITED STATES, | SUPPLEMENT TO PETITION FOR GRANT OF REVIEW |
| Appellee, | |
| | USCA Dkt. No. 07-0089/MC |
| v. | Crim.App. No. 200500993 |
| Kevin R. SANFORD, | |
| Appellant. | |

### TO THE HONORABLE, THE JUDGES OF THE UNITED STATES COURT OF APPEALS FOR THE ARMED FORCES

BRIAN L. MIZER
LT, JAGC, USN
Bar No. 33030
Appellate Defense Counsel
Navy-Marine Corps Appellate Review Activity
716 Sicard Street, SE, Suite 1000
Washington Navy Yard, D.C. 20374
(202) 685-7290

## ORIGINAL

**Exhibit K**

## QUESTIONS PRESENTED

I.    WHETHER THE LOWER COURT ERRED WHEN IT HELD
      THAT, ALTHOUGH THE MILITARY JUDGE ERRED
      WHEN, IN APPELLANT'S TRIAL BEFORE MEMBERS
      FOR FRATERNIZATION, WHICH CONSISTED
      LARGELY OF APPELLANT'S ALLEGED UNSOLICITED
      HOMOSEXUAL ADVANCES TOWARDS A JUNIOR
      MARINE, PURSUANT TO M.R.E. 404(b), HE
      ALLOWED THE GOVERNMENT TO INTRODUCE
      EVIDENCE THAT APPELLANT HAD PREVIOUSLY
      FRATERNIZED WITH ANOTHER MALE MARINE,
      INCLUDING SHARING A HOTEL ROOM IN LAS
      VEGAS AND BEING DISCOVERED TOGETHER ALONE
      IN THEIR WORK SPACES AT 430 IN THE
      MORNING, BUT THAT THE ERROR WAS HARMLESS?

II.   WHETHER APPELLANT WAS DENIED DUE PROCESS
      OF LAW WHEN HE WAS TRIED FOR A NON-PETTY
      OFFENSE, BY A COURT-MARTIAL COMPOSED OF
      ONLY FOUR MEMBERS?

III.  WHETHER THE MILITARY ERRED WHEN, AFTER
      CONCLUDING THAT HE DID NOT HAVE ENOUGH
      EVIDENCE TO RESOLVE THE ISSUE OF
      ADMISSIBILITY OF APPELLANT'S PRE-TRIAL
      STATEMENTS, HE SUA SPONTE, CALLED FOUR
      ADDITIONAL WITNESSES TO ESTABLISH THE
      ADMISSIBILITY OF THE STATEMENTS FOR THE
      GOVERNMENT?

IV.   WHETHER THE MILITARY JUDGE ERRED WHEN HE
      USED THE TESTIMONY OF OTHER WITNESSES,
      WHICH ARGUABLY INDICATED THAT CAPTAIN
      MOTLEY HAD COMPLIED WITH ARTICLE 31, UCMJ,
      DURING QUESTIONING OF THOSE WITNESSES, AS
      EVIDENCE THAT CAPTAIN MOTELY HAD COMPLIED
      WITH ARTICLE 31, UCMJ, DURING CAPTAIN
      MOTLEY'S INTERROGATION OF APPELLANT?

V.    WHETHER APPELLANT WAS DENIED DUE PROCESS
      OF LAW WHERE MORE THAN THREE YEARS ELAPSED
      BETWEEN HIS TRIAL AND THE DECISION OF THE
      LOWER COURT?

VI.   WHETHER THE EVIDENCE IS LEGALLY
      INSUFFICIENT TO PROVE APPELLANT ATTEMPTED
      LARCENY OF U.S. CURRENCY WHERE APPELLANT
      AIDED LB WITH THE LARCENY OF A PLANE
      TICKET, A SERVICE?

VII. WHETHER THE EVIDENCE IS LEGALLY SUFFICIENT
     TO PROVE APPELLANT WAS DERELICT IN THE
     PERFORMANCE OF HIS DUTIES?

# TABLE OF CONTENTS

Page

Questions Presented ............................................ii

Table of Authorities..........................................iv

Statement of Statutory Jurisdiction............................1

Statement of the Case..........................................1

Statement of Facts.............................................1

Reasons to Grant Review.......................................11

I.   THE LOWER COURT ERRED WHEN IT HELD THAT
     ALTHOUGH THE MILITARY JUDGE ERRED WHEN, IN
     APPELLANT'S TRIAL BEFORE MEMBERS FOR
     FRATERNIZATION, WHICH CONSISTED LARGELY OF
     APPELLANT'S ALLEGED UNSOLICITED HOMOSEXUAL
     ADVANCES TOWARDS A JUNIOR MARINE, PURSUANT TO
     M.R.E. 404(b), HE ALLOWED THE GOVERNMENT TO
     INTRODUCE EVIDENCE THAT APPELLANT HAD
     PREVIOUSLY FRATERNIZED WITH ANOTHER MALE
     MARINE, INCLUDING SHARING A HOTEL ROOM IN LAS
     VEGAS AND BEING DISCOVERED TOGETHER ALONE IN
     THEIR WORK SPACES AT 430 IN THE MORNING, BUT
     THAT THE ERROR WAS HARMLESS ···························· 11

II.  APPELLANT WAS DENIED DUE PROCESS OF LAW WHEN
     HE WAS TRIED FOR A NON-PETTY OFFENSE, BY A
     COURT-MARTIAL COMPOSED OF ONLY FOUR MEMBERS ·············· 15

III. THE MILITARY ERRED WHERE, AFTER CONCLUDING
     THAT HE DID NOT HAVE ENOUGH EVIDENCE TO
     RESOLVE THE ISSUE OF ADMISSIBILITY OF
     APPELLANT'S PRE-TRIAL STATEMENTS, HE SUA
     SPONTE, CALLED FOUR ADDITIONAL WITNESSES TO
     ESTABLISH THE ADMISSIBILITY OF THE STATEMENTS
     FOR THE GOVERNMENT ···································· 20

IV.  THE MILITARY JUDGE ERRED WHEN HE USED THE
     TESTIMONY OF OTHER WITNESSES, WHICH ARGUABLY
     INDICATED THAT CAPTAIN MOTLEY HAD COMPLIED
     WITH ARTICLE 31, UCMJ, DURING QUESTIONING OF
     THOSE WITNESSES, AS EVIDENCE THAT CAPTAIN
     MOTLEY HAD COMPLIED WITH ARTICLE 31, UCMJ,
     DURING CAPTAIN MOTLEY'S INTERROGATION OF
     APPELLANT ············································ 24

V.   APPELLANT WAS DENIED DUE PROCESS OF LAW WHERE
     MORE THAN THREE YEARS ELAPSED BETWEEN HIS
     TRIAL AND THE DECISION OF THE LOWER COURT ················ 29

VI.   THE EVIDENCE IS LEGALLY INSUFFICIENT TO PROVE
      APPELLANT ATTEMPTED LARCENY OF U.S. CURRENCY
      WHERE APPELLANT AIDED LB WITH THE LARCENY OF
      A PLANE TICKET, A SERVICE ··································· 32

VII.  THE EVIDENCE IS LEGALLY INSUFFICIENT TO PROVE
      APPELLANT WAS DERELICT IN THE PERFORMANCE OF
      HIS DUTIES ·············································· 35

Appendix ························································· 39

Certificate of Compliance ······································· 39

Certificate of Service ·········································· 39

**TABLE OF AUTHORITIES**

Page

UNITED STATES SUPREME COURT CASES

 *Baldwin v. New York*, 399 U.S. 66 (1970) .................. 15

 *Ballew v. Georgia*, 435 U.S. 223 (1978) ................ 16,19

 *Burch v. Louisiana*, 441 U.S. 130 (1979) .................. 16

 *Doggett v. United States*, 505 U.S. 647 (1992) ........... 26

 *Jackson v. Virginia*, 443 U.S. 307 (1979) ................ 32

 *Middendorf v. Henry*, 425 U.S. 25 (1976) ................. 19

 *Michelson v. United States*, 335 U.S. 469 (1948) ......... 15

 *Weiss v. United States*, 510 U.S. 163 (1994) .......... 18,19

 *Williams v. Florida*, 399 U.S. 78 (1970) .............. 15,16

UNITED STATES COURT OF APPEALS FOR THE ARMED FORCES AND
COURT OF MILITARY APPEALS CASES

 *Diaz v. JAG of the Navy*, 59 M.J. 34 (C.A.A.F.

