UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                   )
**KEVIN R. SANFORD**                )
                                   )
      **Plaintiff,**       )
                                   )  Civil Action No. 07-1792 (RCL)
  v.                               )
                                   )
**UNITED STATES**                   )
                                   )
      **Defendant.**       )
_____)

## MEMORANDUM OPINION

Now before the Court comes defendant United States' motion [4] to dismiss and plaintiff Kevin R. Sanford's cross-motion [8] for summary judgment.  Upon consideration of the motions, opposition and reply briefs, the entire record herein, and applicable law, the Court finds that defendant's motion to dismiss will be GRANTED and that plaintiff's cross-motion for summary judgment will be DENIED.

## I.  BACKGROUND

This case raises the issue of whether a plaintiff's special-court martial conviction of a non-petty offense violates due process when the court-martial is composed of four members. (*See* Compl. ¶ 20.)

Plaintiff is a United States citizen who previously served as a sergeant in the United States Marine Corps.  (*Id.* ¶ 2.)  On October 3, 2004, a special court-martial comprised of four

members[1] convicted plaintiff of violating lawful order, dereliction of duty, larceny, and impersonating an officer, all in violation of the Uniform Code of Military Justice ("UCMJ"). (*Id.* ¶¶ 4, 10); *see* 10 U.S.C. §§ 801 *et seq.* Plaintiff's conviction was based on his false preparation of recall orders for a marine reservist and other false representations that induced the reservist's employer to purchase airfare on his behalf for travel from Texas to Camp Pendleton, California. *See United States v. Sanford*, 2006 WL 4571896, at *1 (N-M Ct. Crim. App. Nov. 6, 2006). Plaintiff was sentenced to confinement for six months, forfeiture of $767.00 pay per month for six months, reduction from pay grade E-5 to grade E-1, and a bad-conduct discharge. *See id.* Claiming eight assignments of error, plaintiff appealed his conviction to the U.S. Navy-Marine Corps Court of Criminal Appeals. *Id.* That court considered each of plaintiff's contentions, affirmed his finding of guilt with some modifications, and decreased his sentence of confinement to 150 days. *Id.* at *11. Regarding plaintiff's assignment of error at issue before this Court, the military appeals court stated: "We have considered the appellant's eighth assignment of error challenging his convictions for 'non-petty offenses' by a panel of only four members, and find it to be without merit." *See id.* at *10 n.2 (citing *United States v. Wolff*, 5 M.J. 923, 925 (N.C.M.R. 1978)).

On February 7, 2007, the Court of Appeals for the Armed Forces ("CAAF") denied plaintiff's petition for grant of review. *See* 64 M.J. 428 (C.A.A.F. 2007). Plaintiff then filed suit in this Court on October 4, 2007.

---

[1] By statute, a special court-martial may proceed with as few as three members. *See* 10 U.S.C. § 829(c).

## II.     ANALYSIS

### A.     Legal Standards

#### 1.     Motion to Dismiss

Defendant moves to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. When a party files a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), "the plaintiff[ ] bear[s] the burden of proving by a preponderance of the evidence that the Court has subject matter jurisdiction." *Biton v. Palestinian Interim Self-Gov't Auth.*, 310 F. Supp. 2d 172, 176 (D.D.C. 2004). A court considering a motion to dismiss for lack of jurisdiction must construe plaintiffs' complaint in plaintiffs' favor, accepting all inferences that can be derived from the facts alleged. *Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), this Court will dismiss a claim if the plaintiff fails to plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). The complaint need only set forth a short and plain statement of the claim, giving the defendant fair notice of the claim and the grounds upon which it rests. *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). This Court must construe the allegations and facts in the complaint in the light most favorable to the plaintiff and must grant the plaintiff the benefit of all inferences that can be derived from the facts alleged. *Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004) (citing *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)).

### 2. Summary Judgment

Under Federal Rule of Civil Procedure 56(c), a court must grant summary judgment when the evidence demonstrates that there are no disputed issues of material fact and that the moving party is entitled to judgment on the undisputed facts as a matter of law. FED. R. CIV. P. 56(c). A genuine issue of material fact exists if the evidence, when viewed in a light most favorable to the nonmoving party, "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### 3. Subject-Matter Jurisdiction and Scope of Review

"[T]he Supreme Court has held that Congress didn't intend to confine collateral attacks on court-martial proceedings to [habeas petitions under 28 U.S.C.] § 2241."[2] *United States ex. rel. New v. Rumsfeld* ("*New II*"), 448 F.3d 403, 406 (D.C. Cir. 2006) (citing *Schlesinger v. Councilman*, 420 U.S. 738, 748–53 (1975)). Rather, a district court may have subject-matter jurisdiction to hear a plaintiff's constitutional collateral attack pursuant to the court's section 1331 federal question jurisdiction.[3] *See id.*; *Oppermann v. United States*, 2007 WL 1748920, at *3 (D.D.C. June 15, 2007) ("Pursuant to 28 U.S.C. § 1331, federal district courts have subject-

---

[2] Federal courts are authorized to grant writs of habeas corpus pursuant to 28 U.S.C. § 2241. *See United States ex. rel. New v. Rumsfeld*, 448 F.3d 403, 406 (D.C. Cir. 2006). However, section 2241(c) precludes granting the writ unless a petitioner is in custody, *see id.*, which is no longer the case here.