  2003) ............................................. 29

 *Toohey v. United States*, 60 M.J. 100 (C.A.A.F.

  2004) .......................................... 29,31

 *United States v. Acosta*, 49 M.J. 14 (C.A.A.F.

  1998) ............................................. 23

 *United States v. Blocker*, 32 M.J. 281 (C.M.A.

  1991) ............................................. 33

 *United States v. Bodkins*, 60 M.J. 322 (C.A.A.F.

  2004) ............................................. 31

 *United States v. Bresnahan*, 62 M.J. 137 (C.A.A.F.

  2005) ............................................. 22

 *United States v. Dallman*, 34 M.J. 274 (C.M.A.

  1992) ............................................. 36

*United States v. Demetris*, 9 U.S.C.M.A. 412
(C.M.A. 1958) ........................................ 18

*United States v. Dock*, 40 M.J. 112 (C.M.A. 1994) ........ 22

*United States v. Dowty*, 60 M.J. 163 (C.A.A.F.
2004) ............................................... 16

*United States v. Grant*, 56 M.J. 410 (C.A.A.F.
2002) ............................................... 21

*United States v. Graves*, 1 M.J. 50 (C.M.A. 1975) ........ 23

*United States v. Messenger*, 6 C.M.R. 21 (C.M.A.
1952) ............................................... 18

*United States v. Moreno*, 63 M.J. 129 (C.A.A.F.
2006) ............................................... 31

*United States v. Oestmann*, 61 M.J. 103 (C.A.A.F.
2005) ............................................... 36

*United States v. Pasha*, 24 M.J. 87 (C.M.A. 1987) ........ 18

*United States v. Ramos*, 42 M.J. 392 (C.A.A.F.
1995) ............................................. 22,23

*United States v. Rankins*, 34 M.J. 326 (C.M.A.
1992) ............................................... 16

*United States v. Reynolds*, 24 M.J. 261 (C.M.A.
1987) ............................................... 22

*United States v. Shackelford*, 2 M.J. 17 (C.M.A.
1976) ............................................... 22

*United States v. Tanksley*, 36 M.J. 428 (C.M.A.
1993) ............................................... 36

*United States v. Turner*, 25 M.J. 324 (C.M.A.
1987) ............................................. 32,33

*United States v. Wiesen*, 56 M.J. 172 (C.A.A.F. 2001) .............................................. 24

SERVICE COURTS OF CRIMINAL APPEALS CASES

*United States v. Collazo*, 53 M.J. 721 (A.F. Ct. Crim. App. 1998) ................................... 23

*United States v. Frisbie*, 29 M.J. 974 (A.F.C.M.A. 1990) ............................................. 18

*United States v. Wolff*, 5 M.J. 923 (N.M.C.M.R. 1978) .............................................. 18

FEDERAL CIRCUIT COURT CASES

*Harris v. Champion*, 15 F.3d 1538 (10th Cir. 1994) ..... 30,31

*Loughan v. Firestone Tire & Rubber Company*, 749 F.2d 1519 (11th Cir. 1985) .......................... 26

*Simplex, Inc. v. Diversified Energy Systems, Inc.*, 847 F.2d 1290 (7th Cir. 1988) ..................... 26

*United States v. Brown*, 16 F.3d 423 (D.C. Cir. 1994) ............................................... 12

*United States v. Linares*, 367 F.3d 941 (D.C. Cir. 2004) ............................................... 13

*United States v. Moore*, 97 F.3d 561 (D.C. Cir. 1996) ............................................... 23

*United States v. Newman*, 982 F.2d 665 (1st Cir. 1992) ............................................... 26

*United States v. Nickens*, 955 F.2d 112 (1st Cir. 2001) ............................................... 23

*United States v. Short*, 790 F.2d 464 (6th Cir. 1986) ............................................... 22

*United States v. Smith*, 94 F.3d 464 (6th Cir.

　　1996) ............................................... 26

*United States v. Volkswagen of America, Inc.*, 561

　　F.2d 494 (4th Cir. 1977) ........................... 13

### STATEMENT OF STATUTORY JURISDICTION

The Navy-Marine Corps Court of Criminal Appeals had jurisdiction pursuant to Article 66(b)(1), Uniform Code of Military Justice, 10 U.S.C. § 866(b)(1) (2006). The jurisdiction of this Court is invoked under Article 67(a)(3), UCMJ, 10 U.S.C. § 867(a)(3)(2006).

### STATEMENT OF THE CASE

On October 3, 2003, Appellant was convicted, contrary to his pleas, by a special court-martial, composed of members with enlisted representation, of one specification of violating a lawful order, one specification of dereliction of duty, one specification of larceny, and one specification of impersonating a commissioned officer in violation of articles 92, 121, and 134 Uniform Code of Military Justice, 10 U.S.C. §§ 892, 921, and 934 (2006).

Appellant was sentenced to six months confinement, reduction in rate to E-1, forfeiture of $767.00 pay per month for six months, and a bad-conduct discharge. The convening authority approved the sentence as adjudged and, except for the bad-conduct discharge, ordered it executed.[1]

On November 6, 2006, the lower court decided Appellant's case.[2] The court found the evidence to be legally insufficient to support Appellant's conviction for larceny of U.S. currency.[3] The lower court amended the specification to allege attempted

---

[1] Special Court-Martial Order No. 93-04.

[2] *United States v. Sanford*, No. 200500993 (N-M. Ct. Crim. App. 2006).

[3] *Sanford*, 200500993 at *7.

larceny and affirmed Appellant's conviction for attempted
larceny.[4]  The lower court also found the evidence to be
factually insufficient to convict Appellant of impersonating an
officer.[5]  The court excepted certain language from the
specification and convicted Appellant of a simple disorder under
Article 134, UCMJ.[6]  The lower court also found that, pursuant to
*United States v. Tardif*, that the excessive post-trial delay in
this case affected the sentence that should be approved.[7]
Pursuant to *Tardif* and *United States v. Peoples*, the lower court
approved the remaining findings as adjudged and approved only so
much of the sentence as extended to confinement for 150 days,
reduction in rate to E-1, and a bad-conduct discharge.[8]

Appellant petitioned this Court for grant of review on
November 7, 2006.

### STATEMENT OF FACTS

In May 2002, Lance Corporal Lonnie S.D. Broom, a Marine
Corps Reservist, graduated from boot-camp and was scheduled to
attend follow-on training at the School of Infantry.[9]  But before
he could begin his training, Lance Corporal Broom as sent back
home to Texas because of family problems.[10]  He was scheduled to

---

[4] *Sanford*, 200500993 at *7,12.

[5] *Sanford*, 200500993 at *8.

[6] *Id.*

[7] *Sanford*, 200500993 at *12.

[8] *Sanford*, 200500993 at *7,12.

[9] R. at 518.

[10] R. at 518.

complete his training at a later date.[11]  Appellant, the Marine
Corps Reserve Liason for the School of Infantry, drove Lance
Corporal Broom to the airport.[12]

Back in Texas, Lonnie Broom began working on the ranch of
Mr. Derryl Odum.[13]  The first day on the job, a cow kicked Lonnie
in the hand severing several tendons in his hand, requiring
surgery.[14]  Not long after the injury, Lance Corporal Broom was
returned to active duty to complete his training.[15]  He was
immediately returned to Texas because of his damaged hand and his
training was postponed until his hand had been repaired.[16]  Mr.
Odom paid for Lonnie to see a doctor to repair his hand.[17]  But
the several hundred dollars a week Lonnie earned as a ranch hand
was not enough to support his wife and kids and he began calling
Appellant to inquire about returning to active duty.[18]  In his own
words, Lonnie wanted a better life for his family and thought the
Marine Corps could do that for them.[19]

Appellant began working to bring Lonnie back on active duty.
In October 2002, Appellant, in his capacity as reserve

---

[11] *Id.*

[12] R. at 453.