[3] Defendant argues against application of the D.C. Circuit's broad interpretation of *Councilman*. (*See* Def's Reply at 4.) In defendant's view, district courts have no jurisdiction to review courts-martial decisions of former service members who are not in custody and who bring their suit after separation from service; instead, defendant asserts that district court review is limited to habeas petitions or the "functional equivalent thereof." (*See id.*) This Court disagrees and follows this Circuit's guidance in *New II*, which allows for jurisdiction and the limited scope of review set forth in this Opinion.

matter jurisdiction to review constitutional challenges to military court-martial proceedings.").
In such a case, collateral relief is barred unless the judgment was "void." *New II*, 448 F.3d at 406.

> And that question "may turn on [1] the nature of the alleged defect, and [2] the gravity of the harm from which relief is sought." Specifically, the defect must be "fundamental," for "[a] judgment . . . is not rendered void merely by error." Moreover, "both factors must be assessed in light of the deference that should be accorded the judgments of the carefully designed military justice system established by Congress."[4]

*Id.* at 406–07 (quoting *Councilman*, 420 U.S. at 747, 753). A military court's judgment clearly will not suffer from a fundamental "defect if it satisfies *Burns*'s 'fair consideration' test." *Id.* at 408. This test limits a district court's role to determining whether the military *fully and fairly* considered each claim. *See Burns v. Wilson*, 346 U.S. 137, 142–44 (1953) (noting that district courts cannot simply re-evaluate the evidence if a military decision fully and fairly dealt with the issue); *see also New II*, 448 F.3d at 407 (citing *Burns*, 346 U.S. at 144). However, *full and fair consideration* "has meant many things to many courts." *Oppermann*, 2007 WL 1748920, at *4 (quoting *Kauffman v. Sec'y of the Air Force*, 415 F.2d 991, 997 (D.C. Cir. 1969)). This Circuit has viewed the term as requiring district courts to inquire not only as to whether the military court gave thorough consideration to a plaintiff's constitutional claims, but also whether the

---

[4] Although *Councilman* stated this standard in dicta, this Circuit later adopted the standard for non-habeas review of court-martial judgments. *See New II*, 448 F.3d at 407–08 (citing *Priest v. Sec'y of the Navy*, 570 F.2d 1013, 1016 (D.C. Cir. 1977)).

A plurality of the Supreme Court has described this standard as more deferential than habeas review of military judgments, which in turn is no less deferential than habeas review of state court judgments. *Id.* at 407 (citing *Councilman*, 420 U.S. at 753). This Circuit has indicated that it seriously doubts whether applying such carefully delineated graduations of deference is possible and that, in at least some cases, it will suffice to operate under the core principle that a district court may only void a court-martial error if it was fundamental. *Id.* at 408.

military court's constitutional decisions "conform to Supreme Court standards, unless it is shown that conditions peculiar to military life require a different rule." *Id.* (quoting *Kauffman*, 415 F.2d at 997); *see United States ex. rel. New v. Rumsfeld* ("*New I*"), 350 F. Supp. 2d 80, 89 (D.D.C. 2004), *aff'd*, 448 F.3d 403 (D.C. Cir. 2006) (indicating that a district court need not defer to constitutional rulings not in conformity with Supreme Court standards).

For the above reasons, to the extent that defendant moves for dismissal for lack of jurisdiction, that motion is denied, and this Court will proceed under the limited scope of review wherein it will address plaintiff's claims in a two-step analysis: (1) determination of whether the military courts gave plaintiff's constitutional claim thorough consideration, and (2) determination of whether the military courts' judgment was in contravention of Supreme Court standards unless conditions peculiar to military life require a different rule.[5]  *See Oppermann*, 2007 WL 1748920, at *5 (citing *New I*, 350 F. Supp. 2d at 92) (applying this standard).