[13] R. at 451.

[14] R. at 451

[15] R. at 519.

[16] *Id.*

[17] R. at 586-87.

[18] R. at 512.

[19] R. at 517.

coordinator, helped Lance Corporal Broom transfer from his reserve unit in Texas to the 4th Light Armored Reconnaissance (4th LAR) unit in California.[20]  Unfortunately, the unit had no ADSW money available to bring Lance Corporal Broom back on active duty but the unit would allow him to drill in his reserve capacity until a billet was available at the School of Infantry.[21]

In the meantime, a tree fell through the roof of the home of Ms. Gloria Sanford, Appellant's mother.[22]  Knowing Lonnie needed money for his family, Appellant had his mother call Lonnie to work on her roof.  She paid Lonnie $200 for two days of work.[23] It was then that Appellant committed several gross errors in judgment.

In an effort to further help Lance Corporal Broom, Appellant generated fake orders for Lance Corporal Broom to report to Camp Pendleton for training, so that he could "burn drills" or drill for an entire year consecutively, thus remaining on active duty until his legitimate report date for training.[24]  But because the orders were fake, Lance Corporal Broom would have to cover the cost of his travel to California.  But he had no money for the trip.[25]

---

[20] R. at 768-69.

[21] R. at 768.

[22] R. at 847.

[23] R. at 874.

[24] R. at 487, 500.

[25] R. at 461.

4

On October 1, 2002, Lonnie showed up for work on the ranch and showed Mr. Odom his "classified orders."[26] He brought several items with him, hoping to pawn them to Mr. Odom in exchange for money to get to California.[27] Mr. Odom reminded Lonnie that he was running a ranch, not a pawn-shop, and that he had no interest in Lonnie's things.[28] Desperate, Lonnie sought Appellant's intervention.

Appellant's bad judgment continued. Appellant called Mr. Odom and asked him to pay for Lonnie's ticket to California to prevent him from being "AWOL."[29] Mr. Odom bought a one-way airline ticket to California for Lonnie off of the internet and Lonnie went to California.[30]

Because Lance Corporal Broom was burning drills and was not in fact on active duty, he was not entitled to live in the barracks or to a housing allowance. Appellant allowed Lance Corporal Broom to stay with him in his trailer for a few weeks until his training began.[31]

While living in the trailer, Lance Corporal Broom started dating a local woman named Heather Wright.[32] Their relationship escalated quickly and, by December 1, 2002, after living in the

---

[26] R. at 565, 590.

[27] R. at 567.

[28] *Id.*

[29] R. at 567.

[30] R. at 576.

[31] R. at 482, 520.

[32] R. at 520.

trailer with Appellant for approximately a month, Lance Corporal Broom moved into an apartment with Ms. Wright.[33]

While Lance Corporal Broom was staying in Appellant's trailer, Appellant flew his mother to California from Texas so that he could take her to the Marine Corps Ball.[34]  Lance Corporal Broom was at the ball with Ms. Wright.[35]  Later that month, around Thanksgiving, Appellant learned that Lance Corporal Broom had not been sending home money to his wife and children in Texas.  He instructed his mother to meet Lance Corporal Broom's wife at a local gas station and she gave Lance Corporal Broom's wife some money for diapers and food.[36]  It was winter and Lance Corporal Broom's children were sick and not dressed.[37]  When Appellant came home for Christmas a month later, his mother again met Lance Corporal Broom's wife at the gas station and gave her more money. "If someone didn't bring them something, they wouldn't have Christmas."[38]

By this time, Lance Corporal Broom's family had had enough. His father called Lance Corporal Broom's reserve unit in California requesting to speak to his son and demanding that he send money home to his children in Texas.[39]  It was then that

---

[33] R. at 549.

[34] R. at

[35] R. at 876.

[36] R. at 879.

[37] *Id.*

[38] R. at 880.

[39] R. at 507, 773.

Appellant's command began to question Lance Corporal Broom's status and inquire as to how he had gotten to California.

In February 2003, Captain Michael M. Motley was conducting a command investigation into how Lance Corporal Lonnie S.D. Broom, a Marine Corps Reservist, had been recalled to active duty.[40]  His investigation soon focused on Appellant.  On the morning of February 10, 2003, Captain Motley approached Appellant and told him "to get his butt into [his] office" in an "aggressive manner."[41]  He had Appellant formally report to him and, while Appellant stood at attention in front of his desk, Captain Montgomery read Appellant his Article 31b rights.[42]  Captain Montgomery informed Appellant that, if he cooperated with the investigation, "that the situation simply would not have been as bad."[43]

From that point on, Captain Motley's story diverged from that of Appellant.  Captain Motley recalled interviewing Appellant "three or four" times over three or four days in February 2003 but had difficulty recalling specific details about the interviews.[44]  On each occasion, as Appellant answered his questions, he provided Appellant with pen and paper and told him to "write it down."[45]  Appellant dutifully complied and made

---

[40] R. at 79.

[41] R. at 85, 125.

[42] R. at 80.

[43] R. at 125-26.

[44] R. at 83, 105.

[45] R. at 85.

several incriminating statements.[46]  Captain Motley testified
that, during his final interview, Appellant asked for an
attorney.[47]  Captain Motley testified that he continued to
question Appellant after that point because he "wanted to get to
the bottom" of the investigation and that the answers "wouldn't
have been admissible in a court-martial."[48] "I remember precisely
that he wanted to speak to an attorney."[49]

Sergeant Sanford testified that he asked for an attorney
during the first interview, not the last.[50]  He testified that
when he requested counsel, Captain Motley slammed his hand on his
desk and asked Appellant if he wanted to talk to a lawyer.[51]
Appellant replied that he did.[52]  Captain Motley informed
Appellant that he could not speak with an attorney because
Appellant had not yet been charged with anything.[53]  During his
second interview, Captain Motley told Appellant that, if he
remained silent, he would go to the brig.[54]

---

[46]  Prosecution Exhibits 8, 9.

[47]  R. at 105.

[48]  R. at 106-07.

[49]  R. at 110.

[50]  R. at 145.

[51]  R. at 145.

[52]  R. at 145.

[53]  R. at 145.

[54]  R. at 151, 176.

During the third interview, Captain Motley asked Appellant if he was a homosexual.[55] Appellant told Captain Motley that he was married and that Lance Corporal Broom had both a wife and a girlfriend.[56]

At the same time Captain Motley was interviewing Appellant, he was also interviewing other Marines at the School of Infantry, including Lance Corporal Broom.[57] Like Appellant, Captain Motley ordered Lance Corporal Broom to report to his office and he read Lance Corporal Broom his rights as he stood at attention in front of his desk.[58] During his second interview, Lance Corporal Broom asked to speak with an attorney.[59] And, as had happened with Appellant, Captain Motley continued to question him anyway.[60]

After several interviews in which he denied any wrongdoing, Lance Corporal Broom concocted a hellish tale of homosexual grooming wherein he desperately fought off Appellant's repeated sexual advances brought on by Appellant's uncontrollable homosexual lust for him.

According to Lance Corporal Broom, during the month he lived with Appellant, Appellant made thirty to forty sexual advances towards him.[61] Appellant informed him that Appellant "could suck

---

[55] R. 169.

[56] R. at 169.

[57] R. at 246.

[58] R. at 250.

[59] R. at 252.

[60] R. at 253, 261.