### B. Application of Legal Standard

#### 1. Thorough Consideration of Plaintiff's Constitutional Claim

As a general rule, the thorough consideration component of a court's analysis is "established when it is briefed and argued by the parties, even if the judgment summarily disposes of the issue." *Id.* at *6 (citing *Watson v. McCotter*, 782 F.2d 143, 145 (10th Cir. 1986)); *see also New I*, 350 F. Supp. 2d at 93 (finding full and fair consideration of an issue where it had been "fully litigated at trial and considered carefully by the military court of

---

[5] Defendant asserts that this two-step approach is illogical because the thorough consideration component is rendered superfluous if the Court will in any event reach constitutional issues in the second prong of its analysis. (*See* Mot. to Dismiss at 12.)  This Court sees value in the two-step analysis. If the military judgment fails the first prong, there is effectively no military decision for a district court to reference; this Court would not give weight to a judgment that was not based on thorough consideration.

appeals"). Here, it is undisputed that (1) the due process implications of a four-member special court-martial were fully briefed at the military court; (2) the court specifically addressed the issue in its opinion and cited to precedent justifying its decision, *see United States v. Sanford*, 2006 WL 4571896, at *10 n.2 (N-M Ct. Crim. App. Nov. 6, 2006); (3) plaintiff briefed the issue in his appeal to the CAAF, (*see* Pet. for Review, Ex. K to Mot. for Summ. J. at 15–20.); and, (4) the CAAF summarily disposed of plaintiff's appeal, *see* 64 M.J. 428 (C.A.A.F. 2007). In light of these facts, the Court finds that the military court system thoroughly considered plaintiff's claim. *See Oppermann*, 2007 WL 1748920, at *6 (holding that a plaintiff's claim received full and fair consideration based on similar facts).

### 2.    Conformity with Supreme Court Standard

"[I]t is undisputed that the Sixth Amendment doesn't create any jury right in courts-martial."  *New II*, 448 F.3d at 408 (citing *Ex parte Quirin*, 317 U.S. 1, 38–41 (1942)); *see Dodson v. Zelez*, 917 F.2d 1250, 1253 (10th Cir. 1990) ("We have been consistent in refusing to apply the sixth amendment right to a jury trial in the court-martial setting.") (citations omitted). "The constitution of courts-martial, like other matters relating to their organization and administration, is a matter appropriate for congressional action." *Whelchel v. McDonald*, 340 U.S. 122, 127 (1950) (citations omitted). However:

> Congress, of course, is subject to the requirements of the Due Process Clause when legislating in the area of military affairs, and that Clause provides some measure of protection to defendants in military proceedings. But in determining what process is due, courts "must give particular deference to the determination of Congress, made under its authority to regulate the land and naval forces, U.S. CONST., art. I, § 8."

*Weiss v. United States*, 510 U.S. 163, 176–77 (1994) (citations omitted). In fact, "[j]udicial deference is at its apogee when reviewing congressional decisionmaking in this area" because the Constitution gives Congress "plenary control over rights, duties, and responsibilities in the

7

framework of the Military Establishment, including regulations, procedures, and remedies related to military discipline." *Id.* at 177 (citations omitted). This deference extends to rules relating to servicemembers' rights. *Id.*

Following the Supreme Court's guidance, this Court must ask whether the factors militating in favor of a six-member court-martial "are so extraordinarily weighty as to overcome the balance struck by Congress." *See id.* at 177–78. For the reasons set forth below, the Court answers that question in the negative.

In determining if factors militate in favor of a six-member court-martial, this Court assesses whether plaintiff's four-member special court-martial violated Supreme Court standards. Specifically, the Court inquires as to whether plaintiff's fundamental right to "a fair trial in a fair tribunal" is burdened. *See id.* at 178 (explaining that this right is a basic due process requirement). In the civilian court system, the Sixth Amendment requires a jury composed of no fewer than six members for non-petty[6] criminal cases. *Ballew v. Georgia*, 435 U.S. 223, 243–45 (1978). While the six-member requirement does not automatically extend to the military court system—the Sixth Amendment's jury-right is inapplicable in this context and the *Ballew* Court was not faced with weighing due process implications against the heightened deference given to Congress in military affairs—a review of the Supreme Court's *Ballew* rationale is warranted because of the possibility that the factors discussed therein may be relevant to this Court's due process inquiry. In fact, the crux of plaintiff's argument is that

---

[6] A charge that carries an authorized maximum penalty of more than six months is a non-petty charge. *Baldwin v. New York*, 399 U.S. 66, 68–69 (1970). In 1999, Congress amended the UCMJ to permit special courts-martial to try non-petty offenses carrying a maximum penalty of up to one year. *See* 10 U.S.C. § 819 (2008). Previously, special courts-martial could impose only a maximum penalty of six months. *See* 10 U.S.C. § 819 (1998) (amended Oct. 5, 1999).