[61] R. at 485.

my cock better than any woman if I'd let him try to show me."[62]
Appellant propositioned him for anal sodomy.[63]  Appellant would
grab Lance Corporal Broom's inner thigh every time they were
driving together.[64]  On one occasion, the two got drunk and, when
Lance Corporal Broom woke up, Appellant was in his bed.[65]  And the
next time he got drunk with Appellant, he again woke up with
Appellant in his bed.[66]  On another occasion, as the two showered
at the public beach, Appellant began masturbating while standing
next to Lance Corporal Broom.[67]  Appellant would pressure him to
have sex with Appellant because he had done Lance Corporal Broom
so many favors.[68]

On another occasion, Appellant took Lance Corporal Broom to
a house in San Diego so that Lance Corporal Broom could conduct a
"modeling audition."[69]  Once there, Lance Corporal Broom took off
his clothes and masturbated while another man filmed him.[70]  When
asked why he endured this daily torment he replied, "I had
nowhere else to go, sir."[71]

---

[62] R. at 485.

[63] R. at 485.

[64] R. at 491.

[65] R. at 493.

[66] R. at 494.

[67] R. at 495.

[68] R. at 500.

[69] R. at 501.

[70] R. at 501.

[71] R. at 487.

10

Lance Corporal Broom signed a pretrial agreement wherein he agreed to repeat his fantastic tale for the members at Appellant's court-martial.  In exchange, he was taken to non-judicial punishment for adultery and administratively separated from the Marine Corps.[72]

Additional facts necessary to resolve the issues are set forth, *infra*.

## REASONS TO GRANT REVIEW

### I

THE LOWER COURT ERRED WHEN IT HELD THAT ALTHOUGH THE MILITARY JUDGE ERRED WHEN, IN APPELLANT'S TRIAL BEFORE MEMBERS FOR FRATERNIZATION, WHICH CONSISTED LARGELY OF APPELLANT'S ALLEGED UNSOLICITED HOMOSEXUAL ADVANCES TOWARDS A JUNIOR MARINE, PURSUANT TO M.R.E. 404(b), HE ALLOWED THE GOVERNMENT TO INTRODUCE EVIDENCE THAT APPELLANT HAD PREVIOUSLY FRATERNIZED WITH ANOTHER MALE MARINE, INCLUDING SHARING A HOTEL ROOM IN LAS VEGAS AND BEING DISCOVERED TOGETHER ALONE IN THEIR WORK SPACES AT 430 IN THE MORNING, BUT THAT THE ERROR WAS HARMLESS?

Before trial, the government gave notice to the defense that it intended to introduce evidence that Appellant had previously fraternized with Lance Corporal Hiebert, specifically that the two were involved in a consensual homosexual relationship.[73]  The defense objected to the introduction of any evidence of an inappropriate relationship with Lance Corporal Hiebert.[74]  The military judge ruled that evidence of Appellant's previous

---

[72] R. at 446.

[73] Appellate Exhibit XLVIII; R. at 318.

[74] R. at 818-19.

11

fraternization with Lance Corporal Hiebert was admissible under M.R.E. 404(b) to "show intent, lack of mistake or accident, notice or knowledge to the accused that his conduct was inappropriate."[75]  The military judge barred any reference to homosexual conduct between Lance Corporal Hiebert, as well as any reputation as to the homosexuality of Appellant within the battalion.[76]  "There are very few things that would be more prejudicial than to have homosexual conduct and a reputation for being a homosexual being put before a Marine Corps panel."[77]

Neither notice nor intent are required elements of violating a lawful general regulation such as that prohibiting fraternization.  And Appellant never argued that he fraternized with Lance Corporal Broom by mistake.  Thus the military judge's ruling that evidence of Appellant's previous inappropriate relationship was admissible to demonstrate, "intent, lack of mistake or accident, [or] notice or knowledge" was an abuse of discretion.[78]

In criminal cases, intent is the most common purpose for admitting other-crimes evidence.[79]  Such evidence is employed to undermine a defendant's innocent explanation for his crime.[80]

---

[75] R. at 338, Appendix to Findings of Military Judge.

[76] *Id.*

[77] *Id.*

[78] R. at 338, Appendix to Findings of Military Judge.

[79] JACK B. WEINSTEIN, WEINSTEIN'S EVIDENCE, § 404.22 at 404-77 (2d ed. 2005)

[80] *See, e.g., United States v. Brown*, 16 F. 3d 423, 430-31 (D.C. Cir. 1994).

"Knowledge and intent are commonly lumped together in criminal cases by the courts, because in many instances, both are disputed and must be proved by the prosecution."[81]  But other crimes evidence is only admissible *if* the trial court finds that intent is a material issue in the case.[82]  The D.C. Circuit has barred other crimes evidence showing intent to possess a handgun where the government had no obligation to prove intent to possess a handgun.[83]  Because the government did not have to prove knowledge nor intent to convict Appellant of disobeying a lawful general regulation, the military judge abused his discretion when he allowed the members to hear other crimes evidence for the purpose of establishing intent.

The lower court agreed that the military judge had erred when he admitted evidence of Appellant's previous inappropriate relationship with Lance Corporal Heibert, but that the error was harmless.[84]  The error was not harmless.

This case boils down to a credibility contest between Lonnie Broom and Appellant.  The government's case, which the lower court found to be "strong", rested entirely on the fantastic tales of Lonnie Broom.  No other witness corroborated his stories.  But, because of the military judge's erroneous ruling, Staff Sergeant Arriaga was able to testify that he had counseled

---

[81] JACK B. WEINSTEIN, WEINSTEIN'S EVIDENCE, § 404.22 at 404-80 (2d ed. 2005)

[82] JACK B. WEINSTEIN, WEINSTEIN'S EVIDENCE, § 404.22 at 404-86 (2d ed. 2005)

[83] *United States v. Linares*, 367 F.3d 941, 947-48 (D.C. Cir. 2004).

[84]

13

Appellant about fraternizing with Lance Corporal Heibert,[85] that Lance Corporal Heibert had called Appellant by his first name,[86] that he had seen them in civilian clothes going out to eat together,[87] and on one occasion he had discovered them alone together in the television room at work at 430 in the morning.[88]

Staff Sergeant Arriaga was not permitted to testify that they were in a state of undress when he discovered them but he did not have to. Lonnie Broom had already told the members that Appellant was a homosexual who preyed on junior Marines. And, pursuant to the military judge's ruling,[89] he was also allowed to tell the members that, after dining with Lance Corporal Hiebert and Appellant in Las Vegas one evening, they had invited him to stay in their hotel room for the night.[90] This evidence can hardly be considered to be "of marginal importance."[91]

The character evidence in this case was not inadmissible because it was not relevant, "on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudice one with a bad general record and deny him a fair

---

[85] R. at 792.

[86] R. at 789.

[87] R. at 787.

[88] R. at 788.

[89] R. at 490.

[90] R. at 497.

[91] *Sanford*, 200500993 at *11.

14

opportunity to defend against a particular charge."[92]   Appellant

was prejudiced by the erroneous rulings of the military judge.

WHEREFORE, this Honorable Court should grant Appellant's

petition because the lower court has sanctioned such a departure

from the normal course of judicial proceedings so as to call for

an exercise of this Court's supervisory powers.

II

APPELLANT WAS DENIED DUE PROCESS OF LAW WHEN
HE WAS TRIED FOR A NON-PETTY OFFENSE, BY A
COURT-MARTIAL COMPOSED OF ONLY FOUR MEMBERS.

Appellant was tried by a special court-martial composed of

four members.[93]

In *Williams v. Florida*, the Supreme Court held that six-

person juries were of sufficient size to promote adequate group

deliberation, to insulate members from outside intimidation, and

to provide a representative cross-section of the community.[94]   In

*Ballew v. Georgia*, the Court, in a plurality opinion, held that

the use of a five-person jury for non-petty offenses involved,

"grave questions of fairness" and violated Due Process.[95]   The

Court had previously defined non-petty crimes as those for which

more than six months of confinement is authorized.[96]

---

[92] *Michelson v. United States*, 335 U.S. 469, 475-76 (1948).

[93] R. at 425.