8

*Ballew* mandates that a special court-martial conviction violates due process whenever someone is charged with a non-petty offense and the court-martial is composed of fewer than six members. (*See* Pl.'s Reply at 1.)

*Ballew* looked at five main findings derived from scholarly studies that each indicated the shortcomings of smaller juries: (1) smaller juries are less likely to foster effective group deliberation; (2) smaller jury panels arrive at less accurate results; (3) verdicts of smaller juries vary in such a manner that tends to detriment defendants; (4) the opportunity for a jury panel that adequately represents a cross-section of the community decreases with smaller juries; and, (5) jury research often masks the problems of smaller jury sizes. *See* 435 U.S. at 231–239. The Supreme Court determined that:

> [T]hese studies . . . lead us to conclude that the purpose and functioning of the jury in a criminal trial is seriously impaired, and to a constitutional degree, by a reduction in size to below six members. . . . [A]ny further reduction that promotes inaccurate and possibly biased decisionmaking, that causes untoward differences in verdicts, and that prevents truly representing their communities attains constitutional significance.

*Id.* at 1038.

Given that the Supreme Court's assessment of these scholarly studies was restricted to the civilian jury context, this Court is unwilling to adopt and apply that data to the military context. *See United States v. Wolff*, 5 M.J. 923, 925 (N.C.M.R. 1978) (describing the *Ballew* data as simply inapposite). The civilian and military legal systems are substantially distinct such that drawing an analogy to support plaintiff's claim that his fundamental due process rights were violated would be improper. For example, in the civilian context, the jury pool is random whereas in special courts-martial, the convening authority must select members who are the "best qualified for the duty by reason of age, education, training, experience, length of service,

9

and judicial temperament." 10 U.S.C. § 825(d)(2); *see United States v. Dowty*, 60 M.J. 163, 169 (C.A.A.F. 2004) ("Simply stated, this statute mandates the selection of members who are 'best qualified.'"). Further, each court-martial member is "drawn exclusively from the accused's own profession . . . with specialized knowledge of the profession[.]"[7] *United States v. Guilford*, 8 M.J. 598, 602 (A.C.M.R. 1979). These distinctions convince the Court that it cannot simply apply the *Ballew* logic to the military context in support of plaintiff's claim. And, in the absence of Supreme Court precedent other than *Ballew* that would militate in favor of a six-member special court-martial, this Court—with its deference to Congress at its apogee—finds that the factors in favor of plaintiff's claim are not so extraordinarily weighty as to overcome the balance struck by Congress.[8] *See Weiss*, 510 U.S. at 177–78. Thus, the plaintiffs's military conviction suffers from no fundamental defect and this case must be dismissed.

---

[7] Other relevant differences that impact the application of *Ballew* to the current case include the facts that enlisted defendants have the option of requesting that their court-martial be composed of officer and enlisted members, *see* 10 U.S.C. § 825(c)(1), and that court-martial members have the ability to question witnesses, *see United States v. Guilford*, 8 M.J. 598, 602 (A.C.M.R. 1979).

[8] The parties dispute the extent to which increasing the court-martial panel size will detrimentally affect military resources. (*See* Mot. to Dismiss at 15–16; Pl.'s Mem. [8-5] at 15–16.) The Court need not resolve this issue. For the purposes of this Opinion, it is sufficient to recognize that Congress allocated military resources to the military court system as it saw fit. It is Congress's responsibility to consider that "[u]nlike courts, it is the primary business of armies and navies to fight or be ready to fight wars should the occasion arise [and that] trial of soldiers to maintain discipline is merely incidental to an army's primary fighting function." *United States ex rel. Toth v. Quarles*, 350 U.S. 11, 17 (1955). In this particular case, no compelling reason causes the Court to question the balance struck by Congress.

Likewise, the parties debate the extent to which historical fact supports their positions. (*See* Mot. to Dismiss at 13–15; Pl.'s Mem. [8-5] at 13–14.) While history is "a factor that must be weighed" in this Court's due process calculation, *see Weiss*, 150 U.S. at 179, even assuming a lack of historical support for four-member military trials of non-petty offenses, in this case, that factor does not weigh sufficiently in plaintiff's favor to tip the scales against deferring to Congress' judgment.

**III.    CONCLUSION**

For the reasons set forth above, plaintiff's conviction by a special court-martial composed of four members did not violate constitutional principals established by the Supreme Court; plaintiff received all the process he was due under the Due Process Clause. Accordingly, defendant's motion to dismiss will GRANTED and plaintiff's cross-motion for summary judgment will be DENIED.

A separate order shall issue this date.


Signed by Chief Judge Royce C. Lamberth on July 22, 2008.