[94] 399 U.S. 78 (1970).

[95] 435 U.S. 223, 246 (1978)(Powell, J., concurring).

[96] *Baldwin v. New York*, 399 U.S. 66, 70-71 (1970).

15

In *Williams*, the Court noted that the "purpose of the jury trial...is to prevent oppression by the Government."[97] In *Ballew*, the Court held that a jury of less than six members could not fulfill this purpose. The Court, citing empirical data, noted, "progressively smaller juries are less likely to foster effective group deliberation."[98] And that, the smaller the group, "the less likely it is to overcome the biases of its members to obtain an accurate result."[99] Further, the Court expressed doubts about the, "accuracy of the results achieved by smaller and smaller panels."[100] "As the size diminished to five and below, the weighted sum of errors increased because of the enlarging risk of the conviction of innocent defendants."[101] Additionally, "the data suggest that the verdicts of jury deliberation in criminal cases will vary as juries become smaller, and that the variance amounts to an imbalance to the detriment of one side, the defense."[102] The Court concluded by saying, "any further reduction that promotes inaccurate and possibly biased decision making, that causes untoward difference in verdicts, and that prevents juries from truly representing their communities, attains constitutional significance."[103]

---

[97] *Williams*, 399 U.S. at 100.

[98] *Ballew*, 435 U.S. at 233.

[99] *Id.*

[100] *Ballew*, 435 U.S. at 234.

[101] *Id.*

[102] *Id.*

[103] *Ballew*, 435 U.S. at 239.

On October 5, 1999, President Clinton signed the Defense Authorization Act for 2000.[104]  The law increased the jurisdictional maximum sentence that can be imposed by special courts-martial, which can be composed of as few as three members. In 2002, the President amended Rule for Courts-Martial 201(f)(2)(B), permitting special courts-martial to award up to one year of confinement thus, for the first time in the nation's military history, allowing a special court-martial to try non-petty offenses.

In *Burch v. Louisiana,* the Supreme Court again held, "reducing a jury to five persons in non-petty cases raised sufficiently substantial doubts as to the fairness of the proceedings and proper functioning of the jury to warrant drawing the line at six."[105]  While the Uniform Code of Military Justice provides no right to trial by jury, a service member, "has the right to a panel that is fair and impartial."[106]

Chief Judge Sullivan, accurately summed up the right to Due Process of law in the military when he stated, "It is the responsibility of military courts, and this Court, to assure that due process and fundamental fairness govern our system of justice."[107]  A panel consisting of only four members violates due

---

[104] Statement on Signing the National Defense Authorization Act for Fiscal Year 2000, 34 WKLY. COMP. PRES. DOC. 1927 (Oct. 6, 1999).

[105] 441 U.S. 130, 137 (1979).

[106] *United States v. Dowty,* 60 M.J. 163, 176 (C.A.A.F. 2004)(Effron, J., dissenting)(quoting *United States v. Roland,* 50 M.J. 66, 68 (C.A.A.F. 1999).

[107] *United States v. Rankins,* 34 M.J. 326, 339 (C.M.A. 1992)(Sullivan, J., dissenting).

process.   The Supreme Court's opinion that panels smaller than
six are, "less likely...to overcome the biases of its members to
obtain an accurate result" is borne out in this case.[108]   The
evidence is factually and legally insufficient to support three
of the four crimes with which Appellant was charged.   A larger
panel, and one that comports with due process, may not have
convicted Appellant of crimes that he did not commit.

   This Court has never directly addressed the Supreme Court's
holdings in *Williams* and *Ballew*, leaving this important issue for
the service courts of appeals to decide.   In the wake of *Ballew*,
the Navy Court of Military Review rejected similar challenges to
five-member panels of general courts-martial saying that there,
"is no showing that a five-member court-martial does not render
the same quality of justice as does a larger court."[109]   The Court
went on to state that service members are only entitled to the
due process of law that Congress grants them.[110]

   More recently, in *Weiss v. United States*, the Supreme Court
rejected the lower court's holding in *Wolff* that service members
are only afforded due process to the extent that Congress makes
it available.[111]   "Congress, of course, is subject to the
requirements of the Due Process Clause when legislating in the
area of military affairs, and that Clause provides some measure

---

[108] *Id.*

[109] *United States v. Wolff*, 5 M.J. 923, 925 (N.M.C.M.R. 1978).

[110] *Id.*

[111] *Weiss v. Untied States*, 510 U.S. 163, 179 (1994).

of protection to defendants in military proceedings."[112]  The
Court expressed its willingness to intervene if procedural
protections claimed as a right "are so extraordinarily weighty as
to overcome the balance struck by Congress."[113]  The Court
suggested that one such right is elementary right to "a fair
tribunal [that is] a basic requirement of due process."[114]

As outlined above, panels less than six members are
fundamentally unfair.  There is no basis in law or fact for the
lower court's holding in *Wolff* that, the same five-member panel
which is unconstitutional in the state of Virginia, becomes
constitutional, by the magic of Article 25, UCMJ, simply because
those same individuals have doffed their civilian clothes.  In
fact, the empirical data adopted by the Supreme Court in *Ballew*,
suggests just the opposite.

The lower court's decision begs the question: how small is
too small for a members panel?  Could Congress permit trial by
two members or even one?  The Supreme Court, although recognizing
that its decision was somewhat arbitrary, determined that due
process requires a panel of six members on a jury.[115]  There is no
rational basis for not extending the Court's analysis to courts-
martial.

Chief Justice Warren noted, "our citizens in uniform may not
be stripped of basic rights simply because they have doffed their

---

[112] *Weiss*, 510 U.S. at 177.

[113] *Middendorf v. Henry*, 425 U.S. 25, 44 (1976).

[114] *Weiss*, 510 U.S. at 178.

[115] *Ballew*, 435 U.S. at 239.

civilian clothes."[116]  Appellant was denied one of the most
fundamental rights guaranteed by the Constitution: the right to a
fair trial.

The lower court, in its thirteen-page opinion, did not
address this issue, presumably because of the court's previous
decision in *Wolff*.  But the time for review of *Wolff*, is long
past due.  And the important issue of the minimum due process
rights afforded servicemembers by members panels should no longer
be left to the service courts of appeals.

WHEREFORE, this Honorable Court should grant Appellant's
petition because the lower court has decided a question of law in
a way in conflict with decisions of the Supreme Court of the
United States in *Williams, Ballew*, and *Weiss*.  Additionally, by
its silence, the lower court has sanctioned such a trial that
offends due process and departs from the normal course of
judicial proceedings so as to call for an exercise of this
Court's supervisory powers.

III

> THE MILITARY JUDGE ERRED WHERE, AFTER
> CONCLUDING THAT HE DID NOT HAVE ENOUGH
> EVIDENCE TO RESOLVE THE ISSUE OF
> ADMISSIBILITY OF APPELLANT'S PRE-TRIAL
> STATEMENTS, HE SUA SPONTE, CALLED FOUR
> ADDITIONAL WITNESSES TO ESTABLISH THE
> ADMISSIBILITY OF THE STATEMENTS FOR THE
> GOVERNMENT.

After both Captain Motley and Appellant had testified
regarding Appellant's statements, the government moved to have

---

[116] Earl Warren, *The Bill of Rights and the Military*, 37 N.Y.U.L. Rev.
181, 188 (1962).

the statements admitted into evidence.[117]  Trial defense counsel

accurately stated, "The government has not met its burden."[118]

The military judge apparently agreed.  In email to both counsel

after the Article 39(a) session, the military judge stated:

> At present, I do not feel that I have enough
> evidence to decide the suppression motion.  I
> am ordering the government to produce PFC
> Broom and LCPL Virto for the motions hearing
> tomorrow.[119]

At an Article 39(a) session the next day, the military judge
elaborated:

> I did not feel at the conclusion of the
> motions hearing on the 16th that I had enough
> evidence to decide the issue.  I, therefore,
> sent a series of emails back and forth
> indicating my desire to hear on the stand or
> have produced in court a couple of the people
> that had their rights waived or that
> certainly had their rights read to them
> allegedly by Captain Motley...I feel that
> that may give me some more evidence that I
> need to decide on the suppression motion.[120]

Trial defense counsel objected to the military judge calling

further witnesses saying, "the government had the burden by a

preponderance of the evidence to show...the statements that we

were dealing with" are admissible and that "the preponderance

standard has not been met, and the statements need to be

---

[117] R. at 222-23.

[118] R. at 223.

[119] Appellate Exhibit XL.

[120] R. at 226.

suppressed."[121]  After hearing from the additional witnesses, the military judge denied the defense motion to suppress.[122]

Under Military Rule of Evidence 304(e), the prosecution has the burden of establishing the admissibility of statements of an accused.[123]  If the government fails to meet this burden, the appropriate remedy is suppression of the confession.[124]  A military judge should "scrupulously avoid even the slightest appearance of partiality."[125]  "Public confidence in the integrity and impartiality of a judge is sustained in large part by the conduct of a judge during the proceeding...In the military, a judge may not abandon his role as an impartial party and assist in the conviction of a specific accused."[126]  "A military judge must not become an advocate for a party but must vigilantly remain impartial during the trial."[127]  "[W]hen the questioning is designed to elicit answers favorable to the prosecution, it is far better for the trial judge to err on the side of abstention from intervention in the case."[128]  The legal test is whether, from the viewpoint of a reasonable person, and taken as a whole

---

[121] R. at 228.

[122] R. at 288-90.

[123] Military Rule of Evidence 304(e), Manual for Courts-Martial (2005 ed.).

[124] *United States v. Short*, 790 F.2d 464, 468 (6th Cir. 1986).

[125] *United States v. Shackelford*, 2 M.J. 17, 19 (C.M.A. 1976).

[126] *United States v. Reynolds*, 24 M.J. 261, 264 (C.M.A. 1987).

[127] *United States v. Ramos*, 42 M.J. 392, 395 (C.A.A.F. 1995).

[128] *United States v. Dock*, 40 M.J. 112, 128 (C.M.A. 1994).

in the context of this trial, the court-martial's legality, fairness, and impartiality were put into doubt by the military judge's questions.[129]

In this case, when the government failed to meet its burden, the military judge should have suppressed Appellant's statements. Appellant concedes that a military judge is not "a mere referee" and that he may participate actively in the proceedings.[130]  But the military judge in this case did more than participate in the proceedings.  He failed to "maintain his fulcrum position of impartiality" and gathered evidence on behalf of the government to support the government's burden.[131]  Not surprisingly, he approved of the evidence he had gathered and ruled Appellant's confessions admissible.

In addressing this assignment of error, the lower court held that the military judge did not abandon his impartial role "because the answers to his questions could just as easily have gone in the appellant's favor."[132]  But the questions should not have been asked in the first place once the government, as the proponent of the evidence had announced that it did not intend to put on further evidence and, as a result, had failed to meet its burden.  A reasonable person, seeing the military judge salvage the government's failed effort to introduce Appellant's

---

[129] *United States v. Acosta*, 49 M.J. 14, 18 (C.A.A.F. 1998).

[130] *United States v. Graves*, 1 M.J. 50, 53 (C.M.A. 1975).

[131] *United States v. Ramos*, 42 M.J. 392, 395 (C.A.A.F. 1995).

[132] *Sanford*, No. 200500993 at *3-4.

confessions into evidence, would have doubts as to the military judge's impartiality.

WHEREFORE, this Honorable Court should grant Appellant's petition because the lower court has sanctioned such a departure from the normal course of judicial proceedings so as to call for an exercise of this Court's supervisory powers.

IV

> THE MILITARY JUDGE ERRED WHEN HE USED THE TESTIMONY OF OTHER WITNESSES, WHICH ARGUABLY INDICATED THAT CAPTAIN MOTLEY HAD COMPLIED WITH ARTICLE 31, UCMJ, DURING QUESTIONING OF THOSE WITNESSES, AS EVIDENCE THAT CAPTAIN MOTLEY HAD COMPLIED WITH ARTICLE 31, UCMJ, DURING CAPTAIN MOTLEY'S INTERROGATION OF APPELLANT.

The military judge called three additional witnesses "that had their rights waived or that certainly had their rights read to them allegedly by Captain Motley" in order to determine if Captain Motley had complied with Article 31, UCMJ, during his interrogation of Appellant.[133]

Corporal David A. Soholt testified that Captain Motley ordered him into his office where he handed Corporal Soholt a pen and paper.[134]  He told him to, "you know, answer the questions, and then he told me to write the answers."[135]  He could not recall if Captain Motley read him his rights from a card as Captain

---

[133] R. at 226.

[134] R. at 237.

[135] R. at 237.

24

Motley had testified but did state that, "the subject of rights came up."[136]

Chief Warrant Officer Randall, who was never a target of the investigation, also testified about being questioned by Captain Motley.[137] Chief Warrant Officer Randall testified that when he was called into Captain Motley's office, Captain Motley read him his Article 31 rights off of a sheet of paper.[138]

Having heard testimony from Chief Warrant Officer Randall that Captain Motley had read Chief Warrant Officer Randall his Article 31 rights, and having heard the testimony from Corporal Soholt that the "subject of rights came up" during his interrogation, the military judge determined that Captain Motley had also complied with Article 31 during his interrogation of Appellant and ruled Appellant's previous statements admissible.[139]

But the fact that Captain Motley complied, or failed to comply, with the requirements of Article 31 during the interrogations of other suspects is entirely irrelevant to the inquiry of whether he complied with Article 31 during his interrogation of Appellant. These witnesses would only arguably be relevant if they were used to establish habit evidence indicating that every time Captain Motley interrogated suspects, he complied with Article 31, and that therefore, Captain Motley

---

[136] R. at 238, 240, 242.

[137] R. at 230.

[138] R. at 232.

[139] R. at 288-90.

must have complied with Article 31 during Appellant's interrogation.

Generally, habit evidence is highly persuasive as proof of conduct on a particular occasion, and its admission depends on the degree of regularity of the practice and its coincidence with the occasion.[140]  Habit evidence "is never to be lightly established" and must be "carefully scrutinized before admission."[141]  It is only when examples offered to habit are "numerous enough to base an inference of systematic conduct," that examples are admissible.[142] "Before a court may admit evidence of habit, the offering party must establish the degree of specificity and frequency of uniform response that ensures more than a mere 'tendency' to act in a given manner, but rather, conduct that is 'semi-automatic' in nature.[143]  Although there is no precise formula, "for determining whether a behavior pattern has matured into a habit, two factors are considered controlling as a rule: adequacy of sampling and uniformity of response."[144]

In this case, the "moving party" of the habit evidence was the military judge, thus reinforcing Appellant's first assignment of error.  The military judge abused his discretion in

---

[140] *Loughan v. Firestone Tire & Rubber Company*, 749 F. 2d 1519, 1524 (11th Cir. 1985)(internal citations omitted).

[141] *Id.*

[142] *Wilson v. Volkswagen of America, Inc.*, 561 F.2d 494, 511 (4th Cir. 1977).

[143] *Simplex, Inc. v. Diversified Energy Systems, Inc.*, 847 F.2d 1290, 1293 (7th Cir. 1988).

[144] *United States v. Newman*, 982 F.2d 665, 668 (1st Cir. 1992).

considering the evidence he offered to establish Captain Motley's habit for reading suspects their Article 31 rights.

First, the sampling of three individuals was insufficient to establish Captain Motley's habits during interrogations. The regularity of such conduct rests, "on an analysis of instances numerous enough to [support] an inference of systematic conduct to establish one's regular response to a repeated specific situation."[145]

Second, the witnesses told different stories as to how Captain Motley questioned them thus failing to demonstrate "uniformity of response." Chief Warrant Officer Randall testified that Captain Motley read him his Article 31 rights verbatim. Corporal Soholt testified only that the "subject of rights came up" but that he could not recall if Captain Motley actually read him his Article 31 rights verbatim.[146] Lance Corporal Broom testified that Captain Motley asked him to stand at attention as Captain Motley read him his Article 31 rights.[147] During Captain Motley's second interview of Lance Corporal Broom, Lance Corporal Broom asked for an attorney.[148] As had happened with Appellant, Captain Motley continued to question Lance Corporal Broom.[149] The testimony of these witnesses was not even

---

[145] *Id.*

[146] R. at 238, 240, 242.

[147] R. at 250.

[148] R. at 252-53.

[149] R. at 253.

27

consistent much less uniform so as to be useful for evidence of habit.

Because Captain Motley's conduct during other interrogations was wholly irrelevant to what took place during his interrogation of Appellant, the military judge abused his discretion by calling witnesses for that purpose. Even if the military judge did not abuse his discretion by calling witnesses to establish Captain Motley's habit of complying Article 31 during interrogations, the three witnesses called did not establish Captain Motley's habit of conforming to Article 31, and the military judge abused his discretion when he used the testimony of those witnesses to establish Captain Motley's habit.

Both the government below, and the lower court, correctly noted that the military judge is not bound by the Military Rules of Evidence when resolving preliminary questions concerning the admissibility of evidence.[150]  But the military judge must consider evidence that is relevant or that has at least some probative value for resolving preliminary questions concerning the admissibility of evidence. The testimony of the three witnesses called by the military judge to support the government's motion was neither. The fact that Captain Motley read three other individuals their Article 31 rights has no bearing on whether or not he complied with Article 31 during his questioning of Appellant. The military judge erred when he

---

[150] *Sanford*, No. 20050093 at *4.

28

relied on their testimony to determine the admissibility of Appellant's confession.

WHEREFORE, this Honorable Court should grant Appellant's petition because the lower court has decided a question of law in a way in conflict with applicable decisions of this Court.

V

APPELLANT WAS DENIED DUE PROCESS OF LAW WHERE MORE THAN THREE YEARS ELAPSED BETWEEN HIS TRIAL AND THE DECISION OF THE LOWER COURT.

Appellant has a Due Process right to a timely review of his case.[151] This right must be "recognized, enforced and protected by the Government, by the appellate attorneys, by the Court of Criminal Appeals, and by this Court."[152]

This Court has set out a four-part framework to analyze claims of excessive post-trial delay:

(1) the length of the delay,

(2) the reasons for the delay,

(3) Appellant's assertion of his right to a timely review, and,

(4) whether the delay prejudiced the Appellant.[153]

Once this due process analysis is triggered by a facially unreasonable delay, the four factors are balanced, "with no

---

[151] *Toohey v. United States*, 60 M.J. 100, 102 (C.A.A.F. 2004); *Diaz v. Judge Advocate General of the Navy*, 59 M.J. 34, 38 (C.A.A.F. 2003).

[152] *Diaz*, 59 M.J. at 39.

[153] *Toohey*, 60 M.J. at 102.

single factor being required to find that post-trial delay
constitutes a due process violation."[154]

The lower court found Appellant had satisfied the first two
*Toohey* factors, but had not met the last two.[155] As such,
Appellant will address only whether he asserted his right to
timely appellate review and whether the delay prejudiced him.

### Assertion of the Right

The lower court's opinion implied that Appellant's having
asserted his right to timely review in his brief did not satisfy
the third *Toohey* factor.[156] "We find no assertion of the right to
timely appeal prior to the filing of appellant's brief before
this court."[157] That statement of fact constituted the Court's
legal analysis with respect to the third *Toohey* factor.

In fact, Appellant asserted his right to timely appellate
review in motion for sixth enlargement of time, filed nearly a
month before Appellant's brief was filed with the lower court.[158]
In that motion, Appellant complained that he had been unable to
previously assert his right to timely appellate review because he
"was hampered by the fact that [he] had to speak through [his]
counsel...in the appellate process and...it was that very counsel
who was responsible for the delay."[159]

---

[154] *United States v. Moreno*, 63 M.J. 129, *16 (C.A.A.F. 2006).

[155] *Sanford*, No. 200500993 at *12.

[156] *Id.*

[157] *Sanford*, No. 200500993 at *12.

[158] Motion for Sixth Enlargement of Time dated May 26, 2006.

[159] *Harris v. Champion II*, 15 F.3d 1538, 1563 (10th Cir. 1994).

The Tenth Circuit has not required petitioners to file a specific request for speedy appellate review with the appellate court in order for this factor to weigh in favor of the appellant.[160]  And this Court has held that it is reasonable to assume that a convicted person desires prompt resolution of his appeal.[161]  Here, the responsibility for a timely review rests with the United States; Appellant should not have had to ask for it.[162]  Even if he is required to ask for it, he did so in his brief filed with the lower court.

## Prejudice

With regard to prejudice, this Court has identified three typical forms of prejudice arising from appellate delay:

(1)  impairment of the grounds for appeal;

(2)  anxiety supported by a colorable state or federal claim that would warrant reversal of the conviction or reduction of sentence; and

(3)  oppressive incarceration.[163]

The lower court found that Appellant had raised three meritorious issues and reduced his sentence from 180 days to 150 days confinement.  Had the convening authority taken action sooner than 555 days after Appellant's trial, Appellant may have actually been able to benefit from this relief, rather than

---

[160] *Harris v. Champion*, 15 F.3d 1538, 1563 (10th Cir. 1994).

[161] *Moreno*, 63 M.J. at *25.

[162] *Cf. United States v. Bodkins*, 60 M.J. 322, 323-24 (C.A.A.F. 2004) (per curiam) ("The responsibility of the convening authority to complete post-trial processing in a timely fashion is not dependent upon a request to do so from the accused.").

[163] *Toohey*, 60 M.J. at 104, n.21.

facing the prospect of hiring an attorney to litigate Appellant's entitlement to thirty days pay as a sergeant.  Appellant was oppressively incarcerated.

Each of the four *Toohey* factors weighs in Appellant's favor. Appellant has been denied timely review of his court-martial conviction.

WHEREFORE, this Honorable Court should grant Appellant's petition because the lower court has decided a question of law in a way in conflict with applicable decisions of this Court.

VI

> THE EVIDENCE IS LEGALLY INSUFFICIENT TO PROVE APPELLANT ATTEMPTED LARCENY OF U.S. CURRENCY WHERE APPELLANT AIDED LB WITH THE LARCENY OF A PLANE TICKET, A SERVICE.

Appellant was charged with larceny of U.S. currency from Mr. Odom.[164]  The government's theory was that, by encouraging Mr. Odom to purchase Lance Corporal Broom's plane ticket to California, Appellant had stolen money from Mr. Odom.

The test for legal sufficiency is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable fact-finder could have found all the essential elements beyond a reasonable doubt."[165]  "In resolving legal-sufficiency questions, [we are] bound to draw every reasonable inference from the evidence of record in favor of the

---

[164] Charge II.

[165] *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987) (*citing Jackson v. Virginia*, 443 U.S. 307, 319, 61 L.Ed. 2d 560, 99 S.Ct. 2781 (1979)).

prosecution."[166]  The test for factual sufficiency is whether, after weighing the evidence and making allowances for not having personally observed the witnesses, we ourselves are convinced of the appellant's guilt beyond a reasonable doubt.[167]

Appellant was convicted of larceny in violation of Article 121, UCMJ.[168]  The elements of larceny are:

(a)     That the accused wrongfully took, obtained, or withheld certain property from the possession of the owner or of any other person;

(b)     That the property belonged to a certain person;

(c)     That the property was of a certain value, or of some value; and

(d)     That the taking, obtaining, or withholding by the accused was with the intent to permanently deprive or defraud another person of the use and benefit of the property or permanently to appropriate the property for the use of the accused or for any person other than the owner.

In Part IV of the Manual for Court's Martial, the President has further provided, "Theft of services may not be charged under this paragraph, but *see* paragraph 78."[169]

Appellant called Mr. Odom in Texas and asked him to purchase a plane ticket for Lonnie to fly to California.[170]  Mr. Odom

---

[166] *United States v. Blocker*, 32 M.J. 281, 284 (C.M.A. 1991).

[167] *Turner*, 25 M.J. at 325.

[168] 10 U.S.C. 921 (2006).

[169] Part IV, ¶46c(1)(h)(iv), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2005 ed.)

[170] R. at 588.

purchased an airline ticket for $240.50 and Lonnie flew to California with that ticket.[171]

Appellant cannot be convicted of larceny because he never took Mr. Odom's property.  Mr. Odom purchased a service, a seat on an aircraft, and Lance Corporal Broom deprived Mr. Odom of the use of that service.  "The taking, obtaining, or withholding must be of specific property."[172]  According to the evidence introduced at trial, Appellant could have only been properly charged with obtaining services under false pretenses under Article 134, UCMJ.[173]  Because the record indicates Appellant obtained services owned by Mr. Odom under false pretenses, not his property, the evidence is legally insufficient to support Appellant's conviction for larceny.

The lower court agreed that the evidence was legally insufficient to prove larceny but was sufficient to prove the lesser included offense of attempted larceny.[174]  The lower court reasoned that there was no evidence in the record that Mr. Odom had actually been deprived of $240.50, and had only incurred a legal obligation to pay his credit card that amount.[175]  This ignores the fact that after Mr. Odom incurred a legal obligation to pay $240.50 for a service, he still possessed a service-a

---

[171] R. at 576.

[172] Part IV, ¶46c(1)(b), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2005 ed.)

[173] Part IV, ¶78, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2005 ed.)

[174] *Sanford*, No. 20050093 at *6.

[175] *Sanford*, No. 20050093 at *7.

reserved seat on an aircraft-before Lonnie wrongfully deprived him of the use of that seat.

WHEREFORE, this Honorable Court should grant Appellant's petition because the lower court has sanctioned such a departure from the normal course of judicial proceedings so as to call for an exercise of this Court's supervisory power.

### VII

THE EVIDENCE IS LEGALLY INSUFFICIENT TO PROVE APPELLANT WAS DERELICT IN THE PERFORMANCE OF HIS DUTIES.

During Captain Motley's investigation, it was discovered that Lance Corporal Broom had received pro/con marks from the 4th LAR of 4.8.[176] Master Sergeant Calvin R. Wright testified that he never gave Lance Corporal Broom a rating and certainly not a 4.8 rating.[177] The entries had been made into the Marine Corps Total Force System (MCTFS) on October 17, 2002.[178] But Appellant did not have access to MCTFS or the ability to make diary entries.[179]

The government's theory was that he had given the false information to an authorized diary clerk to enter into MCTFS. The government called Lance Corporal Mario R. Virto, an authorized diary clerk, to testify that he routinely made diary entries for Appellant in his capacity as Marine Corps Reserve

---

[176] R. at 772, P.E. 10.

[177] R. at 771-72.

[178] R. at 670.

[179] R. at 678.

Liason.[180]  He also testified that he added the pro/con marks at the behest of Appellant.[181]

But Appellant was charged and convicted of dereliction of duty by "willfully [failing] to ensure proper information was imputed into" MCTFS, not improperly imputing information or causing to be imputed false information into MCTFS.[182]  For purposes of Article 92, UCMJ, a "duty" may rest in either regulation, order, or custom.[183]  An essential element of dereliction of duty is that the accused "had certain duties."[184] An accused's self-imposed duty cannot give rise to a dereliction of duty charge.[185]

Chief Warrant Officer 4 Randall testified that Appellant did not have a duty to enter diary entries nor have diary clerks enter them.[186]  Gunnery Sergeant Arthur L. Diaz, the Marine Corps Reserve Accessions Coordinator, testified that Appellant had no duty to ensure proper diary entries are made.[187]  He further testified that it was Chief Warrant Officer 4 Randall's duty, as the section supervisor, to ensure that proper entries were

---

[180] R. at 691.

[181] R. at 692.

[182] Charge I, Specification 2.

[183] *United States v. Tanksley*, 36 M.J. 428 (C.M.A. 1993); *United States v. Dallman*, 34 M.J. 274 (C.M.A. 1992).

[184] *United States v. Dallman*, 34 M.J. 274, 275 (C.M.A. 1992).

[185] *Id.*

[186] R. at 659-60.

[187] R. at 866.

36

made.[188]  Gunnery Sergeant Diaz further testified that, even if Appellant had identified a problem with a Marine's service record book, it was still the responsibility of the diary clerk and the personnel shop to ensure that accurate information was entered into MCTFS.

Appellant stands convicted of being derelict of a duty he did not have.  And, even if he had that duty, it was self-imposed and not part of his official responsibilities nor required by regulations.  Appellant's conviction for dereliction of duty is legally and factually insufficient.

The lower court held that "it was his duty to provide proficiency and conduct marks to the diary clerks for Marine Reservists."[189]  Were that true, Appellant's conviction of this offense would be proper.  But it is not.  Tellingly, the lower court provided no citation to points in the record where that was proven to be the case.  In fact, the government and defense witnesses agreed that it was not the case.[190]

WHEREFORE, this Honorable Court should grant Appellant's petition because the lower court has sanctioned such a departure from the normal course of judicial proceedings so as to call for an exercise of this Court's supervisory power.

---

[188] R. at 866.

[189] *Sanford*, No 200500993 at *5.

[190] R. 659-660, 866.

Respectfully submitted,

BRIAN L. MIZER
LT, JAGC, USN
Bar No. 33030
Appellate Defense Counsel
Navy-Marine Corps Appellate Review Activity
716 Sicard Street, SE, Suite 1000
Washington Navy Yard, D.C. 20374
(202) 685-7290

## APPENDIX

*United States v. Sanford*, No. 200500993 (N-M. Ct. Crim. App. 2006)(unpublished opinion).

### CERTIFICATE OF COMPLIANCE WITH RULE 24(d)

1.  This brief complies with the type-volume limitation of Rule 24(d) because this brief contains 7,263 words and 895 lines of text.

2.  This reply brief complies with the typeface and type style requirements of Rule 37 because this brief has been prepared in a monospaced typeface using Microsoft Word Version 2000 with 12-point Courier font.

BRIAN L. MIZER
LT, JAGC, USN
Bar No. 33030
Appellate Defense Counsel
Navy-Marine Corps
Appellate Review Activity
716 Sicard Street, S.E., Suite 1000
Washington, D.C. 20374
(202) 685-7396

### CERTIFICATE OF FILING AND SERVICE

I certify that the original and seven copies of the forgoing were hand delivered to the Court on November 9, 2006, and that a copy was hand delivered to Appellate Government Division, and to Director, Administrative Support Division, Navy-Marine Corps Appellate Review Activity on November 9, 2006.

Respectfully submitted,

BRIAN L. MIZER
LT, JAGC, USN
Bar No. 33030
Appellate Defense Counsel
Navy-Marine Corps Appellate Review Activity
716 Sicard Street, SE, Suite 1000
Washington Navy Yard, D.C. 20374
(202) 685-7290

39

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KEVIN R. SANFORD,                          )
                                           )
                    *Plaintiff,*           )
                                           )
        v.                                 )        Civil No. 07-1792 (RCL)
                                           )
UNITED STATES,                             )
                                           )
                    *Defendant.*           )

ORDER

On consideration of defendant's motion to dismiss or, in the alternative, for summary judgment, plaintiff's cross-motion for summary judgment, the parties' oppositions and replies, and the entire record, it is, by the Court, this _____ day of _____, 2008,

ORDERED that defendant's motion be, and the same hereby is, DENIED, and plaintiff's cross-motion be, and the same hereby is, GRANTED, and it is hereby

DECLARED that plaintiff's court-martial conviction is unconstitutional and therefore null and void.

United States District Judge